IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HOUSTON INDEPENDENT SCHOOL DISTRICT | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | CIVIL CASE NO: 1:19-CV-00684-LY |
| THE TEXAS EDUCATION AGENCY; | § | |
| MIKE MORATH, COMMISSIONER OF | § | |
| EDUCATION, IN HIS OFFICIAL | § | |
| CAPACITY; AND DORIS DELANEY, IN | § | |
| HER OFFICIAL CAPACITY | § | |
| Defendants | § | |

---

## HOUSTON ISD'S APPLICATION FOR PRELIMINARY INJUNCTION

---

TO THE HONORABLE LEE YEAKEL, JUDGE PRERSIDING:

Plaintiff Houston Independent School District ("Houston ISD" or "the District") respectfully requests entry of a preliminary injunction, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 65, that restrains Defendants Mike Morath, Commissioner of Education, in his official capacity ("the Commissioner" or "Morath"); the Texas Education Agency ("TEA"); and Doris Delaney ("Delaney") from committing unlawful acts by: (1) interfering with Houston ISD's selection of a new superintendent or interim superintendent; (2) replacing Houston ISD's elected Board of Trustees with a TEA-appointed board of managers; or (3) taking any other direct action, in the form of sanctions, based on the preliminary report regarding Special Accreditation Investigation #INV2019-10-034, issued on August 5, 2019.

1

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

# TABLE OF CONTENTS

Page

Table of Contents ................................................................... 2

Table of Authorities ................................................................ 4

Introduction ........................................................................ 6

Statement of Facts ................................................................. 8

Standard of Review ................................................................ 12

Argument ........................................................................... 13

   I.  Houston ISD is likely to prevail on the merits................................. 13

      A.   The Campus-Level Conservator had no authority to supplant
           the authority of Houston ISD's Board of Trustees. ....................... 14

          (1)  Conservator Delaney had no statutory authority to
               direct the Board to refrain from selecting a permanent
               or interim superintendent. ...................................................... 15

          (2)  The Commissioner had no statutory authority to give
               the Conservator authority to issue directives to the
               Board of Trustees and superintendent.................................... 17

          (3)  The conduct of Conservator Delaney and the
               Commissioner also violate state and federal statutory
               and constitutional law. .......................................................... 19

      B.   Defendants have no authority to replace the District's elected
           Board of Trustees with a bureaucratically-appointed board of
           managers in this case. ................................................................ 20

          (1)  The Commissioner has no statutory authority to replace
               the board of trustees. ............................................................ 20

          (2)  The Commissioner cannot replace the Board of Trustees
               based on TEA's 2017 and 2019 ratings of one campus. ......... 21

      C.   Any action taken against Houston ISD and/or its Board of
           Trustees based on the Special Accreditation Investigation
           (SAI # INV2019-10-034) will violate federal and state
           statutory and constitutional law. ............................................... 23

          (1)  TEA's investigation violates the First Amendment................ 23

(2)  TEA's investigation violates basic due process. .....................24

(3)  TEA's investigation also violates state and federal statutory and constitutional law.............................................25

II. Houston ISD will suffer irreparable harm unless an injunction issues. ....... 25

III. The injury to Houston ISD clearly outweighs the injury, if any, that the injunction's issuance would have on Defendants. ....................................... 27

IV. The injunction serves the public interest...................................................... 28

Request for Waiver of Bond......................................................................... 33

Conclusion and Requests for Relief............................................................. 34

Certificate of Conference ............................................................................. 36

Certificate of Service .................................................................................... 36

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

# TABLE OF AUTHORITIES

## Cases

*Corrigan Dispatch Co. v. Casa Guzman*,
  569 F.2d 300 (5th Cir. 1978) ......................................................................... 33

*Doctor's Assocs., Inc. v. Stuart*,
  85 F.3d 975 (2d Cir. 1996) ............................................................................ 34

*Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*,
  847 F.2d 100 (3d Cir. 1988) .......................................................................... 33

*Hispanic Educ. Comm. v. Houston Indep. Sch. Dist.*,
  886 F. Supp. 606 (S.D. Tex. 1994) ................................................................ 24

*Hispanic Educ. Comm. v. Houston Indep. Sch. Dist.*,
  No. 95-20029, 1995 U.S. App. LEXIS 42227 (5th Cir. 1995) .................... 24

*Hoechst Diafoil Co. v. Na Ya Plastics Corp.*,
  174 F.3d 411 (4th Cir. 1996) ......................................................................... 34

*Johnson v. DeGrandy*,
  512 U.S. 997 (1994) ....................................................................................... 32

*Jorgensen v. Cassiday*,
  320 F.3d 906 (9th Cir. 2003) ......................................................................... 33

*Kaepa, Inc. v. Achilles Corp.*,
  76 F.3d 624 (5th Cir. 1996) ........................................................................... 33

*Lindsay v. City of San Antonio*,
   821 F.2d 1103 (5th Cir. 1987) ...................................................................... 13

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
  760 F.2d 618 (5th Cir. 1985) ......................................................................... 13

*Mobile v. Bolden*,
  446 U.S. 55 (1980) ......................................................................................... 29

*Molton Co. v. Eagle-Pitcher Indus., Inc.*,
  55 F.3d 1171 (6th Cir. 1995) ......................................................................... 33

*Personnel Adm'r of Mass. v. Fenney*,
  442 U.S. 256, 279 (1979) ............................................................................... 33

*Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*,
  207 F.R.D. 23 (E.D.N.Y. 2001) ..................................................................... 33

*Productos Carnic, S.A. v. Cent. Am. Beef & Seafood Trading Co.*,
    621 F.2d 683 (5th Cir. 1980) .......................................................................13

*Scherr v. Volpe*,
    466 F.2d 1027 (7th Cir. 1972) ...................................................................34

*Sierra Club, Lone Star Chapter v. F.D.I.C.*,
    992 F.2d 545 (5th Cir. 1993) .....................................................................13

*State v. Doyal*,
    No. PD-0254-18, 2019 Tex. Crim. App. LEXIS 161 (Tex. Crim. App.
    Feb. 27, 2019)............................................................................................24

*Thornburg v. Gingles*,
    478 U.S. 30 (1986) .......................................................................19, 25, 32

*Village of Arlington Heights v. Metropolitan Hous. Dev. Corp*,
    429 U.S. 252 (1977) ..................................................................................33

## Statutes

42 U.S.C. § 2000d ............................................................................... 19, 25
52 U.S.C. § 10301 ............................................................................... 19, 25
Tex. Educ. Code § 39.052 .........................................................................14
Tex. Educ. Code § 39.053 .........................................................................14
Tex. Educ. Code § 39.054 .........................................................................14
Tex. Educ. Code § 39.057 .........................................................................15
Tex. Educ. Code § 39.058.........................................................................11
Tex. Educ. Code § 39A.001.............................................................9, 15, 16, 17
Tex. Educ. Code § 39A.002....................................................................passim
Tex. Educ. Code § 39A.101...............................................................8, 9, 15, 16
Tex. Educ. Code § 39A.102...............................................................8, 9, 15, 16
Tex. Educ. Code § 39A.111 ......................................................................12
Tex. Educ. Code § 39A.906.......................................................................12

## Rules

Fed. R. Civ. P. 65 ............................................................................... 12, 33

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

# INTRODUCTION

Houston ISD filed this lawsuit because it is the latest victim of a pretextual TEA investigation that attempts to target school board members and second-guess the voters in a school district governed by people of color.  This lawsuit is about the Commissioner of Education's attempt to unlawfully supplant the democratically-elected Board of Trustees of Houston ISD with a bureaucratically-appointed board of managers. The Legislature empowered the Commissioner to appoint boards of managers in extreme situations; however, the Commissioner has abused this power by exercising it only in school districts in which a majority of voters were people of color.

As the largest school district in Texas, Houston ISD provides a stable learning environment to approximately 210,000 students at 280 campuses and is one of the most diverse districts in the state of Texas.  Houston ISD's student population is 61.84% Hispanic, 24.02% African American, 8.7% White, and 4.05% Asian.[1]  The demographics of Houston ISD's voting population are substantially similar to the demographics of its student population.[2]

When TEA launched its special accreditation investigation in early 2019, TEA had predetermined the result: replace Houston ISD's elected board members with an unelected board of managers.  And before the investigation was completed, TEA

---

[1]  Exh. 7, Dávila Declaration.

[2]  *Id.*

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

unlawfully directed a campus-level conservator to thwart the efforts of the Board of Trustees to find a superintendent for Houston ISD.

This is not the first time TEA has attempted to unlawfully meddle in the governance of school districts in which a majority of voters were people of color.  In fact, the only school districts in which TEA has attempted to replace elected boards of trustees with boards of managers have been in districts primarily populated by people of color.  TEA's attempt to do so confirms its unlawful and discriminatory practices against people of color in the state of Texas.

In order to reach its predetermined result in this case, TEA conducted an investigation that is unconstitutional and unlawful.  For example, TEA's investigation seeks to punish elected board members for exercising their First Amendment rights— rights which the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") has recognized they must be allowed to exercise in order to effectively perform their duties as members of the Houston ISD Board of Trustees.

As a result of this investigation, TEA preliminarily reached conclusions based on fundamental misunderstandings of the law and provided findings of fact that are the result of a one-sided investigation, are unsupported by any credible evidence, and are based on the misrepresentations of unnamed individuals.

In sum, it is clear that TEA intends to punish the District by replacing Houston ISD's elected Board of Trustees with an unelected board of managers — a sanction that is unavailable under the law and facts of this case.  Plaintiff seeks

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

injunctive relief to prevent Defendants' unlawful actions from irreparably injuring Houston ISD pending judicial review of its legal claims.

## STATEMENT OF FACTS

In a letter dated September 2, 2016, the Commissioner notified the District that he was appointing Defendant Doris Delaney as a campus-level conservator to ensure and oversee district-level support for Kashmere High School within Houston ISD.[3]   The scope of the Conservator's role was specifically limited to the oversight of Kashmere High School.[4]   A campus-level conservator has statutory authority provided by Subchapter C in Chapter 39A of the Texas Education Code.   *See* TEX. EDUC. CODE §§ 39A.101–.102.   During the duration of Defendant's Delaney appointment as a conservator, the Commissioner has not performed the statutorily-required 90-day review of the continued need for a conservator as required by Section 39A.003(b) of the Texas Education Code.

In 2018, the Houston ISD Board of Trustees was faced with the pressing issue of filling the position of superintendent.[5]   On multiple occasions in 2018, the Houston ISD Board of Trustees discussed the superintendent search during public meetings and the

---

[3]   Exh. 1, Letter.

[4]   *Id.*

[5]   *See* Exh. 7, Dávila Declaration.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

Board was making progress towards finding a superintendent.[6]  However, their progress was inexplicably and unlawfully stopped by Defendants.

In correspondence dated March 25, 2019, the Commissioner purported to change the Conservator from a campus-level conservator to a district-level conservator.[7]  No statute gives the Commissioner the authority to transform a campus-level conservator to a district-level conservator.  And a district-level conservator cannot be given authority over a school district's board of trustees unless the statutory prerequisites in Subchapter A of Chapter 39A of the Texas Education Code are satisfied.  *See* TEX. EDUC. CODE §§ 39A.001–.003.

On the same date as the Commissioner's correspondence referenced above, the Conservator issued a directive that the Board of Trustees and administration of the Houston ISD immediately suspend the search for a superintendent until (1) TEA completes Special Accreditation Investigation (SAI # INV2019-10-034) and (2) the Board receives written authorization from the Conservator to resume the search activities.[8]  As a campus-level conservator, Conservator Delaney had no authority to issue this directive.  *See* TEX. EDUC. CODE §§ 39A.001–.003, 39A.101–.102.

-----

[6]  *Id.*

[7]  Exh. 3, Letter.

[8]  Exh. 2, Conservator's Directive.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

The special accreditation investigation referenced in this directive had begun in February 2019.[9]   Initially, TEA's investigator told the District he was investigating alleged violations of the Texas Open Meetings Act ("TOMA").[10]   However, after the District provided TEA's investigator with interviews and documents regarding the alleged violations, TEA sent an amended notice changing the investigations complaint to allegations regarding "contract procurement process, competitive bidding, awarding, and management of contracts."[11]   Unlike its earlier investigation into the alleged TOMA violations, TEA did not interview any Houston ISD board members regarding these new allegations.[12]   Instead, TEA relied largely on statements by unnamed administration officials without considering the credibility of these unnamed witnesses.[13]

On August 5, 2019, TEA issued a preliminary report regarding  Special Accreditation Investigation (SAI # INV2019-10-034) threatening to lower Houston ISD's accreditation status, appoint a conservator, and install a board of managers.[14]   This recommendation was based, in part, on the clearly erroneous conclusion by TEA's investigators that

---

[9]   *See* Exh. 5.

[10]   *See id.*

[11]   *See id.*

[12]   *See id.*

[13]   Exh. 4.

[14]   *Id.*

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

Houston ISD's board members had violated TOMA.[15]  This conclusion directly conflicts with binding precedent from the Fifth Circuit that the alleged conduct does not violate TOMA.[16]

The recommendation in the preliminary report was also based on various other allegations.[17]  But these allegations were all based on a one-sided investigation with a predetermined outcome.[18]  If TEA had been interested in conducting a fair and balanced investigation, TEA would have interviewed all relevant witnesses — including Houston ISD's board members — instead of relying on the statements of unnamed administrators and the legal opinions of non-lawyers.  But it did not do so.

On August 26, 2019, the District submitted responses to the preliminary report demonstrating that TEA's preliminary report is based on fundamental errors of law, mistaken interpretations of the evidence, and unsubstantiated allegations of fact.[19]

As of the date of this filing, the Commissioner has not provided Houston ISD with the opportunity for an informal review by the Commissioner or a designated hearing examiner as required by section TEX. EDUC. CODE § 39.058 of the Texas Education Code.

---

[15] *See* Exh. 5, pp. 28–30.

[16] *Id.*

[17] Exh. 4.

[18] *See id.*

[19] Exh. 5.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

Instead, the Commissioner has himself threatened to unlawfully replace Houston ISD's elected Board of Trustees.  In a letter dated September 3, 2019, the Commissioner threatened to unlawfully replace Houston ISD's elected Board of Trustees based on TEA's rating of one high school in Houston ISD, specifically Wheatley High School.[20]  In the letter, the Commissioner noted that Wheatley High School received "unacceptable performance ratings" for the 2016–17 and 2018–19 school years.[21]  For the 2018–19 school year, Wheatley (like many other Texas schools) was not rated because of hurricane-related issues.[22]

Nevertheless, the Commissioner states that he is "required by [Texas Education Code] §§ 39A.111 and 39A.906 to order either campus closure or the appointment of a board of managers.[23]  Importantly, neither statute requires or authorizes the Commissioner to appoint a board of managers.

## STANDARD OF REVIEW

Rule 65 of the Federal Rules of Civil Procedure governs preliminary injunctions. FED. R. CIV. P. 65.  A claimant is entitled to a preliminary injunction if the plaintiff shows (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury

---

[20]  Exh. 6.

[21]  *Id.*

[22]  *Id.*

[23]  *Id.*

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest. *Lindsay v. City of San Antonio*, 821 F.2d 1103, 1107 (5th Cir. 1987).  When one of the factors weigh strongly in favor of an injunction, a slight showing on another factor may justify temporary injunctive relief.  *See Productos Carnic, S.A. v. Cent. Am. Beef & Seafood Trading Co.*, 621 F.2d 683, 685 (5th Cir. 1980).

At the preliminary injunction stage, procedures in the district court are less formal, and the court may rely on otherwise inadmissible evidence, including hearsay evidence.  *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993). The decision regarding whether to grant or deny a preliminary injunction is in the court's discretion.  *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

# ARGUMENT

Plaintiff Houston ISD satisfies each of the four requirements for a preliminary injunction.[24]

## I.    Houston ISD is likely to prevail on the merits.

Houston ISD is likely to succeed on the merits by showing that Defendants have acted outside their statutory authority in an attempt to unlawfully take control of the District by supplanting the democratically-elected members of the Houston ISD Board

---

[24]  Plaintiff incorporates by reference the facts and allegations in its complaint.

13

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

of Trustees.  Defendants had no legal basis for demanding that the Board of Trustees abruptly stop its search for a superintendent or for removing Houston ISD's democratically-elected board members.  And neither TEA nor the Commissioner have any proper legal basis for removing the Board of Trustees.  Moreover, any adverse action against the District would be a grave injustice because TEA's investigation violates state and federal statutory and constitutional law.

### A. The Campus-Level Conservator had no authority to supplant the authority of Houston ISD's Board of Trustees.

The Texas Education Code gives the Commissioner limited authority to appoint a district-level conservator because once installed, a district-level conservator has extremely broad authority to "oversee the operations of the district" and may issue directives to the superintendent and board of trustees.  *See* TEX. EDUC. CODE §§ 39A.002(7), 39A.003(c)(1).  The Commissioner cannot appoint a district-level conservator unless at least one of four criteria is met:

(1)   the school district does not satisfy the accreditation criteria under Section 39.052;

(2)   the school district does not satisfy the academic performance standards under Section 39.053 or 39.054;

(3)   the school district does not satisfy any financial accountability standard as determined by commissioner rule; or

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

(4)   if considered appropriate by the Commissioner on the basis of a special accreditation investigation under Section 39.057.  *Id.* §§ 39A.001, 39A.002.[25]

The Texas Education Code gives authority to appoint a campus-level conservator for a campus that has been ordered to prepare and submit a campus turnaround plan.  *Id.* §§ 39A.101–.102.  A campus-level conservator has authority to "ensure and oversee district-level support to low-performing campuses and the implementation of the updated targeted improvement plan."  *Id.* § 39A.102.

(1)   ***Conservator Delaney had no statutory authority to direct the Board to refrain from selecting a permanent or interim superintendent.***

Conservator Delaney was appointed a campus-level conservator by the Commissioner.  *Compare Exhibit 1* (appointing Conservator Delaney as a conservator to "ensure and oversee district-level support for Kashmere High School ('campus') and implementation of the targeted improvement plan") *with* TEX. EDUC. CODE § 39A.102 (stating that a campus-level conservator is empowered to "ensure and oversee district-level support to low-performing campuses and the implementation of the updated targeted improvement plan").  The only task assigned to Conservator Delaney related to support for Kashmere High School.[26]  When Conservator Delaney was appointed, none

---

[25] When the Conservator was originally appointed, these statutory requirements were listed in Section 39.102(a)(7) of the Texas Education Code.

[26] Exh. 1.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

of the prerequisites required for appointment of a district-level conservator were present, and none of these statutory prerequisites was cited in the letter.[27]

As a campus-level conservator, Conservator Delaney was not empowered to exercise the authority of a district-level conservator described in Section 39A.003(c)(1).  *See* TEX. EDUC. CODE §§ 39A.001–.003, 39A.101–.102.   Nevertheless, on March 25, 2019, Conservator Delaney stepped outside her statutory authority as a campus-level conservator and usurped the statutory authority given to Houston ISD's Board of Trustees by directing the Board to immediately suspend its superintendent search.[28]  In doing so, Conservator Delaney expressly relied on Section 39A.003(c)(1),[29] but that statute describes the authority that may be exercised by a *district-level conservator*, not a *campus-level conservator*.

Conservator Delaney's directive was not only completely improper, it was also extremely disruptive to the District.  The Board of Trustees had been working diligently to find a permanent superintendent for the District and had almost completed their search.[30]  At the time of the directive, the Houston ISD was preparing to conduct final interviews with the Superintendent Finalist candidates.  It was anticipated that upon

---

[27] *Id.*

[28] Exh. 2.

[29] *Id.*

[30] Exh. 7, Dávila Declaration.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

completion of the final interviews, a Superintendent "sole finalist" selection would have been made.

### (2) *The Commissioner had no statutory authority to give the Conservator authority to issue directives to the Board of Trustees and superintendent.*

The Commissioner has no authority to appoint a district-level conservator on a whim. *See* TEX. EDUC. CODE § 39A.001–.003. A district-level conservator has the extremely broad authority to issue directives to the principals, the superintendent, or even the board of trustees. *See id.* § 39A.003(c)(1). Given this extremely broad authority, the Texas Legislature has cabined the Commissioner's authority to implant a district-level conservator by expressly requiring that the school district be deficient in one of four, specified areas before a district-level conservator can be assigned. *See id.* § 39A.001, .002(7). In doing so, the Legislature ensured the Commissioner's power would be limited to school districts in need of an extreme intervention. *See id.*

In his March 25, 2019 correspondence, the Commissioner purported to install Conservator Delaney as a district-level conservator by stating that he was "clarifying" her "powers and duties."[31] Prior to that correspondence, Conservator Delaney had been a campus-level conservator;[32] thus, as shown above, the Commissioner could not authorize Conservator Delaney to act with the authority of a district-level conservator

---

[31]  Exh. 3.

[32]  *See* Exh. 1.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

unless one of the four criteria expressly listed by the Texas Legislature were satisfied. *See* TEX. EDUC. CODE § 39A.001.  However, the Commissioner's correspondence does not list any of the required criteria and instead simply skips over and refuses to follow these important statutory requirements.[33]

In the correspondence, the Commissioner cites Section 39A.003(a) of the Texas Education Code as the legal authority for his actions.[34]  The Commissioner's reliance on this statute is misplaced.  Section 39A.003 describe the requirements and authority relevant to a district-level conservator.  TEX. EDUC. CODE § 39A.003.  Section 39A.003 does not provide the Commissioner with the authority to appoint a district-level conservator.  *Id.*  That authority is furnished by Sections 39A.001 and 39A.002(7), which expressly state that the Commissioner may only take such action if the District does not satisfy accreditation criteria, academic performance standards, financial accountability standards, or upon the basis of a completed special accreditation investigation.  Because none of these factors were present, much less mentioned, in the March 25, 2019 letter, the Commissioner's attempt to expand Conservator Delaney's power was unlawful.

As a result, Conservator Delaney had no authority to issue her directive on March 25, 2019, and the Commissioner had no authority to give Conservator Delaney, who was appointed as a campus-level conservator, the extremely broad powers of a district-level

---

[33]  Exh. 3.

[34]  *Id.*

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

conservator.  Conservator Delaney was not authorized to issue the directive because the statutory prerequisites in sections 39A.001 and 39A.003(b) were not met on the date of her purported directive.  In issuing the directive, Conservator Delaney acted outside the authority provided to her by Subchapter C of the Texas Education Code.  And in purportedly bestowing this authority on Conservator Delaney, the Commissioner acted outside of, and contrary to, the limits placed on his authority to appoint district-level conservators by Subchapter A of the Texas Education Code.

(3)   ***The conduct of Conservator Delaney and the Commissioner also violate state and federal statutory and constitutional law.***

By unlawfully issuing the March 25th directive, Conservator Delaney violated the Voting Rights Act, the Civil Rights Act, and the Equal Protection Clause by unlawfully denying Houston ISD's voters the benefits of representation by their preferred representatives on the Board of Trustees.  *See* 42 U.S.C. § 2000d (Title VI of the Civil Rights Act); 52 U.S.C. § 10301 (previously codified at 42 U.S.C. 1973) (Voting Rights Act); *see also Thornburg v. Gingles*, 478 U.S. 30, 47 (1986).  And by unlawfully asserting that Conservator Delaney had the authority to issue such a directive, the Commissioner also violated the Voting Rights Act, the Civil Rights Act, and the Equal Protection Clause.  Historically, TEA has repeatedly installed conservators and boards of managers in school districts whose voters are predominantly people of color in a manner that disparately impacts these districts as compared with districts whose voters are not predominantly people of color.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

**B. Defendants have no authority to replace the District's elected Board of Trustees with a bureaucratically-appointed board of managers in this case.**

(1) ***The Commissioner has no statutory authority to replace the board of trustees.***

The Texas Legislature has given the Commissioner limited authority to take certain actions (including appointing a district-level conservator) if a school district does not satisfy (1) the accreditation criteria under Section 39.052, (2) the academic performance standards under Section 39.053 or Section 39.054, or (3) any financial accountability standard as determined by commissioner rule.  TEX. EDUC. CODE § 39A.001(1)(A)–(C). The Commissioner is also authorized to take statutorily-specified actions[35] based on a special accreditation investigation.  *Id.* § 39A.001(1)(D).  In a separate statutory provision, the Legislature authorizes the Commissioner to take an even more extreme action — replacement of the elected board of trustees with a board of managers.  *Id.* § 39A.004.  However, a board of managers cannot be put in place unless at least one of three additional criteria are satisfied.  *See id.*

If the Commissioner is authorized to take action based on Section 39A.001, the Commissioner cannot replace the board of trustees unless the school district (1) has a current accreditation status of accredited-warned or accredited-probation; (2) fails to

---

[35] These actions include issuing a public notice, ordering a hearing, ordering a student achievement improvement plan, arranging a monitoring review, appointing a monitor, appointing a district-level conservator, or appointing a management team. *See* TEX. EDUC. CODE § 39A.002.

20

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

satisfy any standard under Section 39.054(e); or (3) fails to satisfy financial accountability standards as determined by commissioner rule. *Id.* § 39A.004.

In TEA's preliminary report, TEA's investigators recommended that the Commissioner lower the District's accreditation status, appoint a conservator, and install a board of managers.[36]  But a board of managers cannot be installed unless Houston ISD (1)  has a current accreditation status of accredited-warned or accredited-probation; (2) fails to satisfy any standard under Section 39.054(e); or (3) fails to satisfy financial accountability standards as determined by commissioner rule. *Id.* § 39A.004. Houston ISD's current accreditation status is not accredited-warned or accredited-probation, and Houston ISD has not failed to satisfy the standards in subsections (2) and (3).  Accordingly, the Commissioner has no statutory authority to replace the board of trustees.

(2)  ***The Commissioner cannot replace the Board of Trustees based on TEA's 2017 and 2019 ratings of one campus.***

In a letter dated September 3, 2019, the Commissioner recently threatened to replace Houston ISD's elected Board of Trustees with an appointed board of managers based on TEA's rating of one high school, Wheatley High School, in Houston ISD.[37] However, the Commissioner failed to provide any statutory basis for taking such a drastic action.

---

[36]  Exh. 4.

[37]  Exh. 6.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

In the letter, the Commissioner asserts that he may be required to replace the board of trustees with a board of managers because of Wheatley High School's 2017 and 2019 academic performance ratings.[38]  The Commissioner acknowledges that Wheatley did not receive a 2018 rating because of issues related to Hurricane Harvey.[39]  In support of the assertion that he may be required to replace the board of trustees based on the 2017 and 2019 ratings, the Commissioner relies on Texas Education Code §§ 39A.111 and 39A.906.[40]  The Commissioner's interpretation of both statutory provisions is flawed.

Section 39A.111 of the Texas Education Code does not require or authorize the Commissioner to appoint a board of managers unless the campus has "an <u>unacceptable performance</u> rating for <u>three consecutive years after</u> the campus is ordered to submit a campus turnaround plan."  TEX. EDUC. CODE § 39A.111 (emphasis added).  As the Commissioner acknowledges, Wheatly has had, at most, an unacceptable performance rating for two year, not three consecutive years, as required by the statute.[41]  Wheatly did not receive a rating for 2018 because of the Harvey waiver.[42]

Similarly, Section 39A.906 of the Texas Education Code does not require or authorize the Commissioner to replace the board of trustees based on the 2017 and 2019

---

[38]  *Id.*

[39]  *Id.*

[40]  *Id.*

[41]  *Id.*

[42]  *Id.*

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

ratings.  Section 39A.906 requires "unacceptable performance rating for the 2016-2017,

2017-2018, and 2018-2019 school years . . . ."  TEX. EDUC. CODE § 39A.906(d).  Wheatley

did not have an unacceptable performance rating for the 2017–2018 school year.[43]

### C. Any action taken against Houston ISD and/or its Board of Trustees based on the Special Accreditation Investigation (SAI # INV2019-10-034) will violate federal and state statutory and constitutional law.

The fundamental flaw in TEA's investigation was that TEA's investigators began the

investigation with a predetermined outcome instead of faithfully following the evidence

and the relevant law.  As a result of this fundamental flaw in TEA's investigation, TEA's

investigators conducted an investigation that violates federal and state law.  As a result,

any action on this investigation would be unlawful because its predicate was unlawful.

#### (1) *TEA's investigation violates the First Amendment.*

TEA's investigation violates the First Amendment of the United States Constitution

by attempting to punish Houston ISD board members for engaging in protected speech

that does not violate the Texas Open Meetings Act.  TEA's legal position, as outlined in

its Preliminary SAI Report, dated August 5, 2019 is that the Houston ISD Board of

Trustees violated the Texas Open Meetings Act by meeting in groups of less than a

quorum on October 8, 2018.[44]  But TOMA's "walking quorum" provision was declared

unconstitutionally vague by the Texas Court of Criminal Appeals shortly after TEA

began its investigation.  *State v. Doyal*, No. PD-0254-18, 2019 Tex. Crim. App. LEXIS

---

[43] *See id.*

[44] Exh. 4, pp. 12–15.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

161, at *2 (Tex. Crim. App. Feb. 27, 2019) (holding that Section 551.143 was unconstitutionally vague).

In erroneously concluding that Houston ISD's board members violated TOMA, TEA's investigators also ignored binding precedent from the Fifth Circuit that involves indistinguishable conduct. *Hispanic Educ. Comm. v. Houston Indep. Sch. Dist.*, No. 95-20029, 1995 U.S. App. LEXIS 42227, *4 (5th Cir. 1995) (unpublished). In *Hispanic Education Commission*, the Fifth Circuit held that enforcement of the "walking quorum provision (i.e., Section 551.143) is limited to local prosecutors:

> Appellants allege that the Board improperly held these private meetings in numbers less than a quorum in order to circumvent the formal requirements of the TOMA, in violation of the criminal conspiracy provision, § 551.143.  That provision is inapplicable to this suit, *as enforcement is limited to the local prosecutor.*

*Id.*  The Fifth Circuit further held that Houston ISD's board members could not have violated TOMA by meeting privately among themselves in several overlapping clusters because those conferences were not meetings of the board.  *Id.*  ("The Board consists of nine members.  Therefore, to have a quorum and thereby a meeting to which the TOMA would be applicable, at least five members must be present."); *see also Hispanic Education Committee v. Houston Indep. Sch. Dist.*, 886 F. Supp. 606, 610 (S.D. Tex. 1994).

### (2)   *TEA's investigation violates basic due process.*

TEA's investigation also violates basic due process by relying on alleged statements from individuals whose identity TEA has refused to disclose.  Because of TEA's reliance

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

on the alleged statements of unnamed individuals, Houston ISD has been denied the opportunity to contest the allegations in TEA's report.

### (3)   *TEA's investigation also violates state and federal statutory and constitutional law.*

Finally, TEA's investigation violates the Voting Rights Act, the Civil Rights Act, and the Equal Protection Clause by denying Houston ISD's voters the benefits of representation by their preferred representatives on the Board of Trustees because TEA targeted Houston ISD's Board of Trustess, as it has done to other Texas school districts in which a majority of voters are people of color.  *See* 42 U.S.C. § 2000d (Title VI of the Civil Rights Act); 52 U.S.C. § 10301 (previously codified at 42 U.S.C. 1973) (Voting Rights Act); *see also Thornburg v. Gingles*, 478 U.S. 30, 47 (1986).

## II.   Houston ISD will suffer irreparable harm unless an injunction issues.

The Conservator's directive severely handicaps the Board's ability to govern the District and resolve any outstanding governance issues.   As a result of the Commissioner's and Conservator's actions, the Board has been precluded from hiring the Chief Executive of its choice. It is ironic that, because the Conservator has perceived an alleged violation of Open Meetings protocols relating to the possible selection of an Interim Superintendent, the Commissioner and Conservator have abolished all debate over the Interim Superintendent by preventing the selection process from continuing. In other words, the Conservator's March 25, 2019 letter had the purpose and effect of unilaterally naming the Interim Superintendent without any input from the Board or the public—directly in contravention of the Open Meetings Act.   Organizations are

fundamentally entitled to choose their own leadership.   Houston ISD is being irreparably harmed by being precluded from doing so.

The installation of a board of managers to replace the elected Board of Trustees would cause immediate and irreparable harm to Plaintiff, its students, taxpayers, and voters.   If the Commissioner and TEA are permitted to replace the elected Board of Trustees by a board of managers, Plaintiff will have no available means to contest the actions of Defendants that are the subject of this suit.   The board of managers would immediately have plenary powers to withdraw the authority for the filing of this suit or any other suit contesting actions by the Defendants.   This authority was previously granted by the elected Board of Trustees.   More specifically, this would deprive the District of all of its rights under Texas law to contest the decision to replace the elected Board of Trustees with a board of managers.   The installation of the board of managers would, in effect, render this action moot.   Significantly, the installation of the board of managers would prevent Houston ISD from exercising its rights under applicable law to contest the actions of Defendants that are the subject of this suit in a judicial forum.

Defendant Conservator's current authority for the District appointed by the Defendant Commissioner is entirely sufficient to prevent any act or omission by the elected Board of Trustees, or the current Interim Superintendent and administrative staff of Houston ISD, that would cause harm or injury to the welfare of Houston ISD, its current and future students, or to the public welfare, during the period of a Preliminary Injunction.   The preliminary injunction would specifically prohibit the Defendant Commissioner from installation of a board of managers to replace the elected Board of

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

Trustees, during the pendency of this action, or until further order of this Court.  The balance of potential foreseeable harm from the granting of a preliminary injunction is in favor of Houston ISD.  Defendants cannot show any immediate threat of harm to themselves or to the HISD students, or the public, that requires the immediate removal of the elected Board of Trustees and its replacement by a board of managers.

In the absence of the issuance of a Preliminary Injunction, Plaintiff Houston ISD will also be irreparably harmed because, as the Texas Education Agency has insisted in other pending litigation, any attempt to seek legal review of the Commissioner's decision would constitute an application to seek retrospective relief from the Commissioner's decision.  In other words, the Commissioner and the Attorney General of Texas have taken the position that there is no judicial review of the Commissioner of Education's sanctions determination after it has been made, making unlawful acts unreviewable.  As a result, it is necessary to obtain a judicial resolution of the legal issues involved in the Commissioner's review, before those final Commissioner determinations are made.

## III. The injury to Houston ISD clearly outweighs the injury, if any, that the injunction's issuance would have on Defendants.

The harm to Houston ISD arising from the preclusion of its ability to find permanent leadership of their choice for the operation of the District is obvious. Defendants will suffer no adverse consequence by the granting of injunctive relief allowing the selection of a new Superintendent.  The balance of equities is clearly in favor of Houston ISD.

Although Plaintiff will continue to suffer severe, irreparable injury arising from the lack of permanent leadership if an injunction is not granted, Defendants will

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

experience no harm at all if an injunction is issued.  Defendants cannot demonstrate that the granting of the requested preliminary injunction would result in any harm to them, or to the current and future students, its taxpayers, voters, the public welfare, of the patrons of Houston ISD.

Neither the Commissioner, the Texas Education Agency, nor the State of Texas will be harmed by the issuance of a Preliminary Injunction.  The August 5, 2019 Preliminary SAI Report alleges no immediate peril represented by any act or omission of any Trustee or the Board as a whole.

## IV.   The injunction serves the public interest.

It is paramount to the public that a democratically-elected body exercises the responsibilities they were elected to conduct.  The Commissioner should be temporarily enjoined from replacing Houston ISD's elected Board of Trustees with a TEA-appointed board of managers.

It is in the public interest of the citizens and voters of the Houston Independent School District to be represented by elected officials of their own choosing.  Section 2 of the Voting Rights Act of 1965 prohibits voting practices or procedures that discriminate on the basis of race, color, or membership in one of the language minority groups identified in Section 4(f)(2) of the Act.  Most of the cases arising under Section 2's enactment involve challenges to at-large election schemes, but the section's prohibition against discrimination in voting applies nationwide to any voting standard, practice, or procedure that results in the denial or abridgement of the right of any citizen to vote on account of race, color, or membership in a language minority group. Section 2 is

28

permanent and has no expiration date as do certain other provisions of the Voting Rights Act.

In 1980, the Supreme Court held that this section, as originally enacted by Congress in 1964, was a restatement of the protections afforded by the 15th amendment. *Mobile v. Bolden*, 446 U.S. 55 (1980). Under that standard, a plaintiff had to prove that the standard, practice, or procedure was enacted or maintained, at least in part, by an invidious purpose.  In 1982, Congress examined the history of litigation under Section 2 since 1965 and concluded that Section 2 should be amended to provide that a plaintiff could establish a violation of the section if the evidence established that, in the context of the "totality of the circumstance of the local electoral process," the standard, practice, or procedure being challenged had the result of denying a racial or language minority an equal opportunity to participate in the political process.

This is exactly what is happening in school districts with high concentrations of minorities and students in Texas, as shown by the following table:

| District Name | % Minority Students[45] | Commissioner's Action [46] |
|---|---|---|
| Progreso ISD | African American-0% Hispanic-99.6% White-0.4% | Board of Managers, in Litigation |

---

[45]  *See https://rptsvr1.tea.texas.gov/perfreport/snapshot/2018/index.html*

[46]  *See http://tea4avcastro.tea.state.tx.us/accountability/accreditation/2018_2019 _accreditation_  statuses. html*

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

| | | |
|---|---|---|
| La Marque ISD | AfricanAmerican-66.7% Hispanic19.4 White-10.4% From 2016 data, prior to District consolidation | Consolidated with predominantly Anglo District |
| El Paso ISD | African American-03.5% Hispanic-83.6% White-9.5% | Board of Managers |
| Marlin ISD | African American-59.3% Hispanic-24.3% White-10.3% | Board of Managers and Conservator |
| Beaumont ISD | African American-59.8% Hispanic-99.6% White-0.4% | Board of Managers |
| Edgewood ISD | African American-1.5% Hispanic-97.4% White-0.6% | Board of Managers |
| South Side ISD | African American-1.6% Hispanic-90.8% White-7.0% | Board of Managers |
| South San Antonio ISD | African American-1.1% Hispanic-97.2% White-1.3% | Conservator |
| Harlandale ISD | African American-0.3% Hispanic-97.8% White-1.6% | Board of Managers recommended |
| Hearne ISD | African American-48.6% Hispanic-40.3% White-9.4% | Board of Managers Recommended, was avoided by assignment to Charter Operator |
| Edcouch-Elsa ISD | African American-0.1% Hispanic-99.5% White-0.4% | Conservator |

| Houston ISD | African American-24.0%<br>Hispanic-61.7%<br>White-8.8% | |
| State Totals | African American-12.6%<br>Hispanic-52.4.6%<br>White-27.8% | |

While the data above is of student populations, it is primarily from 2018 and is, therefore more recent and current than 2010 census data.  At least for the purposes of the preliminary injunction hearing, Plaintiff believes that student counts are significantly correlated with voting age population so as to raise the inference of discrimination against minority voters.

The Senate Committee on the Judiciary issued a report to accompany the 1982 Voting Rights Act legislation. In that report, it suggested several factors for courts to consider when determining if, within the totality of the circumstances in a jurisdiction, the operation of the electoral device being challenged results in a violation of Section 2. These factors include:

1. the history of official voting-related discrimination in the state or political subdivision;

2. the extent to which voting in the elections of the state or political subdivision is racially polarized;

3. the extent to which the state of political subdivision has used voting practices or procedures that tend to enhance the opportunity for discrimination against the minority group, such as unusually large election districts, majority-vote requirements, and prohibitions against bullet voting;

4. the exclusion of members of the minority group from candidate slating processes;

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

5.  the extent to which minority group members bear the effects of discrimination in areas such as education, employment, and health, which hinder their ability to participate effectively in the political process;

6.  the use of overt or subtle racial appeals in political campaigns; and

7.  the extent to which members of the minority group have been elected to public office in the jurisdiction.

S. Rep. No. 97-417, 97th Cong., 2d Sess. (1982), pages 28-29.

The Judiciary Committee also noted that the court could consider additional factors, such as whether there is a lack of responsiveness on the part of elected officials to the particularized needs of minority group members or where the policy underlying the state or political subdivision's use of the challenged standard, practice, or procedure is tenuous. However, the Judiciary Committee report describes this list of factors as neither exclusive nor comprehensive. Moreover, a plaintiff need not prove any particular number or a majority of these factors in order to succeed in a vote dilution claim.

In its first review of a case brought under the 1982 amendment, the Supreme Court explained that the "essence of a Section 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Thornburg v. Giggles*, 478 U.S. 30, 47 (1986); *see also Johnson v. DeGrandy*, 512 U.S. 997 (1994).

The statute continues to prohibit state and local officials from adopting or maintaining voting laws or procedures that purposefully discriminate on the basis of race, color, or membership in a language minority group. *Village of Arlington Heights*

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

*v. Metropolitan Hous. Dev. Corp*, 429 U.S. 252, 264–68 (1977); *see also Personnel Adm'r of Mass. v. Fenney*, 442 U.S. 256, 279 (1979).

## REQUEST FOR WAIVER OF BOND

Rule 65(c) of the Federal Rule of Civil Procedure provides that the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.  Fed. R. Civ. P. 65(c).

Although some courts have interpreted this provision as mandating a bond before a preliminary injunction will issue, *see, e.g.*, *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988)), the Fifth Circuit has rejected that notion. Within the Fifth Circuit, the amount of the security "is a matter for the discretion of the trial court."  *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (quoting *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978)); *see also Molton Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171 (6th Cir. 1995) (affirming district court's exercise of discretion in not requiring posting of bond prior to issuance of preliminary injunction in trademark infringement case); *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 207 F.R.D. 23 (E.D.N.Y. 2001) (denying motion to require plaintiff to post bond in trademark infringement case).

A bond has been dispensed with entirely where the court determined there was no realistic likelihood of harm to the defendant from enjoining its conduct. *See, e.g.*, *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003); *Hoechst Diafoil Co. v. Na Ya*

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction

*Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1996); *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996).

Additionally, a strong likelihood of success on the merits has also been relied on to dispense with requiring any bond. *See, e.g.*, *Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972).

As discussed above, there is no realistic likelihood of harm to the Defendants if a preliminary injunction issues and Houston ISD is likely to succeed on the merits.  Thus, Houston ISD should not be required to post a bond.

## CONCLUSION AND REQUESTS FOR RELIEF

For the foregoing reasons, Houston ISD more than satisfies the factors for issuance of a preliminary injunction and the Court should enter an order preventing Defendants from committing the following acts: (1) interfering with Houston ISD's selection of a new superintendent or interim superintendent; (2) replacing Houston ISD's elected Board of Trustees with a TEA-appointed board of managers; and (3) taking any other direct action, in the form of sanctions, based on the preliminary report regarding Special Accreditation Investigation #INV2019-10-034, issued on August 5, 2019.

Accordingly, Houston ISD requests the Court set this Application for hearing at the first available date and issue an order granting the Application and providing Houston ISD with the following relief:

A. Granting appropriate preliminary and permanent injunctive relief to which it shows itself entitled.

B. Waiving the posting of a bond or other security under Federal Rule of Civil Procedure 65(c); and

C. Granting Houston ISD such further and additional relief as the law and equity may permit and require.

Respectfully submitted,

By:    /s/ David Campbell

David J. Campbell
*dcampbell@808west.com*
State Bar No. 24057033
Kevin O'Hanlon
*kohanlon@808west.com*
State Bar No. 15235500
Benjamin Castillo
*bcastillo@808west.com*
State Bar No. 24077194

**O'HANLON, DEMERATH & CASTILLO**
808 West Avenue  |  Austin, Texas 78701
Tel: (512) 494-9949  |  Fax: (512) 494-9919

**Counsel for Plaintiff Houston ISD**

## CERTIFICATE OF CONFERENCE

I certify that on October 29, 2019, I conferred via email and telephone with Esteban Soto and Emily Ardolino, who indicated that Defendants are opposed to the relief requested in this Application.

/s/ David Campbell

David Campbell

## CERTIFICATE OF SERVICE

I certify that on October 29, 2019, the foregoing document was filed via the Court's CM/ECF system, causing electronic service upon all counsel of record.

/s/ David Campbell

David Campbell

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Application for Preliminary Injunction