IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HOUSTON INDEPENDENT SCHOOL DISTRICT | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | CIVIL CASE NO: 1:19-CV-00684-LY |
| THE TEXAS EDUCATION AGENCY; | § | |
| MIKE MORATH, COMMISSIONER OF | § | |
| EDUCATION, in his official capacity; and | § | |
| DORIS DELANEY, in her official capacity | § | |
| Defendants | § | |
| | § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF THIS DISTRICT COURT:

Plaintiff Houston Independent School District ("Houston ISD" or "the District") files this

Second Amended Complaint against Defendants Mike Morath, Commissioner of Education, in his

official capacity ("the Commissioner" or "Morath") and the Texas Education Agency ("TEA")

and Doris Delaney, in her official capacity and would show the Court the following:

# TABLE OF CONTENTS

Page

I.   PARTIES ........................................................................................................5

II.  JURISDICTION AND VENUE ......................................................................5

III. FACTS ............................................................................................................7

A.  Houston ISD has worked diligently to improve student outcomes at
    Kashmere High School, as reflected in the most recent accountability
    ratings. ....................................................................................................8

    (1) In 2016, TEA appoints a conservator to oversee Kashmere High School. ................8

    (2) A turnaround plan is approved for Kashmere High School in 2017. .........................11

    (3) After hard work and perseverance, student outcomes at Kashmere High
        School show improvement. .........................................................................15

B.  In 2018, Houston ISD appoints an interim superintendent and begins a
    superintendent search. .............................................................................15

C.  TEA launches a special accreditation investigation with the goal of
    replacing Houston ISD's elected board of trustees with an unelected
    board of managers. ..................................................................................18

    (1) Houston ISD receives notice from TEA of a special accreditation
        investigation (SAI # INV2019-10-034) regarding alleged TOMA violations.............18

    (2) Houston ISD receives an amended notice from TEA of the special
        accreditation investigation (SAI # INV2019-10-034) regarding alleged
        TOMA violations. ......................................................................................19

    (3) TEA interviews Houston ISD's board members regarding the TOMA
        allegations. ...............................................................................................20

D.  The Texas Court of Criminal Appeals declares the "walking forum"
    provision of TOMA to be unconstitutionally vague.................................21

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

E.   TEA responds to Doyal by obtaining an advisory opinion regarding TOMA that conflicts with the Fifth Circuit's holding in Hispanic Education Committee v. Houston Independent School District. ...........................22

F.   TEA changes the allegations in the special accreditation investigation with the goal of replacing Houston ISD's elected board of trustees with an unelected board of managers. ..................................................................23

   (1)  TEA issues a Second Amended SAI Notice with entirely different alleged complaints. .................................................................................................23

   (2)  TEA conducts a one-sided investigation of these new complaints without speaking to Houston ISD's board members. ..........................................24

G.   The Conservator directs Houston ISD to take no action regarding its superintendent search. ........................................................................................24

H.   TEA threatens to replace Houston ISD's elected Board of Trustees with an unelected board of managers. ..............................................................................27

   (1)  TEA's report seeks to punish board members for the lawful exercise of their First Amendment rights. .......................................................................28

   (2)  TEA seeks to punish the District based on allegations that board members have overstepped their authority. .........................................................31

   (3)  TEA seeks to punish the District for "historical problems" with contract awarding and contract procurement. ...................................................32

I.   Houston ISD's elected Board of Trustees oversees a school district that is academically and financially healthy. .......................................................................33

   (1)  Houston ISD increased its overall academic rating and maintained its superior financial rating for 2019. .....................................................35

   (2)  Houston ISD's Board of Trustees have adopted procedures and governance models to help them implement strategies to improve governance and focus on student outcomes. .............................................................................37

IV.   CAUSES OF ACTION ..........................................................................................39

A.   First Cause of Action: First Amendment Retaliation. ............................................ 39

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

B.  Second Cause of Action: Unlawful Restriction of Speech. ................................. 41

C.  Third Cause of Action: Overbreadth. .................................................................. 42

D.  Fourth Cause of Action: Unconstitutional Vagueness........................................... 42

E.  Fifth Cause of Action: Procedural Due Process Violations by Defendants
    TEA and Morath. ................................................................................................ 43

F.  Sixth Cause of Action: Violations of the Voting Rights Act by
    Defendants TEA and Morath. ............................................................................. 43

G.  Seventh Cause of Action: Violations of Title VI of the Civil Rights Act
    of 1964 ................................................................................................................ 44

H.  Eighth Cause of Action: Violations of the Equal Protection Clause ................... 44

I.   Ninth Cause of Action: Declaratory Judgment regarding the Texas Open
    Meetings Act. ..................................................................................................... 45

J.   Tenth Cause of Action: Declaratory Judgment regarding Ultra Vires
    Acts. ................................................................................................................... 45

    (1) The Conservator had no legal authority to direct Houston ISD's Board of
        Trustees and administration to suspend the superintendent search and has no
        legal authority to act as conservator................................................................46

    (2) The Commissioner has no legal authority to replace the elected board of
        trustees with a board of managers.....................................................................48

V.   REQUEST FOR INJUNCTIVE RELIEF....................................................................50

VI.  CONCLUSION AND REQUESTS FOR RELIEF.......................................................51

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

## I.    PARTIES

1.    Plaintiff Houston Independent School District is a school district in the state of Texas located in Harris County, Texas.

2.    Defendant Texas Education Association is a state agency and has appeared through counsel.

3.    Defendant Mike Morath is the Texas Commissioner of Education and has appeared through counsel.

4.    Defendant Doris Delaney ("Conservator") was appointed by the Commissioner to serve as a conservator in Houston ISD to ensure and oversee district-level support for Kashmere High School.  She may be served with process either at 1701 North Congress Avenue, Austin, Texas, 78701-1494 or by hand delivery if service of process is not waived.

## II.    JURISDICTION AND VENUE

5.    This Court has jurisdiction over this action. 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), 2201, 2202.  Defendants TEA and Morath removed this case to federal court.

6.    Venue is proper in the Western District of Texas.  20 U.S.C. § 1391(c).

7.    The Court has jurisdiction because Defendants have threatened to replace the District's elected board of trustees with an unelected board of trustees and to take other punitive actions against the District.  *See Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002) (holding that the declaratory judgment claims were ripe for adjudication based on "threats of prosecution and litigation"); *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993).

8.    The Court also has jurisdiction because of *ultra vires* conduct.  This Court has jurisdiction to hear *ultra vires* claims against individuals in their official capacities because *ultra*

*vires* claims are an important means of reasserting the control of the State over its wayward agents who act without legal authority.  *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)).  *Ultra vires* claims cannot be defeated by an immunity defense because "when a governmental officer is sued for allegedly *ultra vires* acts, governmental immunity does not apply from the outset."  *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 n.1 (Tex. 2016).

9.      Houston ISD is not seeking retrospective monetary relief in this lawsuit.  *See Heinrich*, 284 S.W.3d at 380.  Rather, the District is seeking injunctive relief to remedy constitutional violations and prevent or remedy *ultra vires* acts.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

## III.   FACTS

10.    Houston ISD is one of the most diverse districts in the state of Texas.  As the largest school district in the state, Houston ISD works to provide a stable learning environment to approximately 210,000 students at 280 campuses.

11.    Houston ISD's student population is 61.84% Hispanic, 24.02% African American, 8.7% White, and 4.05% Asian.  The demographics of Houston ISD's voting population is substantially similar to the demographics of its student population.

12.    Houston ISD has filed this lawsuit because it is the victim of a pretextual TEA investigation that attempts to punish Houston ISD for conduct that is lawful, necessary to the functioning of the District, and strongly protected as inherent to our system of democracy.

13.    Before launching this investigation, TEA had predetermined the result: replacement of Houston ISD's elected board members with an unelected board of managers.

14.    Every school district in which TEA has attempted to replace an elected board of trustees with an unelected board of managers has been a school district in which a majority of voters were people of color.  This has resulted in a disparate impact on people of color in the state of Texas.

15.    In the course of conducting this investigation, TEA has unconstitutionally and unlawfully stifled the First Amendment rights of Houston ISD's board members — rights which Houston ISD's board members must exercise in order to effectively perform their duties as members of the Houston ISD Board of Trustees.

16.    And as a result of this investigation, TEA has reached conclusions based on fundamental misunderstandings of the law and stated findings of fact that are the result of a one-

sided investigation, are unsupported by any credible evidence, and are based on the misrepresentations of unnamed individuals.

17.     TEA intends to punish the District by replacing Houston ISD's elected Board of Trustees with an unelected board of managers — a sanction that is unavailable under the law and facts of this case.

**A. Houston ISD has worked diligently to improve student outcomes at Kashmere High School, as reflected in the most recent accountability ratings.**

18.     In 2016 the District was ordered to submit a campus turnaround plan for Kashmere High School because of its academic performance ratings.

19.     Following this order, TEA appointed a campus-level conservator to assist the District in supporting Kashmere High School.  Ultimately, the campus turnaround plan was successful, and Kashmere has received acceptable accountability ratings

*(1) In 2016, TEA appoints a conservator to oversee Kashmere High School.*

20.     In a letter dated September 2, 2016, the Commissioner notified the District that he was appointing a conservator to ensure and oversee district-level support for Kashmere High School.

21.     The Commissioner stated that the appointment was made "pursuant to the authority provided in Texas Education Code (TEC) §§39.102(a)(7), 39.107(c), and 19 Texas Administrative Code (TAC) §§97.1064(a)(2)."

22.     As it existed in 2016, Section 39.102(a)(7)[1] allowed the Commissioner to appoint a conservator for a school district if (1) a school district does not satisfy the accreditation criteria under Section 39.052, (2) a school district does not satisfy the academic performance standards under Section 39.053 or Section 39.054, (3) a school district does not satisfy any financial accountability standard as determined by commissioner rule, or (4) if considered appropriate by the Commissioner on the basis of a special accreditation investigation under Section 39.057.

23.     In the September 2, 2016 letter, the Commissioner did not state that Houston ISD had not satisfied accreditation criteria under Section 39.052.

24.     In 2016, Houston ISD satisfied accreditation criteria under Section 39.052.

25.     In the September 2, 2016 letter, the Commissioner did not state that Houston ISD had not satisfied the academic performance standards under Section 39.053 or 39.054.

26.     In 2016, Houston ISD satisfied the academic performance standards under Section 39.053 or 39.054.

_____

[1]     In September 2016, there were two versions of section 39.102(a)(7).

The first version stated: "If a school district does not satisfy the accreditation criteria under Section 39.052, the academic performance standards under Section 39.053 or 39.054, or any financial accountability standard as determined by commissioner rule, or if considered appropriate by the commissioner on the basis of a special accreditation investigation under Section 39.057, the commissioner shall take any of the following actions to the extent the commissioner determines necessary . . . [including] "appoint a conservator to oversee the operations of the district." TEX. EDUC. CODE §§ 39.102(a), 39.102(a)(7).

The second version stated: "If a school district does not satisfy the accreditation criteria under Section 39.052, the academic performance standards under Section 39.053 or 39.054, or any financial accountability standard as determined by commissioner rule the commissioner shall take any of the following actions to the extent the commissioner determines necessary . . . [including] "appoint a conservator to oversee the operations of the district." Id.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

27.     In the September 2, 2016 letter, the Commissioner did not state that Houston ISD had not satisfied any financial accountability standard determined by commissioner rule.

28.     In 2016, Houston ISD satisfied the financial accountability standards determined by commissioner rule.

29.     As it existed in 2016, Section 39.107[2] of the Texas Education Code allowed the Commissioner to appoint a conservator "to ensure and oversee district-level support to low-performing campuses and the implementation of the updated targeted improvement plan" if a campus is required to prepare and submit a campus turnaround plan because it had been identified as unacceptable for two consecutive school years.

30.     In his September 2, 2016 letter, the Commissioner appointed Dr. Doris Delaney as the Conservator and defined her authority as follows:

- Ensuring that a comprehensive needs assessment of *the campus* is performed;

- Ensuring that an evaluation of the efficacy of the district's resource allocation to *the campus* for school years 2015–2016 and 2016–2017 is performed; and

- Overseeing instructional delivery at *the campus* for school year 2016–2017.

(emphasis added).  "The campus" referred to is Kashmere High School.

---

[2]   In September 2016, the statute stated: "A campus subject to Subsection (a) shall implement the updated targeted improvement plan as approved by the commissioner.  The Commissioner may appoint a monitor, conservator, management team, or board of managers to the district to ensure and oversee district-level support to low-performing campuses and the implementation of the updated targeted improvement plan.  In making appointments under this subsection, the commissioner shall consider individuals who have demonstrated success in managing campuses with student populations similar to the campus at which the individual appointed will serve."  *Id.* § 39.107(c).  Subsection (a) applies to a campus that has been identified as unacceptable for two consecutive school years.  *Id.* § 39.107(a).

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

31.     The scope of the Conservator's role was limited to the oversight of Kashmere High School.

### (2) A turnaround plan is approved for Kashmere High School in 2017.

32.     Although the Commissioner approved a campus turnaround plan for Kashmere High School in 2017, the Commissioner has not removed the Conservator.

33.     When the Commissioner appoints a conservator, the Commissioner is required to review the need for a conservator every 90 days and must determine whether the continued appointment is necessary for effective governance or delivery of instructional services.  TEX. EDUC. CODE § 39A.003(b).

34.     On information and belief, the Commissioner has not reviewed the need for a conservator every 90 days since September 2, 2016.

35.     On information and belief, the Commissioner has not determined whether the continued appointment is necessary for effective governance or delivery of instructional services every 90 days since September 2, 2016.

36.     Although the Commissioner has not reviewed the need for a conservator every 90 days since September 2, 2016, the Commissioner has failed to explicitly remove the Conservator from Houston ISD.

37.     More than ninety days after Conservator's appointment, in correspondence dated February 28, 2017, Deputy Commissioner of Governance A.J. Crabill notified the District that "in accordance with the requirements of Texas Education Code §39.111(b), [Crabill had] conducted a quarterly review of all conservators and management teams appointed to oversee district operations throughout the state, as well as a review of all TEA monitors and board managers

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

placements." In that correspondence, Mr. Crabill stated: "At this time, it is my decision to continue the appointment of the conservator for Houston Independent School District."

38.    In correspondence dated May 26, 2017, Deputy Commissioner of Governance A.J. Crabill notified the District that "in accordance with the requirements of Texas Education Code §39.111(b), [Crabill had] conducted a quarterly review of all conservators and management teams appointed to oversee district operations throughout the state, as well as a review of all TEA monitors and board managers placements." In that correspondence, Mr. Crabill stated: "At this time, it is my decision to continue the appointment of the conservator for Houston Independent School District."

39.    On July 13, 2017, the Commissioner stated that the Conservator's appointment "as the conservator *for Kashmere High School*" would continue. (Emphasis added.)

40.    In correspondence dated August 24, 2017, Deputy Commissioner of Governance A.J. Crabill notified the District that "in accordance with the requirements of Texas Education Code §39.111(b), [Crabill had] conducted a quarterly review of all conservators and management teams appointed to oversee district operations throughout the state, as well as a review of all TEA monitors and board managers placements." In that correspondence, Mr. Crabill stated: "At this time, it is my decision to continue the appointment of the conservator for Houston Independent School District."

41.    In correspondence dated November 1, 2017, Deputy Commissioner of Governance A.J. Crabill notified the District that "in accordance with the requirements of Texas Education Code §39.111(b), [Crabill had] conducted a quarterly review of all conservators and management teams appointed to oversee district operations throughout the state, as well as a review of all TEA

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

monitors and board managers placements." In that correspondence, Mr. Crabill stated: "At this time, it is my decision to continue the appointment of the conservator for Houston Independent School District."

42.     In correspondence dated December 1, 2017, the Commissioner approved a campus turnaround plan for Kashmere High School "to be implemented for the remainder of the 2017-2018 school year." The Commissioner stated that the District's "assigned TEA consultant within the Division of School Improvement will be working closely with you on the implementation and monitoring of your plan throughout the remainder of the 2017-2018 school year." The Commissioner did not notify the District that he was either removing the Conservator or continuing the Conservator's appointment. The Commissioner did state that he did reserve the right to appoint a conservator.

43.     The next correspondence Houston ISD received regarding the Conservator was dated June 27, 2018, more than ninety days after the previous correspondence regarding the Conservator. In that correspondence, Deputy Commissioner of Governance A.J. Crabill stated that he had "conducted a quarterly review of all conservators and management teams appointed to oversee district operations throughout the state, as well as a review of all TEA monitors and board managers placements." In that correspondence, Mr. Crabill stated that he had decided to "continue the appointment of the conservator for Houston Independent School District."

44.     In correspondence dated August 1, 2018, Deputy Commissioner of Governance A.J. Crabill notified the District that "in accordance with the requirements of Texas Education Code §39.111(b), [Crabill had] conducted a quarterly review of all conservators and management teams appointed to oversee district operations throughout the state, as well as a review of all TEA

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

monitors and board managers placements."  In that correspondence, Mr. Crabill stated: "At this time, it is my decision to continue the appointment of the conservator for Houston Independent School District."

45.     In correspondence dated October 22, 2018, Deputy Commissioner of Governance A.J. Crabill notified the District that "in accordance with the requirements of Texas Education Code §39.111(b), [Crabill had] conducted a quarterly review of all conservators and management teams appointed to oversee district operations throughout the state, as well as a review of all TEA monitors and board managers placements."  In that correspondence, Mr. Crabill stated: "At this time, it is my decision to continue the appointment of the conservator for Houston Independent School District."

46.     More than ninety days later, in correspondence dated February 5, 2019, Deputy Commissioner of Governance A.J. Crabill notified the District that "in accordance with the requirements of Texas Education Code §39.111(b), [Crabill had] conducted a quarterly review of all conservators and management teams appointed to oversee district operations throughout the state, as well as a review of all TEA monitors and board managers placements."  In that correspondence, Mr. Crabill stated: "At this time, it is my decision to continue the appointment of the conservator for Houston Independent School District."

47.     During the more than two years since the conservator's appointment regarding Kashmere High School, there have been gaps of more than 90 days between quarterly reports, which indicates that the Commissioner has not reviewed the need for the conservator and determined that the conservator's continued appointment is necessary every 90 days.

48.     The Commissioner has not reviewed the need for the Conservator every 90 days and determined that the Conservator's continued appointment is necessary for effective governance or delivery of instructional services

49.     During 2016, the Conservator issued no directives to either Houston ISD's Board of Trustees or interim superintendent.

50.     During 2017, the Conservator issued no directives to either Houston ISD's Board of Trustees or interim superintendent.

51.     During 2018, the Conservator issued no directives to either Houston ISD's Board of Trustees or interim superintendent.

> ### (3) After hard work and perseverance, student outcomes at Kashmere High School show improvement.

52.     In 2017, Kashmere High School received an unacceptable performance rating.

53.     In 2018, Kashmere High School — and many other Houston ISD campuses — did not receive an unacceptable performance rating (or any rating) because the "campus was directly affected by Hurricane Harvey and did not receive an overall rating."

54.     In 2019, Kashmere High School received an acceptable performance rating.

## B. In 2018, Houston ISD appoints an interim superintendent and begins a superintendent search.

55.     Early in 2018, Houston ISD appointed an interim superintendent after the departure of its previous superintendent.

56.     On multiple occasions in 2018 the Houston ISD Board of Trustees discussed the employment of an interim superintendent at publicly called meetings.

57.     On one occasion, Houston ISD board members met with Dr. Abelardo Saavedra, who is considered by many to be an extremely well-respected and credentialed previous superintendent of Houston ISD.

58.     Some Houston ISD board members consider Dr. Saavedra to be a mentor and seek his wisdom and institutional knowledge regarding Houston ISD.

59.     Dr. Saavedra agreed to make himself available to Houston ISD board members when he was briefly in Houston, Texas for other matters on October 8, 2018.  Dr. Saavedra made himself available to meet with any board members whose schedules permitted at a public restaurant.

60.     On or about October 8, 2018, some board members met with Dr. Saavedra in the public restaurant.  During this meeting board members came and went as their schedules permitted.

61.     During these discussions with Dr. Saavedra, board members discussed various issues they were confronting as board members: feeling disenfranchised on the board; complaints that the interim superintendent was ignoring them and did not respect them; and conduct by various individuals that was disrespectful, harassing, and threatening.

62.     At the time of these discussions, Dr. Saavedra was not being considered for the interim superintendent position at Houston ISD.

63.     At the time of these discussions, no Board members discussed any terms of employment, or any other matters regarding the potential appointment of Dr. Saavedra as interim superintendent.

64.     During these discussions, board members did not interview Dr. Saavedra for the position of interim superintendent.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

65.     At no time during this meeting with Dr. Saavedra was a quorum of board members present.

66.     On October 11, 2018, at a formal board meeting, Houston ISD board members discussed a number of topics including the superintendent search and the employment of an interim superintendent.

67.     At this board meeting, numerous board members expressed frustration with the superintendent search and publicly expressed their opinions about a potential replacement for the current interim superintendent.

68.     The publicly-posted agenda for this October 11, 2018 meeting including the following agenda item: "Consider employment of interim superintendent and employment contract through September 30, 2019."

69.     The publicly-posted agenda item was not placed on the agenda by any of the board members who met with Dr. Saavedra.  And the publicly-posted agenda item was not requested by any of the board members who met with Dr. Saavedra.

70.     When this agenda item was considered in open session, Trustee Davila put forward a motion to consider employment of Dr. Saavedra as interim superintendent and to offer him an employment contract.

71.     Trustee Davila's motion was entirely consistent with the publicly-posted item on the board agenda.

72.     This motion was discussed in open session and voted on by board members.

73.     In open session, a majority of Houston ISD's board members voted on the motion, and the motion carried a majority.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

74.     However, ultimately no interim superintendent contract was finalized between Dr. Saavedra and Houston ISD.

## C. TEA launches a special accreditation investigation with the goal of replacing Houston ISD's elected board of trustees with an unelected board of managers.

75.     On January 3, 2019, Governor Abbott published the following statement on Twitter regarding Houston ISD: "What a joke. HISD leadership is a disaster. Their self-centered ineptitude has failed the children they are supposed to educate.  If there was a school board that needs to be taken over and reformed it's HISD.  Their students & parents deserve change."

76.     Governor Abbott published this statement in response to an opinion editorial titled "To save Houston's schools, fight the TEA" that was published by the Houston Chronicle and authored by Kandice Webber, Travis McGee, and Sarah Becker.

77.     That editorial stated that "it is understandable that TEA's takeover threats have frightened many of the traditional defenders of public education."

78.     Approximately three weeks after the Governor's public statement, TEA launched an investigation into Houston ISD.

### (1) Houston ISD receives notice from TEA of a special accreditation investigation (SAI # INV2019-10-034) regarding alleged TOMA violations.

79.     TEA instigated a Special Accreditation Investigation and sent the District a Notice of Special Accreditation Investigation (SAI # INV2019-10-034) ("SAI Notice") dated January 22, 2019.

80.     The SAI Notice was issued by Jason Hewitt, Director Special Investigations Unit and contained the following description of complaints: "Houston ISD Board of Trustees may have violated The Open Meetings Act by deliberating district business prior to a regularly scheduled

board meeting regarding the potential removal of the current interim superintendent and the installation of a new interim superintendent."

81.     The SAI Notice asserted an alleged violation of Texas Education Code §§ 11.051 and 11.1511 and Chapter 551 of the Texas Government Code.

82.     The SAI Notice included six enumerated requests for production of documents and included a witness list of ten named individuals who might be interviewed.

83.     The SAI Notice indicated that the investigation was being conducted pursuant to the authority provided in Texas Education Code §39.057 (a)(6), (16).

84.     The SAI Notice provides no notice of any identified "violation of a role or duty of the board members or the administration."

### (2) Houston ISD receives an amended notice from TEA of the special accreditation investigation (SAI # INV2019-10-034) regarding alleged TOMA violations.

85.     The District received an amended Notice of Special Accreditation Investigation (SAI # INV2019-10-034) ("First Amended SAI Notice") that was substantially similar to the original notice and was also dated January 22, 2019.

86.     The First Amended SAI Notice was issued by Jason Hewitt, Director Special Investigations Unit and contained the same described complaint: "Houston ISD Board of Trustees may have violated The Open Meetings Act by deliberating district business prior to a regularly scheduled board meeting regarding the potential removal of the current interim superintendent and the installation of a new interim superintendent."

87.     The First Amended SAI Notice again asserted alleged violations of Texas Education Code §§ 11.051 and 11.1511 and Chapter 551 of the Texas Government Code.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

88.     The First Amended SAI Notice included six enumerated requests for production of documents.

89.     The First Amended SAI Notice included a witness list of ten named individuals who might be interviewed.

90.     The First Amended SAI Notice indicated that the investigation was being conducted pursuant to the authority provided in Texas Education Code §39.057 (a)(6), (16).

91.     The First Amended SAI Notice provides no notice of any identified "violation of a role or duty of the board members or the administration."

92.     The complaint described in the SAI Notice and First Amended SAI Notice is false and is unsupported by any evidence.  A majority of Houston ISD board members did not meet to discuss the potential removal of the current interim superintendent and the installation of a new interim superintendent prior to a regularly scheduled board meeting.

### (3) TEA interviews Houston ISD's board members regarding the TOMA allegations.

93.     Pursuant to the First Amended SAI Notice, TEA conducted an onsite investigation, reviewed documents, and conducted interviews with Board Members and the District's administration.

94.     On February 8, 2019, the District received notice that the documents requested in the First Amended SAI Notice should be provided by February 22, 2019.  The District provided all requested documents in a timely manner.

95.     During this investigation, TEA obtained no evidence that five or more Houston ISD board members deliberated regarding the potential removal of the current interim superintendent at a meeting with a quorum of board members outside of a regularly scheduled board meeting.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

### D. The Texas Court of Criminal Appeals declares the "walking forum" provision of TOMA to be unconstitutionally vague.

96.     One provision of the Texas Open Meetings Act (i.e., Section 551.143) previously made it illegal for board members to meet in numbers of less than a quorum for the purpose of "secret deliberations in violation of this chapter."[3]  Section 551.143 purportedly made "walking quorums" illegal.

97.     The Fifth Circuit has previously held that enforcement of Section 551.143 is limited to local prosecutors:

> Appellants allege that the Board improperly held these private meetings in numbers less than a quorum in order to circumvent the formal requirements of the TOMA, in violation of the criminal conspiracy provision, § 551.143. That provision is inapplicable to this suit, *as enforcement is limited to the local prosecutor*.

*Hispanic Educ. Comm. v. Houston Indep. Sch. Dist.*, No. 95-20029, 1995 U.S. App. LEXIS 42227, *4 (5th Cir. 1995) (unpublished) (emphasis added).

98.     On February 27, 2019, approximately one month after TEA initiated its investigation, the Texas Court of Criminal Appeals issued an opinion holding that Section 551.143 was unconstitutionally vague.[4]

---

[3]     *State v. Doyal*, No. PD-0254-18, 2019 Tex. Crim. App. LEXIS 161, at *2 (Tex. Crim. App. Feb. 27, 2019).

[4]     *Id.*

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

**E. TEA responds to *Doyal* by obtaining an advisory opinion regarding TOMA that conflicts with the Fifth Circuit's holding in *Hispanic Education Committee v. Houston Independent School District*.**

99.     On April 24, 2019, in the wake of the *Doyal* decision, the Commissioner requested

an advisory opinion from the Texas Attorney General addressing whether "walking forums" were

prohibited by the remaining civil provisions of TOMA:

> Given the ruling in the *Doyal* case, if a quorum of a governmental body subject to the Texas Open Meetings Act deliberates about an item of public business by meeting successively in numbers less than a quorum outside an authorized meeting, does the governmental body violate the Texas Open Meetings Act, and, if so, are civil remedies still available? If civil remedies are available, does this include regulatory actions based on a [sic] such a violation?

100.     On May 24, 2019, the Texas Attorney General issued an advisory opinion (KP-

0254) erroneously concluding that "walking forums" were prohibited by the civil provisions of

TOMA:

> If a quorum of a governmental body deliberates about public business within the jurisdiction of the body outside of a meeting authorized by the Texas Open Meetings Act, through multiple communications each involving fewer than a quorum, the governmental body violates the Act.

> Action taken by a governmental body in violation of the Act is voidable. In addition, any interested person may bring an action by mandamus or injunction to stop, prevent , or reverse a violation or threatened violation of the Act by members of a governmental body.

> If the Texas Education Agency conducts an investigation as authorized by section 39.057 of the Education Code and concludes that members of a school district board of trustees violated their duty to comply with the Act, it could take appropriate civil action authorized by subsection 39.057(d) of the Education Code.

101.     The Texas Attorney General's advisory opinion fails to cite either *Hispanic*

*Education Committee v. Houston Independent  School District*, No. 95-20029, 1995 U.S. App.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

LEXIS 42227 (5th Cir. 1995) (unpublished) or *Hispanic Education Committee v. Houston Indep.*

*Sch. Dist.*, 886 F. Supp. 606, 610 (S.D. Tex. 1994), *aff'd by* 1995 U.S. App. LEXIS 42227.

102.    The Texas Attorney General's opinion is not consistent with the Fifth Circuit's

holding in  *Hispanic Education Committee v. Houston Independent  School District.*

**F.  TEA changes the allegations in the special accreditation investigation with the goal of replacing  Houston ISD's elected  board  of  trustees  with  an  unelected  board  of managers.**

103.    On the same day the Texas Attorney General issued this advisory opinion, TEA

prepared a second amended Notice of Special Accreditation Investigation (SAI # INV2019-10-

034) ("Second Amended SAI Notice").

*(1) TEA issues a Second Amended SAI Notice with entirely different alleged complaints.*

104.    The Second Amended SAI Notice was issued by Jason Hewitt, Director Special

Investigations Unit and replaced  the  prior  description  of  complaints  with  the  following:

"Houston ISD Board of Trustees may have violated the contract procurement process, competitive

bidding, awarding, and management of contracts."

105.    The Second Amended SAI Notice again asserted an alleged violation of  Texas

Education Code § 11.051.  However, the Second Amended SAI removed the alleged violations of

Texas Education Code § 11.1511 and Chapter 551 of the Texas Government Code and replaced

them with an alleged violation of Texas Education Code § 44.031.

106.    The Second Amended SAI Notice did not include any request for production of

documents and stated: "Investigators will determine [a] list of documents to be collected at a later

time during the investigation."

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

107.    The Second Amended SAI Notice did not include any named individuals who might be interviewed and instead stated:   "Investigators will determine [a] list of potential witnesses to be interviewed at a later time during the investigation."

108.    The Second Amended SAI Notice indicated that the investigation was being conducted pursuant to the same authority as prior notices had asserted, i.e., Texas Education Code §39.057 (a)(6), (16).

> **(2) TEA conducts a one-sided investigation of these new complaints without speaking to Houston ISD's board members.**

109.    Unlike its investigation into the alleged TOMA violations, TEA did not interview any Houston ISD board members regarding the new complaints in the Second Amended SAI Notice.

110.    Instead, TEA relied largely on statements by unnamed administration officials without considering the credibility of these unnamed witnesses.

111.    As a result, much of the information TEA obtained during this investigation was flawed and untrustworthy.

**G. The Conservator directs Houston ISD to take no action regarding its superintendent search.**

112.    On March 25, 2019, the Conservator stepped outside her role as a campus-level conservator and directed Houston ISD's board of trustees to halt its search for a permanent superintendent.

113.    Filling the position of a permanent superintendent is a pressing issue that Houston ISD has faced since 2018.  Despite past disagreements about the superintendent search, Houston ISD had moved forward with the superintendent search in early 2019.

24

114.    That progress forward was stopped on March 25, 2019, when the Conservator issued a directive that the Board of Trustees and administration of the Houston ISD immediately suspend its search for a superintendent until (1) TEA completes Special Accreditation Investigation (SAI # INV2019-10-034) and (2) the Board receives written authorization from the Conservator to resume the search activities.

115.    The Conservator's directive contains no mention of Kashmere High School.

116.    The Conservator's directive did not relate to district-level support to low-performing campuses or the implementation of an updated targeted improvement plan.

117.    This is the first directive the Conservator had issued to the District's Board of Trustees and administration.

118.    In correspondence dated March 25, 2019, the Commissioner issued a letter to Houston ISD's interim superintendent and board president in order to "clarify[] the specifically enumerated powers and duties of the conservator, pursuant to the authority in TEC §39A.003(a) and (c)."

119.    In the March 25, 2019 letter, the Commissioner purported to expand the Conservator's role to be the following:

- Ensuring and overseeing district-level support to low-performing campuses within the district;

- Ensuring and overseeing the implementation of the district's turnaround efforts to support its low-performing campuses (Achieve 180);

- Attending board meetings and overseeing the governance of the district; and

- Submitting monthly reports, including any special reports requested by the Texas Education Agency.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

120.    In the March 25, 2019 letter, the Commissioner asserts that the Conservator "was appointed" in September 2, 2016 "pursuant to the authority provided in Texas Education Code (TEC) §§39.054(e), 39A.002(7), 39A.102, and 39A.003, and 19 TAC §§ 97.1064(a)(2), 97.1064(d)(2), 97.1065(b) and 97.1073(c)."   Many of these cited statutory provisions and/or agency regulations did not exist on September 2, 2016.  For example, Section 39A.002(7) was not enacted until 2017 and became effective on September 1, 2017.

121.    In the March 25, 2019 letter, the Commissioner did not state that the Conservator had been appointed because Houston ISD had not satisfied accreditation criteria under Section 39.052 of the Texas Education Code.

122.    At all relevant times, Houston ISD has satisfied accreditation criteria under Section 39.052 of the Texas Education Code.

123.    In the March 25, 2019 letter, the Commissioner did not state that the Conservator had been appointed because Houston ISD had not satisfied the academic performance standards under either Section 39.053 or Section 39.054 of the Texas Education Code.

124.    At all relevant times, Houston ISD satisfied the academic performance standards under either Section 39.053 or Section 39.054 of the Texas Education Code.

125.    In the March 25, 2019 letter, the Commissioner did not state that the Conservator had been appointed because Houston ISD had not satisfied any financial accountability standard determined by commissioner rule.

126.    At all relevant times, Houston ISD satisfied the financial accountability standards determined by commissioner rule.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

127.    In the March 25, 2019 letter, the Commissioner did not state that the Conservator had been appointed on the basis of a special accreditation investigation under Section 39.057.

## H.  TEA threatens to replace Houston ISD's elected Board of Trustees with an unelected board of managers.

128.    On August 5, 2019, TEA issued a preliminary report regarding  Special Accreditation  Investigation  (SAI # INV2019-10-034)  threatening  to  lower  Houston ISD's accreditation status, appoint a conservator, and install a board of managers "in accordance with Tex. Educ. Code §39.057(d) to replace the existing Board of Trustees."

129.    In  the  report,  TEA  asserts  that  Houston  ISD  board  members  have  had disagreements regarding the superintendent search and contends that "[c]onflicts between trustees not only highlight a difference of opinion, they expose a factional divide that prevents the HISD governing body from moving forward as a district."

130.    But disagreements are part of democracy.  Houston ISD's board members are passionate about the communities they represent and zealously advocate for their positions.

131.    And, despite board members' disagreements, Houston ISD's Board of Trustees *was* moving forward with a search for a superintendent when TEA's conservator issued a directive that prevented Houston ISD from moving forward with its superintendent search.

132.    In  the  report,  TEA  attempts  to  criticize  the  board  members'  actions  at  the October 11, 2018 meeting by asserting that a board member "motioned to terminate the current interim superintendent and hire a new interim superintendent with no prior notice that the position of interim superintendent was under consideration."

133.    But the Board Agenda for this meeting included the following agenda item: "Consider the employment of interim superintendent and employment contract through September 30, 2019."

134.    TEA's investigation and recommendations in the report are not based on any violation of law, rule, or policy at the October 11, 2018 board meeting.

135.    Nevertheless, TEA admits that its intervention was prompted by the motion and the subsequent vote at the October 11, 2018 meeting.

### (1) TEA's report seeks to punish board members for the lawful exercise of their First Amendment rights.

136.    In the report, TEA criticizes the District's board members for exercising their rights to free speech and assembly and asserts that Houston ISD's board members have violated TOMA's civil provisions by having successive meetings, in groups of less than a quorum, with Dr. Saavedra.

137.    TEA's investigation into this first allegation is fundamentally flawed by TEA's misunderstanding of the law.  The conduct alleged in TEA's report does not, as a matter of law, violate TOMA's civil provisions.

138.    TEA has been investigating Houston ISD for months in an attempt to find a violation of the TOMA's civil provisions.

139.    This investigation is founded on the faulty legal premise that TOMA's civil provisions can be violated by successive meetings of less than a quorum of board members.

140.    TOMA's civil provisions cannot be violated by successive meetings of less than a quorum.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

141.    The Fifth Circuit has held that TOMA's civil provisions cannot be violated by Houston ISD unless at least five board members are present at a meeting:

> The Board consists of nine members.  Therefore, to have a quorum and thereby a meeting to which the TOMA would be applicable, at least five members must be present.

*Hispanic Educ. Comm. v. Houston Indep. Sch. Dist.*, No. 95-20029, 1995 U.S. App. LEXIS 42227, *4 (5th Cir. 1995) (unpublished).

142.    It is still true that the Houston ISD Board of Trustees consists of nine members. Therefore, to have a quorum, at least five members must be present at the meeting.  *See id.*

143.    In *Hispanic Education Committee v. Houston Independent School District*, 886 F. Supp. 606, 610 (S.D. Tex. 1994), *aff'd by* 1995 U.S. App. LEXIS 42227, a federal court held that if Houston ISD board members meet privately among themselves in several overlapping clusters, as long as a quorum was not present and as long as no attempt was made to take action, these conferences are not meetings of the board.

144.    Informal meetings with less than a quorum of board members allow board members "to have the best information from all sources."  *See id.*  "Limiting board members' ability to discuss school district issues with one another outside of formal meetings would seriously impede the board's ability to function."  *See id.*  "Requiring members of the board to consider only information obtained through public comment and staff recommendations presented in formal sessions would cripple the board's ability to conduct business."  *See id.*

145.    Notice requirements under TOMA "apply only to meetings involving at least a quorum of members."  *See id.*  "With fewer than a quorum present, nothing can be formally

29

decided; without a formal decision, no act is taken." *See id.*  And "[w]ithout action, there is no illegality." *See id.*

146.    In its report, TEA criticizes numerous instances of board members exercising their right to free speech.

147.    TEA concluded that Houston ISD's board members violated TOMA by engaging "in conversation and dialogue to relieve Dr. Grenita Lathan as Interim Superintendent and hire Dr. Abelardo (Abe) Saavedra as her replacement" in "two successive meetings." No meeting with Dr. Saavedra was attended by a quorum of board members. Additionally, the prospect of hiring Dr. Saavedra as an interim was not discussed.

148.    In the report, TEA states that it "is irreverent [sic] that there is no evidence that all five trustees were in the meeting with Dr. Saavedra at the same time, as the trustees violate the open meetings act when they deliberate public business outside of a properly posted public meeting through multiple communications each involving fewer than a quorum."

149.    The Fifth Circuit has held that it is relevant whether or not a quorum attends a meeting because TOMA's civil provisions cannot be violated unless a quorum is present in a meeting. *Hispanic Educ. Comm.*, 1995 U.S. App. LEXIS 42227, at *4.

150.    TEA concedes that is has found no evidence to show that a quorum attended any meeting with Dr. Saavedra.

151.    The Fifth Circuit has also held that enforcement of the criminal conspiracy provision of TOMA in Section 551.143 (which has since been declared unconstitutional and replaced by the Texas Legislature) "is limited to the local prosecutor." *Id.*

152.     Limiting board members' ability to discuss school district issues with one another in informal meetings of less than a quorum and outside of formal meetings would seriously impede the District's ability to function.

153.     Requiring board members to consider only information obtained through public comment and staff recommendations presented in formal sessions would cripple the board's ability to conduct business.

154.     Restricting the board members' opportunities to inform themselves, to negotiate, to build coalitions, and to propose tentative ideas would be a disservice to the voters and students of Houston ISD.

>    ### (2) TEA seeks to punish the District based on allegations that board members have overstepped their authority.

155.     In the report, TEA also asserts that Houston ISD board members have overstepped their authority by acting "individually on behalf of the Board."

156.     In its investigation regarding this second allegation, TEA conducted a one-sided investigation with a predetermined outcome. If TEA had been interested in conducting a fair and balanced investigation, TEA would have interviewed all relevant witnesses — including Houston ISD's board members — instead of relying on the statements of unnamed administrators and the legal opinions of non-lawyers.

157.     TEA concluded that board members overstepped their authority based, in part, on interviews with unnamed administrators. TEA did not schedule interviews with Houston ISD's board members regarding the allegations of these unnamed administrators.

158.    If TEA had interviewed board members regarding these allegations, TEA would have been given the full picture, which shows that many of the alleged statements from unnamed administrators are false or misleading.

159.    TEA also reached this second conclusion based on a review of board members' emails.  But none of these emails show a board member acting individually on behalf of the Board of Trustees.

### (3) TEA seeks to punish the District for "historical problems" with contract awarding and contract procurement.

160.    In the report, TEA finally asserts that Houston ISD board members have violated contract procurement rules.

161.    In its investigation regarding this third allegation, TEA conducted a one-sided investigation of this allegation with a predetermined outcome.  If TEA had been interested in conducting a fair and balanced investigation, TEA would have interviewed all relevant witnesses — including Houston ISD's board members — instead of relying on unnamed administrators.

162.    If TEA had interviewed board members regarding these allegations, TEA would have discovered that many of the facts provided to TEA by unnamed administrators are false.

163.    Moreover, the conduct described in the report does not violate state procurement laws.

164.    None of the evidence presented by TEA actually shows that state procurement laws were violated.

I. **Houston ISD's elected Board of Trustees oversees a school district that is academically and financially healthy.**

165.    Houston ISD is currently an academically and financially healthy school district that has seen excellent improvement in campus performance and student outcomes.

166.    In 2018, 92% of HISD's campuses — 252 out of 275 rated campuses — were rated "Met Standard."

167.    The District showed more growth than the state average in grades 3 through 8 reading and math.  The District also showed more growth than the state average in Algebra and English I.

168.    For grade levels 3 through 8, Houston ISD showed increases in the percentage of students at or above the "Approaches Grade Level Standard" in reading, math, science, and social students (in English and Spanish combined), with the District's reading and math increases exceeding those of the state.

169.    For grade levels 3 through 8, the 2018 District STAAR first administration reading results increased by three percentage points compared to 2017. Changes ranged from no change in seventh grade to a six percentage-point increase in fifth grade. The 2018 district STAAR first administration mathematics results increased by three percentage points compared to 2017. Changes ranged from no change in grade seven to a five percentage-point increase in grades four and eight.

170.    For grade levels 3 through 8 performance at the Meets and Masters Grade Level standards remained the same or increased for all content areas.

171.    The 2018 STAAR End of Course ("EOC") Exam results for all students tested showed improvement in Algebra I, English I, English II, and U.S. History when compared to the Spring 2017 results at the Approaches Grade Level standard. The District's increases in Algebra I and English I exceeded those of the state.

172.    Between 2015 and 2018, the proportion of all students tested performing at or above the Meets Grade Level standard increased for every racial/ethnic group in every subject. These increases included 13 percentage points for African American students on Algebra I EOC exams and 14 percentage points for Hispanic students on U.S. History EOC exams.

173.    Gains made by the "Superintendent's Schools" and "Achieve 180" schools from 2017 to 2018 on the STAAR EOC exams exceeded District and state increases for Algebra I (ranging from six to 14 percentage points) and English II (ranging from six to seven percentage points).

174.    In 2018, although the District did not officially receive an accountability rating as result of Hurricane Harvey, if it had received an accountability rating, the District would have received a "B" rating with 84 out of 100 possible points.

175.    In 2018, the District received a Superior Rating (i.e., an "A") in the Financial Integrity Rating System of Texas. Houston ISD received a rating of 90 out 100. The School Financial Integrity Rating System of Texas ("FIRST"), ensures that Texas public schools are held accountable for the quality of their financial management practices and that they improve those practices. The system is designed to encourage Texas public schools to better manage their financial resources to provide the maximum allocation possible for direct instructional purposes. According to FIRST, Houston ISD's financial integrity is superior.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

### (1) Houston ISD increased its overall academic rating and maintained its superior financial rating for 2019.

176.    For 2019, the District's overall academic rating increased by 4 points from an 84 to an 88, continuing to excel by maintaining its "B" rating.

177.    A majority of Houston ISD's campuses — 142 campuses overall — received at least one distinction designation from TEA.   And 24 Houston ISD schools earned <u>ALL</u> distinctions.

178.    In 2019, Houston ISD exited nine campuses from the state's "Improvement Required" list.

179.    In 2019, according to the ratings released by TEA, 92 percent of Houston ISD schools (250 out of 271 rated campuses) earned a passing grade. For the first time, all Houston ISD schools received a letter grade under the state's new A–F rating system, which was implemented in 2018. Houston ISD campuses performed extremely well in the state's rating system: 57 Houston ISD campuses earned A's, 78 earned B's, 86 earned C's and 29 earned D's. A minimum grade of "D" is required for a school to receive a passing rating.

180.    Under the A–F system, campuses must receive a grade of "D" or better in order to meet state accountability standards. Based on TEA's accountability system, only 21 HISD schools received an "F" rating for the 2018-2019 school year, including: Ashford, Isaacs, C. Martinez, Northline, Osborne, Robinson, Rucker, Seguin, Smith, Whidby, and Young Elementary Schools; Deady, Edison, E-STEM Central, Fleming, High School Ahead Academy, Key, Sugar Grove, Thomas, and Williams Middle Schools; and Wheatley High School.

181.    If not for the provision introduced into TEA's 2018 Accountability Manual, Houston ISD would have 6 fewer "F" campuses. The provision states that "if a campus receives an 'F' in three of the four domain calculations (Student Achievement, Academic Growth, Relative Performance, Closing the Gaps), the highest scaled score a campus can receive for the overall rating is a 59."

182.    This indicates that the highest score that Osborne and Ashford Elementary Schools; Deady, E-STEM Central, and Edison Middle Schools; and Wheatley High School could earn is a 59, an "F" rating, which puts them in IR status.

183.    Wheatley High School demonstrated tremendous academic progress and earned a passing grade of "D" this year, with a calculated score of 63. But based on the provision, the school could only obtain a maximum score allowed of 59. The district is implementing strategies to ensure Wheatley exits IR in the 2019–2020 school year with a minimum grade of "C".

184.    In 2019, the District received a Superior Rating (i.e., an "A") in the Financial Integrity Rating System of Texas. HISD received a rating of 90 out 100. The state's school financial accountability rating system, known as the School Financial Integrity Rating System of Texas ("FIRST"), ensures that Texas public schools are held accountable for the quality of their financial management practices and that they improve those practices. The system is designed to encourage Texas public schools to better manage their financial resources to provide the maximum allocation possible for direct instructional purposes.  According to FIRST, Houston ISD's financial integrity is superior.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

*(2) Houston ISD's Board of Trustees have adopted procedures and governance models to help them implement strategies to improve governance and focus on student outcomes.*

185.     In 2019, the Board of Trustees adopted the Lone Star Governance Framework. The intention of Lone Star Governance is to provide a continuous improvement model for governing teams (board members in collaboration with their Superintendents) that choose to intensively focus on one primary objective: improving student outcomes. Lone Star Governance accomplishes this intense focus through tailored execution of the five points of the Texas Framework for School Board Development: Vision, Accountability, Structure, Unity, and Advocacy.

186.     Additionally, the Houston ISD Board of Trustees has hired a coach to guide them through this framework.  The Board has also adopted policies regarding time limits on discussion and monitors its progress towards achieving the tenets of the Lonestar Governance framework.  As part of this process the Board has committed to allotting a majority of its time in board meetings to focus on student outcomes.

## J.   TEA again threatens to replace Houston ISD's elected Board of Trustees with an unelected board of managers.

187.     In a letter dated September 3, 2019, the Commissioner again threatened to unlawfully replace Houston ISD's elected Board of Trustees with an appointed board of managers based on TEA's rating of one high school in Houston ISD, i.e., Wheatley High School.

188.     In the letter, the Commissioner noted that Wheatley High School received "unacceptable performance ratings" in 2017 and 2019.

189.     In 2018, Wheatley (and many other Texas schools) were not rated because of hurricane-related issues.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

190.    The second paragraph of the September 3, 2019 letter confirms this fact.  Based on the 2017 and 2019 ratings, the Commissioner stated: "I will be required by TEC §§39A.111 and 39A.906 to order either campus closure or the appointment of a board [of] managers and will notify the district of my specific decision in future correspondence."

191.    Wheatley's 2019 rating (for the 2018–19 school year) is the first post-turnaround plan rating the campus has received.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

## IV.    CAUSES OF ACTION

192.    For the following causes of action, Houston ISD incorporates by reference all of the preceding paragraphs and re-alleges the same as if set forth in support of each cause of action.

193.    For the following causes of action, Houston ISD asserts that at all times relevant to this cause of action, Defendants TEA and Morath acted under color of law within the meaning of 42 U.S.C. § 1983.

### A.  First Cause of Action: First Amendment Retaliation.

194.    Houston ISD's board members engaged in constitutionally protected activities in order to govern Houston ISD including, but not limited to, speaking freely, advocating ideas, engaging in political discourse on matters of public concern at formal board meetings and engaging in discussions during informal meetings involving less than a quorum of board members.

195.    Defendants took adverse and retaliatory actions against Houston ISD by launching a pretextual special accreditation investigation and preventing the District from selecting a permanent superintendent in an overly broad, arbitrary, and inconsistent manner.

196.    Defendants' pretextual special accreditation investigation would chill a board member of ordinary firmness from continuing to engage in constitutionally protected activities.

197.    Defendants' adverse actions were substantially motivated by the constitutionally protected activities of Houston ISD's board members.

198.    Houston ISD has suffered an injury in fact because it is important that its board members have the best information from all sources.  *See Hispanic Educ. Comm.*, 886 F. Supp. at 610.  Informal meetings allow Houston ISD's board members to have the best information from all sources. *See id.*  Limiting Houston ISD's board members' ability to discuss school district issues

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

with one another outside of formal meetings would seriously impede the board's ability to function. *See id.* Requiring Houston ISD's board members to consider only information obtained through public comment and staff recommendations presented in formal sessions would cripple the board's ability to conduct business. *See id.*

199.   Houston ISD's injury is fairly traceable to Defendants' investigation and threatened punitive actions against Houston ISD.

200.   As applied, Defendants' pretextual investigation and threatened actions against Houston ISD chills Houston ISD's board members First Amendments rights of speech and assembly and threatens retribution for lawful conduct by Houston ISD's board members.

201.   As applied, Defendants' investigation and threatened actions against Houston ISD are not narrowly tailored and do not serve a significant government interest.

202.   The Commissioner personally participated in and directed these constitutional violations.

203.   The Commissioner knew that those acting on Defendants' behalf were engaged in these constitutional violations and failed to act to prevent them.

204.   Defendants acted with deliberate indifference and reckless disregard, and the Commissioner acquiesced to the unconstitutional conduct by his subordinates.

205.   Defendants showed reckless and callous indifference to the constitutional rights of Houston ISD's board members.

206.   Enjoining Defendants from investigating and threatening to punish Houston ISD for conduct by board members that is both lawful and protected by the First Amendment will remove the cause of these constitutional violations.

B. **Second Cause of Action: Unlawful Restriction of Speech.**

207.    Houston ISD has suffered an injury in fact because it is important that its board members have the best information from all sources. *See Hispanic Educ. Comm.*, 886 F. Supp. at 610.  Informal meetings allow Houston ISD's board members to have the best information from all sources. *See id.*  Limiting Houston ISD's board members' ability to discuss school district issues with one another outside of formal meetings would seriously impede the board's ability to function.  *See id.*  Requiring Houston ISD's board members to consider only information obtained through public comment and staff recommendations presented in formal sessions would cripple the board's ability to conduct business.  *See id.*

208.    Houston ISD's injury is fairly traceable to Defendants' investigation and threatened punitive actions against Houston ISD.

209.    As applied, Defendants' investigation and threatened actions against Houston ISD chills Houston ISD's board members First Amendments rights of speech and assembly and threatens retribution for lawful conduct by Houston ISD's board members.

210.    As applied, Defendants' investigation and threatened actions against Houston ISD are not narrowly tailored and do not serve a significant government interest.

211.    The Commissioner personally participated in and directed these constitutional violations.

212.    The Commissioner knew that those acting on Defendants' behalf were engaged in these constitutional violations and failed to act to prevent them.

213.    Defendants acted with deliberate indifference and reckless disregard, and the Commissioner acquiesced to the unconstitutional conduct by his subordinates.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

214.    Defendants showed reckless and callous indifference to the constitutional rights of Houston ISD's board members.

215.    Enjoining Defendants from investigating and threatening to punish Houston ISD for conduct by board members that is both lawful and protected by the First Amendment will remove the cause of these constitutional violations.

**C.  Third Cause of Action: Overbreadth.**

216.    The Fifth Circuit has correctly stated that the civil provisions of the Texas Open Meetings Act cannot be violated by Houston ISD unless a quorum is present at a meeting. Accordingly, Defendants' attempts to enforce the Texas Open Meetings Act to meetings of less than a quorum is unconstitutional as applied.

217.    In the alternative, if the civil provisions of the Texas Open Meetings Act could be applied to successive meetings of less than a quorum, the statute would be unconstitutionally overbroad on its face.

**D.  Fourth Cause of Action: Unconstitutional Vagueness.**

218.    The Fifth Circuit has correctly stated that the civil provisions of the Texas Open Meetings Act cannot be violated by Houston ISD unless a quorum is present at a meeting. Accordingly, Defendants' attempts to enforce the Texas Open Meetings Act to meetings of less than a quorum is unconstitutional as applied.

219.    In the alternative, if the civil provisions of the Texas Open Meetings Act could be plausibly interpreted to apply to successive meetings of less than a quorum, the statute would be unconstitutionally vague on its face.

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

**E. Fifth Cause of Action: Procedural Due Process Violations by Defendants TEA and Morath.**

220.    Defendants' actions in instigating a pretextual investigation and attempting to replace Houston ISD's elected board members with a board of managers violates procedural due process.  TEA has failed to provide Houston ISD with adequate notice or opportunity to contest the allegations in its report.

**F. Sixth Cause of Action: Violations of the Voting Rights Act by Defendants TEA and Morath.**

221.    Section 2 of the Voting Rights Act prohibits a practice or structure that causes inequality in the opportunities enjoyed by persons of color to vote for and elect their preferred representatives.  52 U.S.C. § 10301 (previously codified at 42 U.S.C. 1973); *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986).

222.    Defendants attempt to remove Houston ISD's board members one of the most recent attempts by TEA to remove elected members of a school district's board of trustees in school districts populated by a majority of persons of color.

223.    Persons of color constitute a politically cohesive majority of the voters who elect Houston ISD's board members.

224.    In the absence of TEA removing the board members elected by Houston ISD's voters, Houston ISD's voters — who are predominately persons of color — are able to elect their preferred candidate.

225.    TEA's replacement of elected board members has occurred solely in school districts in which a majority of the voters are persons of color.  TEA's attempt to again replace the elected board members in Houston ISD with an unelected board of managers results in a practice and

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

structure that prevents persons of color in the state of Texas from possessing the same opportunities to participate in the political process and elect representatives of their choice that are enjoyed by voters in school districts in which the voters are not predominately persons of color.

**G.  Seventh Cause of Action: Violations of Title VI of the Civil Rights Act of 1964**

226.    Title VI provides: "No person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

227.    At all relevant times, TEA received Federal financial assistance.

228.    On information and believe, Defendants' pretextual investigation was initiated in an attempt to remove Houston ISD's board members.

229.    TEA has historically investigated and removed board members from school districts whose voters are predominantly people of color in a manner that disparately impacts these districts as compared with districts whose voters are not predominantly people of color.

230.    Defendants could have instituted corrective measures to ensure that TEA's powers are not used in a discriminatory manner that disparately impacts school districts whose voters are predominantly people of color, but Defendants have, with deliberate indifference, failed to institute corrective measures despite having actual knowledge about this discrimination.

**H.  Eighth Cause of Action: Violations of the Equal Protection Clause**

231.    The Equal Protection Clause prevents the arbitrary or discriminatory application of government regulations.

44

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

232.    TEA has historically investigated and removed board members from school districts whose voters are predominantly people of color in a manner that disparately impacts these districts as compared with districts whose voters are not predominantly people of color.

233.    TEA's application of regulations regarding its investigations and removal powers has disparately impacted school district whose voters are predominantly people of color in a manner that is arbitrary and capricious.

234.    Defendants' investigation of Houston ISD and attempt to remove the elected board members of Houston ISD is an arbitrary and capricious application of the rules and statutes governing these investigations in attempt to yet again removed a board of trustees in a school district whose voters are predominantly persons of color.

## I.    Ninth Cause of Action: Declaratory Judgment regarding the Texas Open Meetings Act.

235.    Houston ISD seeks declaratory judgment that the Texas Open Meetings Act's civil provisions cannot be violated by Houston ISD unless at least five board members are present at a meeting.  *Hispanic Educ. Comm. v. Houston Indep. Sch. Dist.*, No. 95-20029, 1995 U.S. App. LEXIS 42227, *4 (5th Cir. 1995).

## J.    Tenth Cause of Action: Declaratory Judgment regarding *Ultra Vires* Acts.

236.    Houston ISD seeks declaratory judgment that (1) the Conservator had no legal authority to direct Houston ISD's Board of Trustees and administration to suspend the superintendent search; (2) the Conservator has no legal authority to act as a conservator; (3) in the alternative, the Conservator has no legal authority to act outside the scope of the powers and duties provided by Texas Education Code § 39.107(c); and (4) the Commissioner has no legal authority

to install a board of managers based on the Special Accreditation Investigation (SAI # INV2019-10-034).

> ### (1) The Conservator had no legal authority to direct Houston ISD's Board of Trustees and administration to suspend the superintendent search and has no legal authority to act as conservator.

237.    Houston ISD seeks declaratory judgment that the Conservator had no legal authority to direct Houston ISD's Board of Trustees and administration to suspend the superintendent search and has no legal authority to act as conservator because her lawful appointment as a conservator ended prior to the issuance of that directive.

238.    The Conservator had no legal authority to issue this directive because the Conservator is no longer lawfully appointed.

239.    When the Commissioner appoints a conservator, the Commissioner is required to review the need for a conservator every 90 days and must determine whether the continued appointment is necessary for effective governance or delivery of instructional services.  TEX. EDUC. CODE § 39A.003(b).

240.    Prior to the Conservator's directive that Houston ISD's Board of Trustees and administration to suspend the superintendent search, the Commissioner did not review the need for a Conservator every 90 days and determine whether the continued appointment is necessary for effective governance or delivery of instructional services.

241.    Once the Commissioner failed to comply with this statutory mandate, the Conservator's lawful appointment ended.

242.    Alternatively, in the unlikely event the Court concludes the Conservator remains lawfully appointed as a conservator, Houston ISD seeks declaratory judgment that the Conservator

had no legal authority to direct Houston ISD's Board of Trustees and administration to suspend the superintendent search because it is outside the scope of her lawful authority.

243.    Section 39.107(c) gives the Commissioner authority to appoint a conservator to ensure and oversee district-level support to a low-performing campus and the implementation of an updated targeted improvement plan at that campus.

244.    Section 39.107(c) gave the Commissioner authority to appoint the Conservator to ensure and oversee district-level support to Kashmere High School and the implementation of an updated targeted improvement plan Kashmere High School.

245.    The Commissioner had no legal authority to provide the Conservator with the authority to oversee the operations of the district.

246.    Section 39.102(a) does not allow the Commissioner to appoint a conservator to oversee operation for a school district unless (1) the school district does not satisfy the accreditation criteria under Section 39.052, (2) the school district does not satisfy the academic performance standards under Section 39.053 or Section 39.054, (3) the school district does not satisfy any financial accountability standard as determined by commissioner rule, or (4) if considered appropriate by the Commissioner on the basis of a special accreditation investigation under Section 39.057.

247.    None of the requirements listed in Texas Education Code § 39.102(a) were satisfied when the Conservator was appointed.

248.    The Conservator had no legal authority to act outside of the powers and duties provided by Texas Education Code § 39.107(c).

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

249.    The Commissioner had no legal authority to give the Conservator authority to act outside of the powers and duties provided by Texas Education Code § 39.107(c).

250.    Although the Commissioner purported to expand the Conservator's authority beyond the powers and duties provided by Texas Education Code § 39.107(c), the Commissioner has no authority to arbitrarily and capriciously expand the Conservator's authority beyond the limits prescribed by Texas Education Code § 39.107(c).

### (2) The Commissioner has no legal authority to replace the elected board of trustees with a board of managers.

251.    Houston ISD seeks declaratory judgment that the Commissioner has no legal authority to replace the elected board of trustees with a board of managers.

252.    TEA has recommended that the Commissioner replace the elected board of trustees with a board of managers.

253.    The Commissioner may not replace an elected board of trustees with a board of managers based on a special accreditation investigation unless the school district: (1) has a current accreditation status of accredited-warned or accredited-probation; (2) fails to satisfy any standard under Section 39.054(e); or (3) fails to satisfy financial accountability standards as determined by commissioner rule.   TEX. EDUC. CODE § 39A.004.

254.    Houston ISD does not have a current accreditation status of accredited-warned or accredited-probation.

255.    Houston ISD has not failed to satisfy any standard under Section 39.054(e).

256.    Houston ISD has not failed to satisfy financial accountability standards as determined by commissioner rule.

257.          The Commissioner has no legal authority to appoint a board of managers because of the 2019 academic performance ratings of Wheatley High School.  Section 39A.111 of the Texas Education Code does not require or authorize the Commissioner to order campus closure or appoint a board of managers unless the campus has "an unacceptable performance rating for three consecutive years after the campus is ordered to submit a campus turnaround plan."

258.          The HISD Board of Trustees adopted a turnaround plan for Wheatley High School on or about October 12, 2017.  Under the provisions of Chapter 39, Tex. Educ. Code, Wheatley's ratings for the 2017–18 academic year were the first ratings that could be considered for purposes of Section 39A.111.  However, Wheatley HS received no rating that year due to a waiver from the Commissioner.

259.          Because of the waiver, Wheatley's 2019 rating (for the 2018–19 school year) is the first post-turnaround plan rating the campus has received.  Because there are not three consecutive, post-turn around unacceptable ratings for Wheatley High School, Section 39A.111 of the Texas Education Code does not authorize or require the Commissioner's threatened actions.

260.          Similarly, Section 39A.906(d) of the Texas Education Code requires that a campus "receive an unacceptable performance rating for the 2016–2017, 2017–18, and 2018–19 school years" prior to a campus closure or appointment of  a board of managers.   The Commissioner is not authorized or required to take action under Section 39A.906(d) because Wheatley High School did not receive an unacceptable performance rating for the 2017–18 school year.

## V.    REQUEST FOR INJUNCTIVE RELIEF

261.    Houston ISD requests the Court enter a preliminary and permanent injunction prohibiting Defendants TEA and the Commissioner from taking any adverse actions against Houston ISD and/or its Board of Trustees based on either Special Accreditation Investigation (SAI # INV2019-10-034) or Texas Attorney General Opinion KP-0254.

262.    Houston ISD requests the Court enter a preliminary and permanent injunction prohibiting Defendants TEA and the Commissioner from taking any adverse actions against Houston ISD and/or its Board of Trustees based upon the 2019 academic ratings of  Wheatley High School.

263.    Houston ISD requests a permanent injunction preventing the Conservator from continuing to act as conservator in Houston ISD.

264.    Houston ISD requests a permanent injunction preventing Defendants from attempting to interfere with Houston ISD's superintendent search.

## VI.    CONCLUSION AND REQUESTS FOR RELIEF

For the foregoing reasons, Plaintiffs respectfully request that Defendants be cited to appear and answer and that the Court take the following actions and grant the following relief:

A.  Appropriate preliminary and permanent injunctive relief to which it shows itself entitled.

B.  Entry of a declaratory judgment as described above.

C.  Attorneys' fees and court costs.

D.  Any other or further relief, in law or equity, that the Court determines Houston ISD is entitled to receive.

Respectfully submitted,

By:    */s/ David Campbell*

David J. Campbell
*dcampbell@808west.com*
State Bar No. 24057033
Kevin O'Hanlon
*kohanlon@808west.com*
State Bar No. 15235500
Benjamin Castillo
*bcastillo@808west.com*
State Bar No. 24077194

**O'HANLON, DEMERATH &
CASTILLO**

808 West Avenue | Austin, Texas 78701
Tel: (512) 494-9949 | Fax: (512) 494-9919

*Counsel for Plaintiff Houston ISD*

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint

## CERTIFICATE OF SERVICE

I certify that on November 1, 2019, the foregoing document was filed via the Court's

CM/ECF system, causing electronic service upon all counsel of record.


/s/ David Campbell
David Campbell

Civil Case No: 1:19-CV-00684-LY
*Houston ISD v. Texas Education Agency, et al.*
Second Amended Complaint