IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HOUSTON INDEPENDENT SCHOOL DISTRICT | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. 1:19-cv-684-LY |
| | § | |
| TEXAS EDUCATION AGENCY and MIKE MORATH, COMMISSIONER OF EDUCATION, in his official capacity, and DORIS DELANEY, in her official capacity | § | |
| | § | |
| | § | |
| | § | |
| *Defendants.* | | |

## DEFENDANTS' MOTION TO DISMISS

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil
Litigation

THOMAS A. ALBRIGHT
Division Chief - General Litigation

EMILY ARDOLINO
Attorney-in-Charge
State Bar No. 24087112
ESTEBAN S.M. SOTO
Texas Bar No. 24052284
Deputy Division Chief
Assistant Attorneys General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4054
(512) 320-0667 FAX
GENERAL LITIGATION DIVISION
emily.ardolino@oag.texas.gov
esteban.soto@oag.texas.gov

KARA HOLSINGER
State Bar No. 24065444
ADMINISTRATIVE LAW DIVISION
kara.holsinger@oag.texas.gov
***ATTORNEYS FOR DEFENDANTS***

# TABLE OF CONTENTS

Factual Background ................................................................................................ 3

Standard for Motion to Dismiss ............................................................................ 6

Argument ................................................................................................................ 7

   A.    HISD's State Law Ultra Vires Claims Do Not Invoke This Court's
        Jurisdiction and Fail to State a Claim. .......................................................... 7

      1.    The Texas Legislature has deemed the Commissioner's
            determination to install a board of managers final and
            binding, and this Court lacks jurisdiction to review it under an
            ultra vires theory. ........................................................................... 7

      2.    HISD's *ultra vires* claims relating to the board of managers
            are not ripe because they challenge an administrative action
            that is not yet final. ...................................................................... 10

      3.    Even if the Commissioner's determinations were judicially
            reviewable, they are not *ultra vires* acts; HISD complains only
            about the Commissioner's exercise of discretion. ........................13

         a.    The installation of a board of managers in response to
               Wheatley High School's seventh consecutive unacceptable
               performance rating is a lawful exercise of the
               Commissioner's discretion. .................................................. 14

         b.    HISD has not stated a valid *ultra vires* claim as to the
               appointment of Doris Delaney as a conservator or the
               Commissioner's actions in regard to the SAI. ...................... 16

   B.    HISD's Federal Claims Also Must Be Dismissed. ........................................ 19

      1.    HISD's federal claims are not redressable because there are
            independent, unreviewable grounds for installing a board of
            managers. .....................................................................................20

      2.    HISD's constitutional claims fail because it cannot assert its
            constitutional rights against the State. ......................................... 22

      3.    HISD's procedural due process claim is unripe because HISD
            had not yet exhausted its administrative due process. And
            HISD has failed to plead a due process claim. ............................. 23

      4.    HISD lacks standing to bring Voting Rights Act Claims, Equal
            Protection Claims, and Title VI claims on behalf of the voters
            within HISD. ................................................................................. 24

      5.    HISD has also failed to state a claim for a violation of the
            Voting Rights Act. ....................................................................... 27

6.     Construing the Texas Open Meetings Act, as requested by HISD's Uniform Declaratory Judgment Act claim is unnecessary to resolve this case, and this Court should decline to review it. ................................................................................................. 29

Conclusion ..................................................................................................... 29

Certificate of Service ..................................................................................... 30

## INDEX OF AUTHORITIES

**Cases**

*Allen v. Wright*, 468 U.S. 737 (1984) .......................................................................... 25, 26

*Arizona Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436 (2011) ............................. 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ 7

*Barrera-Montenegro* v. *U.S. & Drug Enf't Admin.*, 74 F.3d 657 (5th Cir. 1996) .................................................................................................................................. 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 7

*Briggs v. Mississippi*, 331 F.3d 499 (5th Cir. 2003) ......................................................... 7

*City of Alpine v. Abbot*, 730 F.Supp.2d 630 (W.D. Tex. 2010) ....................................... 23

*City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009) ........................................10, 13

*City of Pawhuska v. Pawhuska Oil & Gas Co.* 250 U.S. 394 (1919) ............................... 23

*City of Trenton v. New Jersey*, 262 U.S. 182 (1923) ....................................................... 23

*Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94 (1973) ............................................................................................................ 22

*Conway School District v. Wilhot, 854 F.Supp.* 1430 (E.D. Ark. 1994) ......................... 26

*Creedmoor–Maha Water Supply v. Texas Comm'n on Envtl Quality*, 307 S.W.3d 505 (Tex. App—Austin 2010, no pet.) ............................................................ 13

*Crow v. Henry*, 43 F.3d 198 (5th Cir. 1995) ..................................................................... 7

*Doe v. Univ. of Tex. at Austin*, No. 1:18-cv-85 (W.D. Tex. May 15, 2018) ..................... 24

*Dutmer v. City of San Antonio, Tex.*, 937 F. Supp. 587 (W.D. Tex. 1996) ..................... 26

*Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) ..................................................... 29

*Growe v. Emison*, 507 U.S. 25, 40, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993) .................. 28

*Home Builders Ass'n of Mississippi, Inc.* v. *City of Madison, Miss.*, 143 F.3d 1006 (5th Cir. 1998) ......................................................................................................... 6

*Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151 (Tex. 2007) ................... 8

*HR Trust Services, LLC v. Tex. Dept. of Insurance*, No. A-07-CA-245-SS, 2007 WL 9701718 (W.D. Tex. 2007) ............................................................................... 11

*Hunter v. City of Pittsburg*, 207 U.S. 161 (1907) ............................................................ 23

*i2 Techs. US, Inc. v. Lanell*, No. CIV.A.302CV0134G, 2002 WL 1461929 (N.D. Tex. July 2, 2002) ................................................................................................... 29

*In re Katrina Canal Breaches Litigation*, 495 F.3d 191 (5th Cir. 2007) .......................... 7

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) ........................................................ 25

*Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996) ........................................................................................ 23

*Lower Colo. River Auth. v. Papalote Creek II, LLC*, 858 F.3d 916 (5th Cir. 2017), cert. denied, 138 S. Ct. 747 (2018) ...................................................... 11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................... 21, 25

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ................................................... 25

*MDPhysicians & Assocs., Inc. v. State Bd. of Ins.*, 957 F.2d 178 (5th Cir. 1992) .............................................................................................................. 6

*Monk v. Huston*, 340 F.3d 279 (5th Cir. 2003) ............................................... 11

*Morath v. Progreso Indep. Sch. Dist.*, No. 03-16-00254-CV, 2017 WL 6273192 (Tex. App.—Austin 2017, pet. denied) ...................................... 4, 9, 17

*Morath v. Sterling City Indep. Sch. Dist.*, 499 S.W.3d 407 (Tex. 2016) ............... 8, 9, 21

*NAACP v. Fordice*, 252 F.3d 361 (2001) ......................................................... 28

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003) ..................... 10, 11

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583 (5th Cir. 1987) ...................................................................................................... 10

*Orix Credit Alliance, Inc. v. Wolfe* 212 F.3d 891 (5th Cir. 2000) ..................... 11

*Phillips v. Snyder*, 836 F.3d 707 (6th Cir. 2016) ........................................... 27

*Presley v. Etowah County Com'n*, 502 U.S. 491 (1992) ................................... 28

*Raj v. La. State Univ.*, 714 F. 3d 322 (5th Cir. 2013) ...................................... 7

*Renne v. Geary*, 501 U.S. 312 (1991) .............................................................. 27

*Roberts v. Wamser*, 883 F.2d 617 (8th Cir. 1989) .......................................... 26

*Rogers v. Brockette*, 588 F.2d 1057 (5th Cir. 1979) ....................................... 23

*Ross v. Tex. Educ. Agency*, H-08-3049, 2009 WL 3254935 (S.D. Tex. Sept. 28, 2009) ....................................................................................................... 28, 29

*Searcy v. Williams*, 656 F.2d 1003 (5th Cir. 1981) ......................................... 27

*Shields v. Norton*, 289 F.3d 832 (5th Cir. 2002) ............................................ 11

*Singleton v. Wulff*, 428 U.S. 106 (1976) ........................................................ 26

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ............................ 21

*Texas Educ. Agency v. American YouthWorks, Inc.*, 496 S.W.3d 244 (Tex. App.—Austin 2016), *aff'd, Honors Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54 (Tex. 2018) ................................................................................... 17

*Texas v. U.S.*, 523 U.S. 296 (1998) .................................................................................... 10

*Thomas v. Union Carbide Agricultural Products, Co.*, 473 U.S. 568 (1985) .................. 10

*Thornburg v. Gingles*, 478 U.S. 30 (1986) ...................................................................... 28

*United States v. Alabama*, 791 F.2d 1450 (11th Cir. 1986) ............................................ 23

*Veasy v. Perry*, 29 F.Supp.3d 896 (S.D. Tex. 2014)................................................. 26, 27

*Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849 (Tex. 2000) ...................................... 11

*Warth v. Seldin*, 422 U.S. 490 (1975) .................................................................. 21, 25, 26

*Wiley v. Texas State University System*, No. 1:18-cv-930, 2019 WL 317247
(W.D. Tex. Jan. 24, 2019) ............................................................................................ 24

**Statutes**

19 TEX. ADMIN. CODE § 157.1136 ....................................................................................... 4

19 TEX. ADMIN. CODE § 97.1061(g)................................................................................... 16

19 TEX. ADMIN. CODE §157.1131-33 ............................................................................. 6, 24

19 TEX. ADMIN. CODE §97.1001 ....................................................................................... 15

42 U.S.C. 1973a................................................................................................................ 26

TEX. EDUC. CODE § 39.001 *et. seq.*............................................................................ 3, 4, 14

TEX. EDUC. CODE § 39.052 ............................................................................................... 13

TEX. EDUC. CODE § 39.057(a) ........................................................................................... 13

TEX. EDUC. CODE § 39.057(a)(16) ..................................................................................... 18

TEX. EDUC. CODE § 39.057(d) ............................................................................... 13, 18, 19

TEX. EDUC. CODE § 39.107(e) ........................................................................................... 14

TEX. EDUC. CODE § 39.151(d)-(e) ...................................................................................... 4

TEX. EDUC. CODE § 39A.001(2) ........................................................................................ 18

TEX. EDUC. CODE § 39A.002(7) .......................................................................................... 4

TEX. EDUC. CODE § 39A.004 ............................................................................................. 18

TEX. EDUC. CODE § 39A.111 ..................................................................................... 1, 6, 19

TEX. EDUC. CODE § 39A.112 ............................................................................................. 12

TEX. EDUC. CODE § 39A.116 ......................................................................................... 4, 21

TEX. EDUC. CODE § 39A.906 ............................................................................................. 15

TEX. EDUC. CODE § 44.031 ................................................................................................. 5

TEX. EDUC. CODE § 7.021................................................................................................... 3

Tex. Educ. Code §39.057 ............................................................................ 4, 9, 12

Tex. Educ. Code 39A.202 ................................................................................ 16

Tex. Educ. Code 44.031(a)(1) ........................................................................... 5

**Other Authorities**

Acts 2015, 84th Leg., ch. 1046 (HB 1842) ........................................................ 14

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................... 6

Fed. R. Civ. P. 12(b)(6) .................................................................................... 7

TO THE HONORABLE JUDGE LEE YEAKEL:

Plaintiff Houston Independent School District ("HISD") asks this Court to interfere with the Commissioner of Education's discretion, afforded exclusively to him by the Texas Legislature, to address the problem of a dysfunctional HISD Board of Trustees that has violated Texas laws and allowed a high school within its district to fail performance standards for seven consecutive years. In doing so, HISD not only asks this Court to interfere with a state administrative determination before it is final, but to substitute its own judgment on matters the Texas Legislature has placed exclusively within the Commissioner's purview and deemed unreviewable.

On November 6, 2019, Commissioner Morath deemed it necessary to lower HISD's accreditation status, temporarily suspend the Board of Trustees, and install a board of managers to oversee the district for three separate reasons each of which, standing alone, justifies or requires the Commissioner to act: 1) the seventh consecutive unacceptable performance rating for Wheatley High School, which triggered the mandatory provisions in Texas Education Code § 39A.111; 2) the results of a Special Accreditation Investigation ("SAI") finding that HISD board members violated multiple Texas laws; and 3) the appointment of a conservator to oversee HISD for more than two consecutive school years.

HISD has raised a panoply of legal theories for why this Court should enjoin the Commissioner's action, the vast majority of which focus exclusively on the SAI and the Commissioner's attempt to hold the HISD Board accountable for their violations of Texas law. But in order to award HISD the injunction it seeks, this Court would have to find a plausible, jurisdictionally-sound legal claim implicated in each of the three, independent

grounds for placing a board of managers. HISD's pleadings have not done so. First, HISD lacks standing to bring Title VI, Equal Protection, and Voting Rights Act claims on behalf of HISD voters, and even if it had standing, HISD has not stated claims under these laws. HISD has also failed to state a procedural due process claim, and any such claim is unripe because HISD has not yet exhausted the administrative process to which it is entitled.

HISD's core claims—that the Commissioner will exceed his authority under state law by installing a board of managers—also fail because the Commissioner's actions in this regard have been deemed judicially unreviewable by the Texas Legislature, even under an *ultra vires* theory. They are also unripe. Because the Commissioner's decision is not final and a board of managers may never be installed, there is no "ongoing violation of law" to correct through a prospective injunction.

Though HISD alleges various flavors of First Amendment violations based on the Commissioner's interpretation and application of the Texas Open Meetings Act–which are themselves not viable claims–this Court need not reach these claims for the simple reason that they are not redressable. As pleaded by HISD, there is at least one independent basis for installing a board of managers: the Wheatley campus failures. By law, the Commissioner's action with respect to these campus failures is mandatory, and, absent a parent petition, it is fully within the Commissioner's discretion to install a board of managers. While HISD apparently disagrees with the Commissioner's determination on the Wheatley failures, they assert no Constitutional challenge to it and, in fact, disclaim any independent request for relief regarding the Wheatley failures.[1] Thus, because there

---

[1] *See* ECF. 25 ("[T]he issues regarding the Commissioner's September 2019 letter [about the Commissioner's proposed action based on Wheatley High School] do not amount to a claim that Houston ISD is asserting."); see also ECF. 24 ("But all of the claims in Houston

is at least one unreviewable, stand-alone basis for installing a board of managers, this Court could not redress HISD's alleged injury even if they were to prevail on their Constitutional challenges to the application of the Texas Open Meetings Act and the SAI.

In this lawsuit, the HISD Board of Trustees seeks a judicial escape route from the Commissioner's oversight that simply does not exist. The Texas Legislature has vested in the Commissioner broad discretion to ensure school district boards function appropriately and meet the educational needs of their students, and this discretion includes suspending a dysfunctional Board of Trustees and installing a temporary board of managers. Despite HISD's multi-faceted and creative Complaint, it has failed to plead any viable legal grounds for this Court to interfere with the Commissioner's discretionary oversight. This Court should dismiss HISD's lawsuit in its entirety.

## FACTUAL BACKGROUND

TEA is the agency that oversees primary and secondary public education in the state of Texas. TEX. EDUC. CODE § 7.021. TEA's responsibilities include overseeing public school districts, such as HISD, to ensure they responsibly steward public funds, comply with state and federal laws, and successfully educate Texas children. *Id.*; *see also id.* at § 39.001 *et. seq.* As part of this mandate, the Texas Legislature has granted Defendants, TEA and the Commissioner of Education, broad discretion to evaluate and intervene in school districts that are failing to achieve these goals. These actions include the ability to appoint conservators to provide direct oversight of district functions, investigate school districts' suspected legal violations through Special Accreditation Investigations ("SAIs"),

---

ISD's Application for Preliminary Injunction are contained in its amended complaint except for the single claim regarding the Commissioner's September letter [about the Wheatley campus failure]. And that claim is not an affirmative basis for relief . . .").

*Defendants' Motion to Dismiss*                                                                 3

issue and modify accountability ratings, and temporarily suspend a district's board of trustees. *See* TEX. EDUC. CODE § 39A.002(7); *id.* at §§ 39.057-39.058. The Legislature has deemed such exercises of discretion final and unappealable. TEX. EDUC. CODE § 39A.116 (Commissioner's decisions under Chapter 39A are "final and may not be appealed"); *see also id.* at § 39.151(d)-(e) (Commissioner's academic accountability determinations are final and may not be appeal or challenged in collateral proceedings); 19 T.A.C. § 157.1136 (Commissioner's decision following formal review is final and unappealable); *see Morath v. Progreso Indep. Sch. Dist.*, No. 03-16-00254-CV, 2017 WL 6273192, at *4 (Tex. App.—Austin 2017, pet. denied) (mem. op.) (the Commissioner's "decisions on accountability ratings are final and may not be appealed").

Since 2016, HISD's pattern of dysfunction resulting in its inability to effectively govern and poor educational outcomes for certain campuses, has required the Commissioner to institute progressive interventions, including appointing a conservator to oversee and direct certain Board actions, and open a SAI to investigate suspected wrongdoing by the Board.  By 2016 Kashmere High School had seen a number of consecutive years of failing accountability ratings, placing the school at risk of failing State accountability standards. In an attempt to prevent this outcome, Commissioner Morath appointed Doris Delaney as a Conservator to oversee the turnaround plan for Kashmere.

Pursuant to the Commissioner's authority under Texas Education Code §39.057, TEA initiated SAI #INV2019-10-034 to investigate complaints regarding the HISD Board of Trustees' alleged violations of the Texas Open Meetings Act ("TOMA"), the Texas Education Code's prohibition against unilateral actions by individual Board members,

and certain contract procurement violations. Appx.002, First Amended Notice of SAI; Appx.006, Second Amended Notice of SAI.

On August 5, 2019, TEA issued a Preliminary SAI Report related to allegations of a systemic breakdown of HISD's Board of Trustees' ability to govern, operate within the scope of their authority, and ensure adherence to contracting laws and district policies ECF 8-1 Preliminary SAI Report. The Preliminary Report substantiated many of the allegations, including that HISD had violated the requirements of the TOMA; HISD Board of Trustees acted individually on behalf of the board numerous times, thereby exceeding the scope of their authority in violation of Texas Education Code § 11.051; and that HISD Board of Trustees violated contract procurement rules while the district was selecting a vendor/contractor as well as attempting to tamper with a contract that had been awarded in violation of Texas Education Code §§44.031 and 44.031(a)(1). *Id.* Based on the findings, the Preliminary Report recommended to the Commissioner that the accreditation status of the district be lowered, a conservator be appointed, and a Board of Managers be installed. *Id.*

On August 26, 2019, HISD requested an informal review of the Preliminary Report and filed a response asserting its evidence and arguments as to the findings and recommendations contained in the Preliminary Report. Appx. 009, HISD's response and request for an informal review. TEA issued a final SAI report on October 30, 2019, substantiating most of the allegations and recommending the Commissioner lower the accreditation status of the district, appoint a conservator, and install a Board of Managers. Appx. 190, Final SAI Report. On November 6, 2019, the Commissioner issued an enforcement letter notifying HISD of his decision to lower HISD's accreditation status,

temporarily suspend the Board of Trustees, and install a board of managers to oversee the district for three separate reasons: 1) the seventh consecutive unacceptable performance rating for Wheatley High School, which triggered the mandatory provisions in Texas Education Code § 39A.111; 2) the results of an SAI finding that HISD board members violated multiple Texas laws; and 3) the appointment of a conservator to oversee HISD for more than two consecutive school years. Appx. 508.

Before the Commissioner's sanction becomes final, HISD will have the opportunity to request a formal review. 19 TEX. ADMIN. CODE §157.1131-33. If requested, any such review will be completed after December 20, 2019. Nevertheless, instead of allowing the underlying facts of this case to develop, HISD asks the Court to interfere with TEA's authority by 1) construing TOMA to establish that this state law "does not prohibit board members from meeting in groups of less than a quorum to discuss issues relating to Houston ISD," and 2) preventing TEA from taking regulatory action against it based on any findings resulting from SAI #INV2019-10-034. ECF 29.

### STANDARD FOR MOTION TO DISMISS

A party may move for dismissal based on lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A claim is properly dismissed for lack of subject matter jurisdiction when a court lacks the statutory or constitutional power to adjudicate the claim. *Home Builders Ass'n of Mississippi, Inc.* v. *City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). In ruling on such a motion, a court is free to weigh the evidence and satisfy itself as to its power over the case. *MD Physicians & Assocs., Inc.* v. *State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992). A court may rely upon: (1) the complaint alone, (2) the complaint supplemented by undisputed facts in the record, or

(3) the complaint supplemented by undisputed facts in addition to the court's resolution of disputed facts. *Barrera-Montenegro* v. *U.S. & Drug Enf't Admin.*, 74 F.3d 657, 659 (5th Cir. 1996). "[T]he plaintiff constantly bears the burden of proof that jurisdiction does in fact exist" when jurisdictional facts are controverted. *Raj v. La. State Univ.*, 714 F. 3d 322, 327 (5th Cir. 2013).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a plaintiff's right to relief based on the facts they alleged in their complaint. *Crow v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995). If the facts alleged, viewed in the light most favorable to the plaintiff, do not create a right to relief, then a court should dismiss the plaintiff's claims. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While courts must accept all well-pleaded facts as true, mere legal conclusions are not entitled to any such weight. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* Though leave to amend may be granted prior to dismissal of a claim with prejudice, courts need not do so if amendment would be futile. *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003).

**ARGUMENT**

### A. HISD's State Law *Ultra Vires* Claims Do Not Invoke This Court's Jurisdiction and Fail to State a Claim.

### 1. The Texas Legislature has deemed the Commissioner's determination to install a board of managers final and binding, and this Court lacks jurisdiction to review it under an *ultra vires* theory.

HISD brings *ultra vires* claims alleging the Commissioner acted outside of the

authority delegated to him under the Texas Education Code in appointing Conservator Delaney and initiating enforcement action against HISD—to wit, installing a board of managers—based on the SAI, Wheatley High School's performance ratings, and the length of the conservator appointment. These claims fail for the simple reason that such actions by the Commissioner are unreviewable—even where, as here, a plaintiff claims that the Commissioner acted outside the scope of his enabling authority. *Morath v. Sterling City Indep. Sch. Dist.*, 499 S.W.3d 407, 413-414 (Tex. 2016). The Texas Supreme Court has held that where the Texas Education Code authorizes the Commissioner to take certain discretionary actions and makes such actions "final and binding," they are immune from judicial review. *Id.*; see also *Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007) ("The words 'final and binding,' when used to describe an administrative decision, preclude judicial review.").

A "finality provision," such as the provisions applicable here, preclude judicial review even when an agency head arguably exceeded his authority under the enabling statute. *Sterling City*, 499 S.W. 3d at 413. In *Sterling City*, for example, the school district argued that the Texas Education Code did not permit the Commissioner to reduce the amount of state aid it received based on increases to certain local funding sources. *Id.* Noting that "[t]he effect of a statute making an executive determination final is to broaden the executive's discretion," the Texas Supreme Court found that the district could not bring an *ultra vires* claim even though the Commissioner was not explicitly authorized by statute to rely on the local funding increases at issue. *Id.* The Court held that the statute's finality provision effectively permitted the Commissioner to use his discretion to reduce funding to the district in a manner consistent with the goal of the

authorizing law, even if the statute did not explicitly authorize him to rely on certain local funding increases in making such a reduction. *Id.* at 414 (J. Brown, concurring) (opining that the finality provision precluded judicial review even though the Commissioner, in fact, exceeded his authority under the Texas Education Code).[2]

At least one other Texas court has applied *Sterling City* to deprive courts of jurisdiction to review the Commissioner's actions taken pursuant to an SAI. In *Morath v. Progreso Indep. Sch. Dist.*, a school district alleged that the Commissioner acted *ultra vires* in lowering the district's accreditation status and installing a board of managers based on the results of a SAI. 2017 WL 6273192, at *4. The Texas Third Court of Appeals readily dismissed the claims holding that the finality provision applicable to the Commissioner's decisions and actions under Texas Education Code § 39.057 barred judicial review. Here, finality provisions apply to the Commissioner's decision to install a board of managers under Section 39.057 (the SAI), Section 39.006(b) (the length of the conservator), and under Section 39A.111 (unacceptable campus ratings). And they preclude judicial review of such decisions under HISD's *ultra vires* theories. *Sterling City.*, 499 S.W.3d at 413-414; *Progreso Indep. Sch. Dist.,* 2017 WL 6273192, at *4.

Houston ISD appears to suggest that proposed enforcement actions *are* subject to court review because they have not *yet* become "final and binding." This is a misapplication of Texas law. Aside from the obvious ripeness issues raised by

---

[2] Though the Texas Supreme Court has acknowledged that certain administrative actions that are "final and binding" may be reviewable under an *ultra vires* theory in the very limited situation of a "'manifest,' 'conspicuous and irreconcilable' conflict between the action and the statutory authority asserted by the executive," it has never allowed such a challenge. *Id.* at 414. And the facts of this case certainly do not warrant such extraordinary review.

challenging an administrative action that has not yet become final,[3] no plausible interpretation of *ultra vires* law could create a mechanism for judicial review of a non-reviewable administrative action merely because the action has not yet become final. Rather to bring a valid *ultra vires* action, "a suit must not complaint of a government officer's exercise of discretion." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). And by granting the Commissioner final and unreviewable authority in these areas, the Legislature granted the Commissioner discretion to make these decisions.

**2. HISD's *ultra vires* claims relating to the board of managers are not ripe because they challenge an administrative action that is not yet final.**

Even if the Texas Legislature had made the Commissioner's decision to install a board of managers judicially reviewable, it would not be ripe because that decision is not final, and HISD is entitled to additional due process before a board of managers is put in place. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. U.S.*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agricultural Products, Co.*, 473 U.S. 568, 580–81 (1985)). "[A] case is not ripe if further factual development is required." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987). And courts "should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Lower Colo. River Auth. v. Papalote Creek II, LLC*, 858 F.3d 916, 924 (5th Cir. 2017), cert. denied, 138 S. Ct. 747 (2018).

---

[3] The ripeness requirement appropriately limits judicial entanglement "in abstract disagreements about administrative policies, and also [...] protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hospitality Ass'n v. Dept't of Interior*, 538 U.S. 803, 807-808 (2003).

Of particular relevance to this case, the ripeness requirement appropriately limits judicial entanglement "in abstract disagreements about administrative policies and practices, and also [ ] protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-808 (2003). Claims challenging agency actions are not ripe until agency determinations are final. *See, e.g., Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) (challenge to state agency's consideration of a landfill permit was not ripe for review because a decision on the permit had not yet been made and the dispute was abstract and hypothetical until the permit issued); *HR Trust Services, LLC v. Tex. Dept. of Insurance*, No. A-07-CA-245-SS, 2007 WL 9701718, at *2 (W.D. Tex. 2007) (suit seeking to enjoin agency investigation and enforcement action was not ripe when agency was "currently engaging in an investigation" and "ha[d] not reached a final position on enforcement to date"); *see also Shields v. Norton*, 289 F.3d 832, 836–37 (5th Cir. 2002) (letters suggesting possibility of action did not create justiciable controversy); *Orix Credit Alliance, Inc. v. Wolfe* 212 F.3d 891, 896–89 (5th Cir. 2000) (threat of filing a motion, contingent upon future events, did not create an actual controversy). Similarly, under Texas law, *ultra vires* claims challenging state agency actions are unripe until the agency action is final. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851–52 (Tex. 2000) (noting that "uncertain or contingent future events that may not occur as anticipated or may not occur at all" do not establish a ripe claim).

Simply put, HISD's *ultra vires* claims seeking an injunction to prevent the Commissioner from putting in a board of managers is not an action to prevent an

"ongoing violation of law," but rather an inappropriate attempt to enlist the judiciary in interfering with an administrative determination before it is final. Under TEA's rules and regulations, HISD is entitled to a formal review of the decision to install a board of managers, and this will not occur until at least late-December. Until such time, the Commissioner can revise his initial decision regarding the board of managers. Additional events beyond the formal review, such as the filing of a petition by the parents of Wheatley High School students, may also determine the Commissioner's ultimate course of action.[4]  Thus, because further factual development is needed, this Court's adjudication on HISD's *ultra vires* claims seeking to prevent the Commissioner from finalizing his determination to install a board of managers is advisory and does no more than short circuit the administrative process.

HISD's argument that this Court should hear its claims preemptively because the Commissioner's issuance of a final decision will render the relief they seek retrospective—and, thus, unrecoverable under an *ultra vires* theory—is a red herring. As explained in the previous section, because the Commissioner's determinations and actions under Chapter 39A and Section 39.057 are "final and unappealable," this Court lacks subject matter jurisdiction to review them under an *ultra vires* theory at any point in time. The idea that the Texas Legislature would exclude an administrative decision from judicial review after it is final, but not before it is final, defies both logic and case law. In any event, whether a case is ripe or not does not depend on whether it court can

---

[4] Texas Education Code § 39A.112, provides that the parents of a majority of students attending a campus that has received five consecutive unacceptable performance ratings may, by petition, direct the Commissioner to take a particular action (close the campus or install a board of managers) unless the Board of Trustees opposes the parents' requested action.

review once it becomes final.  In this case, until the Commissioner's decision is final—

and, thus not speculative, hypothetical, or contingent—it is not ripe.

### 3. Even if the Commissioner's determinations were judicially reviewable, they are not *ultra vires* acts; HISD complains only about the Commissioner's exercise of discretion.

By bringing *ultra vires* claims, HISD has perplexingly chosen to challenge the

scope of the Commissioner's authority in an area for which the Texas Legislature has

entrusted the Commissioner with nearly complete discretion. By definition, *ultra vires*

claims "must not complain of a government officer's exercise of discretion, but rather

must allege . . . that the officer acted without legal authority or failed to perform a purely

ministerial act." *Heinrich*, 284 S.W.3d at 372; *see also Creedmoor–Maha Water Supply*

*v. Texas Comm'n on Envtl Quality*, 307 S.W.3d 505,  517–18 (Tex. App—Austin 2010, no

pet.) (dismissing *ultra vires* claim based on "allegations that [the agency] reached an

incorrect or wrong result when exercising its delegated authority, not facts that would

demonstrate [the agency] exceeded that authority.").

The Texas Education Code plainly authorizes the Commissioner to initiate and

conduct an SAI, evaluate school district and campus performance, and take appropriate

actions in response to SAI findings and campus performance ratings, which include

appointing a conservator, lowering a district's accreditation status, and installing a board

of managers. *See* TEX. EDUC. CODE §§ 39.057(a),(d) (authorizing Commissioner to initiate

and take action based on SAI, including lowering accreditation status); 39.052

(authorizing Commissioner to assign academic performance ratings to school districts

and campuses); 39A.001-.002 (authorizing Commissioner to appoint a conservator);

39A.004 (authorizing Commissioner to install a board of managers based on results of

SAI); 39A.006 (authorizing Commissioner to install a board of managers); 39A.110-.111 (requiring Commissioner to either install a board of managers or close the campus after five consecutive unacceptable performance ratings).

> **a. The installation of a board of managers in response to Wheatley High School's seventh consecutive unacceptable performance rating is a lawful exercise of the Commissioner's discretion.**

Regardless of whether the Section 39A.004 conditions have been met, the Commissioner has two additional, completely independent grounds for installing a board of managers, the most crucial of which is Wheatley High School's ("Wheatley") seventh consecutive unacceptable performance rating, which occurred in 2019. HISD's reference the Commissioner's actions related to Wheatley all but concede that "that claim is not an affirmative basis for relief[.]" ECF 24 at 3; ECF 25 at 2. And, even if it were, HISD has not alleged any facts to infer that the Commissioner's actions in this area were outside his authority.

In 2016, Wheatley had earned its fifth consecutive unacceptable rating.  Under law that existed at the time, HISD would have been a required to repurpose, select alternative management, or close the campus. TEX. EDUC. CODE §39.107(e).  However, the law changed in 2015, and a new set of sanctions was authorized for campuses that receive five consecutive unacceptable ratings. Acts 2015, 84th Leg., ch. 1046 (HB 1842).  The new law included a transition plan for campuses that had three or more consecutive unacceptable ratings, such as Wheatley. TEX. EDUC. CODE §39.1071(a)-(b)(Vernon's 2016), recodified in 2017 to TEX. EDUC. CODE §39A.906.  These campuses were subject to sanctions if they received two more consecutive unacceptable ratings.  Because of this transition plan, the appointment of a board of managers was authorized after Wheatley received its seventh

consecutive unacceptable rating, even though that sanction would normally be authorized after the campus had received its fifth consecutive unacceptable rating.

Wheatley earned unacceptable ratings in 2017 and 2018.  However, due to the impacts of Hurricane Harvey, the Commissioner did not assign the 2018 unacceptable rating to Wheatley.[5]  Under the rules adopted by the Commissioner, the 2017 and 2019 ratings were consecutive for campuses that were not rated in 2018 due to Hurricane Harvey.[6] Wheatley was assigned unacceptable ratings in 2017 and 2019.  After receiving these unacceptable ratings the commissioner was required to act pursuant to Texas Education Code § 39A.906.

Notably, HISD does not challenge the 2018 Accountability Manual, which holds that a waiver in 2018 for Hurricane Harvey does not interrupt the chain of unacceptable years of performance.  *See* Appx. 531, Chapter 10-Hurricane Harvey, 2018 TEA Accountability Manual. HISD likewise does not challenge TEA's Rule, 19 TAC §97.1001, which adopts TEA's annual accountability manual. And, HISD does not challenge that, given Wheatley's consecutive years of failure, the Commissioner has a ministerial duty to either close Wheatley or install a Board of Managers.  *See* TEX. EDUC. CODE 39A.111(1) and 39A.906(b) (holding that the Commissioner "shall" issue a sanction in this scenario).

Instead, to the extent HISD makes any claim related to Wheatley or the sanction based on the Wheatley campus failure, it is to allege, in conclusory fashion, that the

---

[5] If Wheatley had earned an acceptable rating in 2018, the Commissioner would have assigned a rating that would have broken Wheatley's chain of unacceptable performance.

[6] See *2018 Accountability Manual*, Chapter 10- Hurricane Harvey, School Districts and Open-Enrollment Charter Schools "For purposes of counting consecutive years of ratings, 2017 and 2019 will be considered consecutive for school districts, open-enrollment charter schools, and campuses receiving a *Not Rated* label in 2018 due to hurricane-related issues."

Commissioner lacked the legal authority to install a board of mangers based on Wheatley. *See* ECF at ¶¶ 187-191, 251-260. While HISD takes the position that because no 2018 rating was assigned, HISD is no longer subject to the transition provision and are entitled to additional years of low performance before a sanction may be issued. *Id.* This reasoning is incorrect because the statutory scheme of progressive sanctions is based on consecutive years of performance, and the TEA rule clearly makes the 2017 and 2019 ratings consecutive for campuses that did not have unacceptable ratings assigned in 2018 due to Hurricane Harvey.  Further, the campus currently has seven consecutive unacceptable ratings.  Pursuant to 19 T.A.C. §97.1061(g), the district is subject to a sanction because the campus has had at least five consecutive unacceptable ratings. In this situation, the Commissioner is required to install a Board of Managers unless,  if in his discretion, he determines that closing the campus would better serve the educational interests of the students and community. HISD may ultimately disagree with the how the Commissioner exercised his discretion, but such a claim does not state a claim for an *ultra vires* violation.

### b.  HISD has not stated a valid *ultra vires* claim as to the appointment of Doris Delaney as a conservator or the Commissioner's actions in regard to the SAI.

Likewise, HISD has not alleged valid *ultra vires* claims related to the appointment of the conservator and its actions related to the SAI.

1.      First, the Legislature has granted the Commissioner final and unreviewable discretion to determine whether to install a conservator. Exercise of that exclusive discretion cannot by its very nature be *ultra vires*. But, even if it could be, given that the administrative decision to appoint the conservator had already occurred, HISD's allegations do not state a valid *ultra vires* claim.

To fall within the *ultra vires* exception to immunity, a claim must not be impermissibly retrospective in nature. Critically, Texas courts hold that a claim is improperly retrospective in nature if the requested relief "necessarily requires somehow undoing or changing prior acts or events." *Texas Educ. Agency v. American YouthWorks, Inc.*, 496 S.W.3d 244, 266 (Tex. App.—Austin 2016), *aff'd, Honors Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54 (Tex. 2018). Here, the request relief—an injunction preventing the Conservator from acting as a conservator in HISD—runs afoul of this requirement. *See* ECF at ¶ 263. Even though the request remedy is couched in prospective terms, it would necessarily require the undoing of an already-final administrative act of the Commissioner. *Progreso Indep. Sch. Dist.*, 2017 WL 6273192, at *3.

The Texas Third Court of Appeal considered a similar scenario in *Progreso*. There, the school district sought to enjoin the appointment of a board of managers. *Id.* In finding that the *ultra vires* claim was impermissibly retrospective, the court of appeals noted that the Commissioner had already appointed the board. *Id.* Therefore, the relief the school district sought—essential "no board of managers"—"would require the Court to reach back in time to undo the past executive action of the TEA, presumably by ordering the Commissioner to change his prior final and unappealable decisions to lower the accreditation status and appoint the board of managers[.]" *Id.* Because of the retrospective nature of the claim, it was "jurisdictionally defective." *Id.*

So too here. The decision to appoint a conservator already occurred. *See* ECF at ¶ 47 (stating that it has been more than two years since the conservator was appointed). HISD's requested relief—which essentially seeks no more conservator—is no different that the relief *Progreso* sought related to the board of managers. Because such a remedy

would require the Commissioner to amend his an already final order, it is likewise jurisdictionally barred.

2. Second, The Commissioner is authorized to initiate an SAI in a variety of circumstances, including "as the Commissioner otherwise deems necessary." TEC § 39.057(a)(16). And he is authorized to take "appropriate action" actions he deems appropriate based on SAI findings, including imposing sanctions under Texas Education Code Chapter 39A, lowering a district's accreditation status, or both. TEX. EDUC. CODE § 39.057(d). Possible actions authorized under Chapter 39A include installing a board of managers. TEX. EDUC. CODE § 39A.004.

HISD's allegation that the criteria for installing a board of managers under Texas Education Code § 39A.004 have not been met in this case is plainly false. Section 39A.004 authorizes the Commissioner to install a board of managers when the district is "subject to commissioner action under Section 39A.001" and "has a current accreditation status of accredited-warned or accredited-probation." A district may be subject to commissioner action under Section 39A.001 when "the commissioner considers the action to be appropriate on the basis of a special accreditation investigation under Section 39.057." TEX. EDUC. CODE § 39A.001(2).

To the extent HISD asserts the Commissioner is without authority to install a board of managers because it does not have an Accredited-Warned or Accredited-Probation status, this argument falls flat. The Commissioner, in his discretion, has the authority to lower a district's accreditation status, and can do so for a variety of reasons, including the results of an SAI. TEX. EDUC. CODE § 39.057(d); *see also* 39.052. Prior to filing its Second Amended Complaint, HISD was aware the Commissioner could lower HISD's

accreditation status to Accredited-Warned to the same extent they were aware that he could install a board of managers—based on the recommendations contained in the preliminary SAI report, issued on August 5, 2019, and the final SAI report, issued on October 30, 2019. The fact that the lowering of HISD's accreditation status has not yet occurred pending formal review and finalization of the Commissioner's action, only demonstrates that HISD's claim is unripe, not that the Commissioner lacks authority to install a board of managers.

Further, the drop-in accreditation status in not a requirement to install a board of managers pursuant Texas Education Code §§ 39A.111(1),. 906(b), and 19 T.A.C. §97.1061(g), which requires Commissioner action upon five consecutive campus failures regardless of the school district's accreditation status. HISD was on notice of this possible avenue to installing a board of managers as early as August 15, 2019, and this possibility was again reiterated in the September 3, 2019 letter referenced in HISD's Second Amended Complaint.

### B.  HISD's Federal Claims Also Must Be Dismissed.

In addition to HISD state-law claims, Plaintiff also raises a host of federal claims alleging that Defendants have acted illegally regarding the SAI and the sanctions resulting from the SAI. But HISD's federal claims leaves out that there exists a separate, independent grounds in which the Commission is required to sanction HISD—the Wheatly campus failures and the length of the conservator. This by itself is a sufficient basis to dismiss the claims challenging the SAI and the installation of a Board of Managers, because finding that the SAI was improper would not redress HISD's injuries if separate legal bases exist for installing a board of managers. Moreover, even if HISD

could establish standing for its federal claims, they each must be dismissed for a variety of independent reasons.

### 1. HISD's federal claims are not redressable because there are independent, unreviewable grounds for installing a board of managers.

HISD lacks standing to bring its claims arising from the SAI because this Court cannot redress its alleged injury. HISD asks this Court to forestall TEA's enforcement action—namely, the installation of a board of managers—resulting from the SAI findings that HISD violated provisions of the Texas Open Meetings Act. But the Court cannot redress HISD's claimed injury by preventing TEA from installing a board of managers because TEA has at least one independent[7] and unreviewable basis for installing a board of managers: the Wheatly campus failures.

Courts have jurisdiction when there is a real controversy between the parties that will be resolved by the court. A real controversy exists when the plaintiff can demonstrate standing by alleging that it has (1) suffered an "injury in fact" that is (a) concrete and (b) particularized and actual or imminent, not conjectural or hypothetical; (2) that is "fairly traceable" to the defendant's conduct and (3) is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Moore v. Bryant*, 853 F.3d 245, 248-49 (5th Cir. 2017). "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S.

---

[7] The length of the conservator is also an independent and unreviewable basis for installing a board of managers.

83, 103-04 (1998) (footnote omitted). Further, standing "in no way depends on the merits of the . . . contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

The Commissioner's actions taken pursuant to Section 39A.111 are final and unappeable, and, thus, unreviewable by this Court. TEX. EDUC. CODE § 39A.116 ("A decision by the commissioner under this subchapter is final and may not be appealed."); *Sterling City*, (decisions made final and unappealable by the Texas legislature are not reviewable under an *ultra vires* theory alleging the Commissioner exceeded the scope of his authority). HISD does not bring a Constitutional challenge to the Commissioner's proposed action based on the Wheatley campus ratings; it merely disagrees with the Commissioner's authority to take such action. *See* ECF 29 at ¶¶ 187-191. Indeed, HISD has disclaimed a claim for affirmative relief regarding the Commissioner's action based on the Wheatley failures. *See* ECF 24 at 3 [the claim regarding Wheatley campus failure "is not an affirmative basis for relief . . ."); ECF 25 at 2 ("the issues regarding the Commissioner's September 2019 letter [regarding the Wheatley campus failure] do not amount to a claim that Houston ISD is asserting").

But even if HISD sought affirmative relief based on the Wheatley campus failures, this Court lacks jurisdiction to grant it. As referenced above, a claim that the Commissioner acted outside of his discretion in relation to his decision regarding Wheatley cannot be the basis of an *ultra vires* action because the Legislature has granted the Commission exclusive, unreviewable discretion to make a final decision in this area. And, even if that were not the case, the Commissioner has plainly acted within the scope of his authority. The Texas Education Code provides that the Commissioner must take

one of two actions after a campus has five consecutive unacceptable ratings. TEX. EDUC. CODE § 39A.111; *see also* 19 T.A.C. § 97.1061(g). Wheatley had seven consecutive unacceptable campus ratings. The Commissioner has signaled that he intends to exercise his discretion to install a board of managers rather than close the campus. This decision is squarely within his purview.

Because HISD has not brought a claim based on the Wheatley campus failure (and cannot succeed on such a claim) there exists an independent basis for the Commissioner to install a board of managers. As a result, an injunction enjoining Defendants from installing a board of manager as a result of the SAI would not have no practical impact on the parties because Commissioner can install one based on Wheatley. In fact, none of HISD's requested remedies related to the SAI or the conservator would redress their purported injuries. The Court should dismiss the federal claims on this ground alone.

### 2. HISD's constitutional claims fail because it cannot assert its constitutional rights against the State.

HISD's constitutional claims also fail to state a claim. Even assuming arguendo that HISD has the constitutional rights it asserts,[8] as a subordinate unit of government it cannot assert those rights from the acts of its creators. *City of Trenton v. New Jersey*, 262 U.S. 182, 188 (1923) (local government unit cannot invoke the contract clause or the provisions of the Fourteenth Amendment in opposition to the will of their creator); and *Hunter v. City of Pittsburg*, 207 U.S. 161, 178-79 (1907) (same); *City of Pawhuska v.*

---

[8] *See, e.g, Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94, 139 (1973) (Stewart, J., concurring) ("The First Amendment protects the press from governmental interference; it confers no analogous protection on the government"); *id.*, at 139, n. 7 ("'The purpose of the First Amendment is to protect private expression'" (quoting T. Emerson, The System of Freedom of Expression 700 (1970)).

*Pawhuska Oil & Gas Co.* 250 U.S. 394 (1919) (applying *Hunter* doctrine to legislative actions by state administrative bodies).

While the *Hunter/Trenton* lines of cases do not create an absolute bar to suit against a State, they apply to bar the constitutional claims raised by HISD. *See, e.g., Rogers v. Brockette*, 588 F.2d 1057, 1068-70 (5th Cir. 1979) ("[T]he Constitution does not interfere with a state's internal political organization."). HISD's due process and equal protection claims are barred against the State. *City of Alpine v. Abbot*, 730 F.Supp.2d 630, 632-33 (W.D. Tex. 2010) (noting that political subdivisions of a state are not protected by the Due Process Clause); *United States v. Alabama*, 791 F.2d 1450, 1454-55 (11th Cir. 1986) (Fourteenth Amendment claims barred); *City of Hugo v. Nichols*, 656 F.3d 1251, 1256 (10th Cir. 2011) (recognizing a political subdivision's right to sue its creator under the Supremacy Clause but not as an individual liberty interest). Likewise, HISD cannot assert a First Amendment claim against the State. *See 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489, n. 1, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996) ("Although the text of the First Amendment states that 'Congress shall make no law … abridging the freedom of speech, or of the press,' the Amendment applies to the States under the Due Process Clause of the Fourteenth Amendment"); *City of Alpine*, 730 F.Supp.2d at 632-33 (local government units have no First Amendment rights against the State).

For these reasons, the Court should dismiss HISD's First Amendment, due process, and equal protection claims.

**3. HISD's procedural due process claim is unripe because HISD had not yet exhausted its administrative due process. And HISD has failed to plead a due process claim.**

Although the factual and legal basis for HISD's procedural due process claim are unclear, this Court lacks jurisdiction to review such a claim because it is unripe. "A procedural due process claim 'is not ripe until the process complained of has reached its completion.'" *Wiley v. Texas State University System*, No. 1:18-cv-930, 2019 WL 317247, at \*4 (W.D. Tex. Jan. 24, 2019) (slip copy) (quoting *Doe v. Univ. of Tex. at Austin*, No. 1:18-cv-85, at \*3 (W.D. Tex. May 15, 2018)). "Because the remedy for a procedural due process claim is more process, it makes little sense to adjudicate such a claim before the process is complete." *Id.* Here, the Commissioner's decision to lower HISD's accreditation status and install a board of managers is not final. Pursuant to 19 Tex. Admin. Code §157.1131-33, HISD is still entitled to a formal review following which the Commissioner will decide on a final action. The process of which HISD complains has not yet "reached its completion," and the Court should dismiss it for lack of ripeness.

Even if HISD's due process claims were ripe, this Court should dismiss them because HISD has pleaded no facts that plausibly give rise to a violation of due process. HISD has done no more than plead the generalized conclusion that the notice to HISD and its opportunity to be heard regarding the Commissioner's proposed actions were deficient. HISD has identified no Constitutionally-protected interest of which it has been deprived, nor has it explained how the Commissioner's notice and opportunity to be heard regarding his proposed actions fall below a constitutional minimum. This Court should dismiss HISD's procedural due process claim.

4. **HISD lacks standing to bring Voting Rights Act Claims, Equal Protection Claims, and Title VI claims on behalf of the voters within HISD.**

For a litigant to be "entitled to have a federal court resolve his grievance," it must have standing. *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004). The standing inquiry "involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 [1975]). As a constitutional minimum, standing requires: 1) an injury in fact; 2) a causal connection between the injury and the conduct of which the plaintiff complains; and 3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Arizona Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442 (2011). That is, "a litigant must demonstrate that [it] has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007); *see also Allen v. Wright*, 468 U.S. 737, 750 (1984) (abrogated on other grounds) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.").

The prudential rules of standing are "judicially self-imposed limits on the exercise of federal jurisdiction" and further limit the role of the courts in resolving public disputes by prohibiting a litigant from "raising another person's legal rights," "barring adjudication of generalized grievances more appropriately addressed in the representative branches," and "require[ing] that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Warth*, at 500; *Allen*, at 751. Regarding these prudential rules, the Supreme Court held that federal courts must ask whether "the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, at 500. In particular, "[f]ederal courts

must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation." *Dutmer v. City of San Antonio, Tex.*, 937 F. Supp. 587, 591 (W.D. Tex. 1996) (quoting *Singleton v. Wulff*, 428 U.S. 106, 113–14, 96 (1976)). As the Supreme Court has put it:

> The reasons are two. First, the courts should not adjudicate such rights unnecessarily, and it may be that the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not. Second, third parties themselves usually will be the best proponents of their own rights. *Singleton*, 428 U.S. at 113-114.

Only the United States Attorney General and "aggrieved persons" have first-party standing to bring claims under the Voting Rights Act. 42 U.S.C. 1973a. "Aggrieved persons" are the voters whose rights have allegedly been denied or impaired. *Conway School District v. Wilhot, 854 F.Supp.* 1430, 1433 (E.D. Ark. 1994) (citing *Roberts v. Wamser*, 883 F.2d 617, 624 (8th Cir. 1989)). In *Conway School District*, a federal court dismissed a Voting Rights Act claim brought by an Arkansas school district holding that the school district lacked standing because it did not have voting rights. In *Veasy v. Perry*, a Texas federal district court similarly dismissed Voting Rights Act claims brought by two counties. 29 F.Supp.3d 896, 908-909 (S.D. Tex. 2014). The court held that, not only did the local government entitles lack first-party standing, they also lacked third-party standing to bring the claims on behalf of voters within the county. *Id*.

Plaintiffs bear the burden of establishing they have standing to bring the claims they assert. *Renne v. Geary*, 501 U.S. 312, 316 (1991). Here, HISD has pleaded no facts suggesting it has either first-party standing or any type of third-party standing to bring claims on behalf of the voters within the school district. HISD is a local governmental entity. It does not vote. It is not an organization with members, nor is its purpose to

advance certain individuals' voting rights. *See Veasy*, 29 F. Supp. 3d at 908. HISD has failed to allege any grounds that would give rise to its standing to bring its own claim, or a claim on behalf of minority voters, under the Voting Rights Act—nor could it.

HISD faces the same standing problem in its apparent attempt to bring an Equal Protection claim and Title VI claim on behalf of residents within HISD.  For this reason, the Court lacks subject matter jurisdiction to consider these claims.

### 5. HISD has also failed to state a claim for a violation of the Voting Rights Act.

Even if HISD has standing to bring a Voting Rights Act claim, it would still fail as a matter of law. HISD cannot show Section 2 of the Voting Rights Act applies to appointive systems, much less that the appointment of a board of managers has diluted the voting power of any minority group within the electorate or has a discriminatory impact or purpose.

As an initial matter, the Court should hold that the Section 2 of the Voting Rights Act does not apply to this Defendants' appointment of a board of managers because it "involve[s] an appointive rather than an elective scheme, and thus . . . [the] voting rights [act] did not apply." *Searcy v. Williams*, 656 F.2d 1003, 1010 (5th Cir. 1981); *see also Phillips v. Snyder*, 836 F.3d 707 (6th Cir. 2016) (reasoning in *Presley v. Etowah County Com'n*, 502 U.S. 491 (1992) applied to Section 2 claims). But even if the Act did apply, HISD still has not stated a claim.

In considering a section 2 claim under the Voting Rights Act, a court applies a two-part test. *NAACP v. Fordice*, 252 F.3d 361, 365 (2001). First, a party must satisfy the three threshold requirements announced in *Gingle*s; and, second, a party must offer evidence

of the totality of the circumstances regarding the political landscape. T*hornburg v. Gingles*, 478 U.S. 30 (1986), *NAACP v. Fordice*, 252 F.3d 361, 365 (2001).

To satisfy the *Gingles* requirements, HISD must show, by a preponderance of the evidence, that: (1) the affected minority group is sufficiently large and geographically compact to constitute a voting age majority in a district; (2) the minority group is politically cohesive; and (3) the majority votes sufficiently as a bloc to enable it, in the absence of special circumstances, usually to defeat the minority group's preferred candidate. *Id.* at 366 (citing *Gingles*, 478 U.S. at 50–51; *Growe v. Emison*, 507 U.S. 25, 40, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993)). Here, HISD does not address the *Gingles* factors or explain how the appointment of a school board dilutes the HISD electorate's voting power.

The district court's opinion in *Ross v. Tex. Educ. Agency*, H-08-3049, 2009 WL 3254935 (S.D. Tex. Sept. 28, 2009), is instructive to this claim. In *Ross*, North Forest Independent School District ("North Forest ISD") brought a Section 2 Voting Rights Act claim challenging TEA's appointment of a board of managers. *Id.* at *2. Similar to HISD, North Forest ISD alleged that the "only time the State of Texas has invoked the Commissioner's rule to effectuate the removal of an elected board has occurred in district that were majority minority and the board members were minorities." *Id.* In support of the claim, North Forest ISD submitted evidence that its electorate was largely African-American. *Id.* But the court found that evidence, by itself, was not enough to create a fact issue on a Section 2 claim. Notably, just as in the case here, North Forest ISD did not meet the *Gingles* factors as "every voter in the [school district] electorate, regardless of race, is

affected equally by the appointment of a board of managers." *Id.* at *8.  And "there is no constitutional provision prohibiting the appointment of school boards." *Id.*

So too here. An appointive system is simply not governed by the Voting Rights Act. But, even if it were, every voter in HISD electorate would be treated equally by the appointment of a board of managers. And there no factual allegation that any voters in the electorate has had his or her vote diluted.

### 6. Construing the Texas Open Meetings Act, as requested by HISD's Uniform Declaratory Judgment Act claim is unnecessary to resolve this case, and this Court should decline to review it.

HISD also asks this Court to construe TOMA, under the federal Declaratory Judgment Act. ECF at ¶ 235.[9] Given the that multiple independent reasons authorize Defendants to install a board of manager, HISD's proposed declaration will not redress their injuries. Consequently, the Court should exercise its discretion to decline to consider the claim. *Edionwe v. Bailey*, 860 F.3d 287, 294 n. 2 (5th Cir. 2017).

### CONCLUSION

The Court should dismiss HISD's lawsuit in its entirety.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Defense Litigation

THOMAS A. ALBRIGHT

---

[9] The removal to federal court causes the claim to be viewed as brought under the federal Declaratory Judgment Act. *i2 Techs. US, Inc. v. Lanell*, No. CIV.A.302CV0134G, 2002 WL 1461929, at *7 n.5 (N.D. Tex. July 2, 2002) (collecting cases).

Division Chief - General Litigation

*/s/ Esteban Soto*
EMILY ARDOLINO
Attorney-in-Charge
State Bar No. 24087112
ESTEBAN S.M. SOTO
State Bar No. 24052274
Deputy Division Chief
State Bar No. 24052284
GENERAL LITIGATION DIVISION
emily.ardolino@oag.texas.gov
esteban.soto@oag.texas.gov

KARA HOLSINGER
State Bar No. 24065444
ADMINISTRATIVE LAW DIVISION
Assistant Attorneys General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: 512-463-2120
Fax: 512-320-0667
kara.holsinger@oag.texas.gov

*ATTORNEYS FOR DEFENDANTS*

## CERTIFICATE OF SERVICE

I certify that on November 18, 2019 the foregoing document was filed via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Esteban Soto*
ESTEBAN SOTO
Assistant Attorney General