IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HOUSTON INDEPENDENT SCHOOL DISTRICT | § | |
|     *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. 1:19-cv-684-LY |
| | § | |
| TEXAS EDUCATION AGENCY and | § | |
| MIKE MORATH, COMMISSIONER OF | § | |
| EDUCATION, in his official capacity, | § | |
| and | § | |
| DORIS DELANEY, in her official capacity | | |
|     *Defendants.* | | |

---

## DEFENDANTS' RESPONSE TO HOUSTON ISD'S APPLICATION FOR PRELIMINARY INJUNCTION

---

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Division Chief - General Litigation

EMILY ARDOLINO
Attorney-in-Charge
State Bar No. 24087112

ESTEBAN S.M. SOTO
Texas Bar No. 24052284
Deputy Division Chief
Assistant Attorneys General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4054
(512) 320-0667 FAX
GENERAL LITIGATION DIVISION
emily.ardolino@oag.texas.gov
esteban.soto@oag.texas.gov

KARA HOLSINGER
State Bar No. 24065444
ADMINISTRATIVE LAW DIVISION
kara.holsinger@oag.texas.gov

***ATTORNEYS FOR DEFENDANTS***

TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

INDEX OF AUTHORITIES ......................................................................................... iv

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

    A. The Commissioner of Education has broad discretion to
       intervene in struggling school districts .......................................... 2

    B. Since 2016, the Commissioner has instituted progressive
       interventions in HISD to prevent the need for a board of
       managers ............................................................................................... 3

    C. Despite successful state intervention at Kashmere, Wheatley's
       seventh failing academic rating requires the Commissioner to
       intervene ............................................................................................. 6

    D. HISD's Board of Trustees was dysfunctional, failed to comply
       with Texas laws, and acknowledged that racial tensions impeded
       its ability to effectively oversee the district ................................. 7

    E. Commissioner Morath decides to install a board of managers
       based on three independent grounds: the Wheatley failures, the
       SAI investigation, and the conservator appointment ................. 10

STANDARD FOR PRELIMINARY INJUNCTION ...................................................... 11

ARGUMENT ............................................................................................................... 12

    I. HISD is unlikely to prevail on any of its claims. ............................... 12

       A. HISD is unlikely to prevail on it state-law *ultra vires* claims. ............ 14

          1. The decision to install a board of managers is final and
             unappealable, and this Court lacks jurisdiction to review it
             under an *ultra vires* theory. ....................................................... 14

          2. HISD has failed to plead viable *ultra vires* claims because
             the Commissioner was plainly acting within his authority. ................. 15

          a. The Commissioner is authorized to install a board of
             managers because of Wheatley's seventh consecutive
             unacceptable rating. ................................................................ 16

          b. The Commissioner is authorized to appoint a conservator
             to oversee district-level administration. ................................. 19

          c. The Commissioner is authorized to initiate an SAI and take
             appropriate action based on SAI findings, including installing
             a board of managers. ............................................................... 21

B.  HISD is unlikely to prevail in its claims based on the SAI and Texas Open Meetings Act (causes of action 1-5 & 9) because they are not redressable. ........................................................................ 22

C.  HISD lacks standing to bring Voting Rights Act claims, Equal Protection claims, and Title VI claims on behalf of voters......................... 25

D.  HISD is also unlikely to prevail on the merits of its Voting Rights Act, Equal Protection, and Title VI claims. ..................................... 28

II.  Granting a preliminary injunction does not serve the public interest, nor do the equities weigh in favor of preserving the status quo.................................................................................................. 30

CONCLUSION ............................................................................................... 33

CERTIFICATE OF SERVICE .............................................................................. 34

iii

INDEX OF AUTHORITIES

## Cases

*Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806 (5th Cir. 1989) ................ 11

*Arizona Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436 (2011) ...................... 26

*Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567 (5th Cir. 1974) ................................................................................................. 11

*City of Alpine v. Abbott*, 730 F.Supp.2d 630 (W.D. Tex. 2010) .................................. 25

*City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009) .......................................... 15

*City of Hugo v. Nichols*, 656 F.3d 1251 (10th Cir. 2011) ........................................... 25

*City of Pawhuska v. Pawhuska Oil & Gas Co.* 250 U.S. 394 (1919) ........................ 25

*City of Trenton v. New Jersey*, 262 U.S. 182 (1923) .................................................. 25

*Clements Wire & Mfg. Co. v. NLRB*, 589 F.2d 894 (5th Cir. 1979) ........................... 11

*Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94 (1973) ...................................................................................................... 24

*Conway School District v. Wilhot*, 854 F.Supp. 1430 (E.D. Ark. 1994) .................... 27

*Creedmoor–Maha Water Supply v. Texas Comm'n on Envt'l Quality*, 307 S.W.3d 505  (Tex. App—Austin 2010, no pet.) ...................................................... 15

*Doe v. Univ. of Tex. at Austin*, No. 1:18-cv-85 (W.D. Tex. May 15, 2018) .................. 25

*Dutmer v. City of San Antonio, Tex.*, 937 F. Supp. 587 (W.D. Tex. 1996) ................ 26

*Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464 (5th Cir. 1985) .......................................................................................... 11

*Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603 (N.D. Tex. 2006 ........................................................................................................................ 31

*Growe v. Emison*, 507 U.S. 25, 40, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993) ...................................................................................................................... 28

*Hardin v. Hous. Chronicle Publ'g Co.*, 572 F.2d 1106 (5th Cir. 1978) ...................... 11

*Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151 (Tex. 2007) ................................................................................................................ 14

*Hunter v. City of Pittsburg*, 207 U.S. 161 (1907) ...................................................... 25

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) ........................................................... 23, 26

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................. 23

*Maryland v. King*, 567 U.S. 1301 (2012)...................................................... 33

*Miss. Power &Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618 (5th Cir. 1985).................................................................................................... 11

*Moore v. Bryant*, 853 F.3d 245 (5th Cir. 2017) .......................................... 23

*Morath v. Progreso Indep. Sch. Dist.*, No. 03-16-00254-CV, 2017 WL 6273192 (Tex. App.—Austin 2017, pet. denied) ........................... 3, 15, 20

*Morath v. Sterling City Indep. Sch. Dist.*, 499 S.W.3d 407 (Tex. 2016).................... 14

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977) ..................................................................................................... 33

*Phillips v. Snyder*, 836 F.3d 707 (6th Cir. 2016) ........................................ 28

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406 (5th Cir. 2013)..................................................................... 33

*Presley v. Etowah County Com'n*, 502 U.S. 491 (1992) ............................. 28

*Renne v. Geary*, 501 U.S. 312 (1991) .......................................................... 27

*Roberts v. Wamser*, 883 F.2d 617 (8th Cir. 1989) ...................................... 27

*Ross v. Tex. Educ. Agency*, H-08-3049, 2009 WL 3254935 (S.D. Tex. Sept. 28, 2009) .................................................................................................. 29

*Searcy v. Williams*, 656 F.2d 1003 (5th Cir. 1981) .................................... 28

*Singleton v. Wulff*, 428 U.S. 106 (1976) ..................................................... 26

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ....................... 23

*Texas Educ. Agency v. American YouthWorks, Inc.*, 496 S.W.3d 244 (Tex. App.—Austin 2016), *aff'd, Honors Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54 (Tex. 2018)....................................................................... 20

*Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175  (5th Cir. 1975) ...................... 11

*Thornburg v. Gingles*, 478 U.S. 30 (1986)................................................... 29

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014)............. 33

*United States v. Alabama*, 791 F.2d 1450 (11th Cir. 1986) ....................... 25

*Veasy v. Perry*, 29 F.Supp.3d 896 (S.D. Tex. 2014)................................... 27

*Warth v. Seldin*, 422 U.S. 490 (1975)................................................... 23, 26

*Wiley v. Texas State University System*, No. 1:18-cv-930, 2019 WL 317247 (W.D. Tex. Jan. 24, 2019) .......................................................... 25

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) ...................... 30

## Statutes

19 Tex. Admin. Code § 157.1136 .................................................................. 3

19 Tex. Admin. Code § 97.1001 ............................................................... 4, 6

19 Tex. Admin. Code § 97.1055(a)(9) ......................................................... 3

19 Tex. Admin. Code § 97.1061(g) ........................................................ 17, 22

19 Tex. Admin. Code §157.1131-33 ........................................................... 10

42 U.S.C. 1973a .................................................................................... 26

Tex. Educ. Code § 39.001 *et. seq.* ................................................ 2, 3, 19, 21

Tex. Educ. Code § 39.057 ...................................................................... 21

Tex. Educ. Code § 39.057(a)(16) ............................................................ 21

Tex. Educ. Code § 39.057(a)(3), (16) ......................................................... 9

Tex. Educ. Code § 39.107(3) .................................................................... 4

Tex. Educ. Code § 39.107(e) ................................................................... 16

Tex. Educ. Code § 39.151(d)-(e) ............................................................... 3

Tex. Educ. Code § 39A.001 .................................................................... 15

Tex. Educ. Code § 39A.001(2) ................................................................ 21

Tex. Educ. Code § 39A.002(7) .................................................................. 3

Tex. Educ. Code § 39A.003(a), (c) ........................................................ 9, 19

Tex. Educ. Code § 39A.003(b) ................................................................ 19

Tex. Educ. Code § 39A.004 ................................................................ 15, 21

Tex. Educ. Code § 39A.006 .................................................................... 20

Tex. Educ. Code § 39A.006(b) ................................................................ 15

Tex. Educ. Code § 39A.102 .................................................................... 15

Tex. Educ. Code § 39A.111 .............................................................. passim

Tex. Educ. Code § 39A.116 ................................................................. 3, 15

Tex. Educ. Code § 39A.906(a) ................................................................ 16

Tex. Educ. Code § 39A.906(b) ........................................................... 4, 6, 16

Tex. Educ. Code § 44.031 ...................................................................... 10

Tex. Educ. Code § 44.031(a)(1) ............................................................... 10

Tex. Educ. Code § 7.021 ......................................................................... 2

**Other Authorities**

Acts 2015, 84th Leg., ch. 1046 (HB 1842) ..................................................................... 16

## Introduction

Despite years of progressive interventions and waivers aimed at helping Houston Independent School District escape a takeover, on November 6, 2019, Texas Commissioner of Education Mike Morath deemed it necessary to temporarily suspend HISD's Board of Trustees and install a board of managers. Three separate circumstances authorize this intervention, each of which, standing alone, justifies or requires the Commissioner to act under Texas law: 1) the seventh consecutive unacceptable performance rating for Wheatley High School, which triggered mandatory intervention under Texas Education Code § 39A.111; 2) the appointment of a conservator to oversee HISD for more than two consecutive school years; and 3) the results of a Special Accreditation Investigation ("SAI") finding that HISD board members violated multiple Texas laws.

While given every opportunity to avoid the circumstances that now necessitate a board of managers, HISD asks this Court to enjoin the Commissioner from intervening to address HISD's dysfunction and inefficacy. HISD's vast array of legal theories primarily challenge the Commissioner's enforcement of the Texas Open Meetings Act through a Special Accreditation Investigation. But HISD ignores the other independent grounds for installing a board of managers—grounds that reside soundly within the Commissioner's legislatively-delegated discretion, are impervious to judicial review, and render HISD's alleged injuries due to the SAI unredressable. HISD is also unlikely to prevail on its more creative claims alleging discrimination and voter disenfranchisement because it lacks standing to bring them and cannot

show discriminatory motive or intent in the face of the Commissioner's repeated exercises of discretion aimed at *avoiding* a board of managers intervention.

Contrary to HISD's assertions, a preliminary injunction will damage Defendants and disserve the public interest by interfering with the Commissioner's efforts to resolve HISD's ongoing management problems that have led to widespread public dissatisfaction, required conservator oversight, and allowed a campus to fail academic performance standards for seven consecutive years. Despite the Commissioner's clear and unreviewable statutory authority to install a board of managers and the mandatory nature of the intervention triggered by the Wheatley campus failure, HISD nevertheless burdens this Court with baseless baseless federal claims in a last-ditch effort at self-preservation that is all too emblematic of its inability to put the interests of HISD students above its own. This Court should deny HISD's requested injunction.

## FACTUAL BACKGROUND

### A. The Commissioner of Education has broad discretion to intervene in struggling school districts.

TEA is the agency that oversees primary and secondary public education in the state of Texas.[1] TEA's responsibilities include overseeing public school districts, such as HISD, to ensure they responsibly steward public funds, comply with state and federal laws, and successfully educate Texas children.[2]  As part of this mandate, the Texas Legislature has granted the Commissioner of Education broad discretion

---

[1] Tex. Educ. Code § 7.021.

[2] *Id.*; *see also id.* at § 39.001 *et. seq.*

to evaluate and intervene in school districts that are failing to achieve these goals. These actions include the ability to issue accountability ratings, appoint conservators to provide direct oversight of district functions, investigate school districts' suspected legal violations through Special Accreditation Investigations ("SAIs"), and temporarily suspend a district's board of trustees.[3] The Legislature has deemed such exercises of discretion final and unappealable.[4]

## B. Since 2016, the Commissioner has instituted progressive interventions in HISD to prevent the need for a board of managers.

When Commissioner Morath first took office during the 2016 school year, he promptly set out to address ongoing concerns relating to HISD's academic performance. HISD was struggling to improve several schools with unacceptable academic performance ratings.[5] One such school was Wheatley High School, which had received a campus rating of *Unacceptable* or *Improvement Required* in every consecutive year since 2011.[6] In 2016, Wheatley received its fifth consecutive

---

[3] See Tex. Educ. Code § 39A.002(7); *id.* at §§ 39.057-39.058.

[4] Tex. Educ. Code § 39A.116 (Commissioner's decisions under Chapter 39A are "final and may not be appealed"); see also *id.* at § 39.151(d)-(e) (Commissioner's academic accountability determinations are final and may not be appeal or challenged in collateral proceedings); 19 Tex. Admin. Code § 157.1136 (Commissioner's decision following formal review is final and unappealable); see *Morath v. Progreso Indep. Sch. Dist.*, No. 03-16-00254-CV, 2017 WL 6273192, at *4 (Tex. App.—Austin 2017, pet. denied) (mem. op.) (the Commissioner's "decisions on accountability ratings are final and may not be appealed").

[5] In 2016, HISD had 38 campuses that received unacceptable academic ratings. Of these, 14 campuses had received unacceptable ratings for three or more years. **Appx.265-267**.

[6] **Appx.011-18**, Wheatley Accountability Ratings (2011-2019). No campus ratings were issued for 2012 due to the transition from the TAKS to the STARR test. However, the ratings for 2011 and 2013 were considered consecutive for purposes of triggering statutory intervention. 19 Tex. Admin. Code § 97.1055(a)(9).

unacceptable rating.[7] Under prior law, this would have required the Commissioner to repurpose the campus, select alternative management, or close the campus.[8]

However, due to a 2015 legislative revision to the school accountability intervention scheme, Commissioner Morath exercised his option under a transition provision to avoid such sanctions at that time.[9] Under this transition provision, Wheatley was treated as if it had only three years of unacceptable ratings, instead of five, and the Commissioner would only be required to intervene under Section 39A.111 (requiring campus closure or a board of managers) if Wheatley received two more consecutive failing ratings.[10] Thus, the Commissioner gave HISD two additional years to improve Wheatley's performance before he would be required to either shut down the campus or install a board of managers over HISD.[11]

Despite this second chance, Wheatley continued to perform poorly under the HISD Board's leadership. Wheatley again received an *Improvement Required* rating in 2017.[12] In 2018, Wheatley would have received another *Improvement Required* rating triggering mandatory intervention under Sections 39A.906(b) and 39A.111.[13]

---

[7] **Appx.019**.

[8] Tex. Educ. Code § 39.107(3) (West 2014).

[9] Tex. Educ. Code § 39A.906(a) ("For a campus that received an unacceptable performance rating for the 2013-14, 2014-15, and 2015-16 school years, the commissioner ***may apply*** the interventions and sanctions authorized by Chapter 39 as that chapter existed on January 1, 2015, to the campus."); see also **Appx.005** (explaining transition ratings).

[10] *Id.* at § 39A.906(b).

[11] Tex. Educ. Code §§ 39A.906; 39A.111; 19 Tex. Admin. Code § 97.1001.

[12] **Appx.020**.

[13] **Appx.021**.

*Defendants' Response to HISD's Application for a Temporary Injunction*        4

However, the Commissioner gave HISD yet another lifeline by discretionally granting Wheatley a Hurricane Harvey waiver, thereby discounting this rating.[14]

Wheatley was not the only severely struggling campus in HISD when the Commissioner took office in 2016. Kashmere High School was in even worse shape, having received unacceptable academic ratings since 2009—the most consecutive years of unacceptable performance of any campus in the state.[15] As with Wheatley, this series of failures authorized the Commissioner to issue sanctions under prior law, but he exercised his discretion to instead appoint a conservator to provide district-level support for the implementation of Kashmere's improvement plan.[16] He appointed Dr. Doris Delaney, an African-American Houston resident and graduate of Kashmere High School who has a doctorate in Educational Leadership and extensive experience as an educator and administrator.[17] HISD did not appeal the Commissioner's decision to appoint Dr. Delaney as a conservator.[18]

Kashmere received an unacceptable rating in 2017 and was slated to receive another in 2018. Like Wheatley, this 2018 rating would have triggered mandatory intervention under Section 39A.111, but the Commissioner also chose to grant Kashmere a Hurricane Harvey waiver instead of installing a board of managers or closing the campus.[19] And under Conservator Delaney's oversight and direction,

---

[14] **Appx.021**; see also **Appx.088-90**, Hurricane Harvey Waiver Provisions.

[15] **Appx.030-057**, Kashmere High School Accountability Ratings (2009-2016); **Appx.265.**

[16] **Appx.062-64**, Sept. 2, 2016 Conservator Appointment Letter.

[17] **Appx.063**.

[18] **Appx.084-085**, Sept. 23, 2016 Letter Finalizing Conservator Appointment.

[19] **Appx.058-059**.

Kashmere turned a corner and, in 2019, saw its first passing academic accountability rating in eleven years.[20]

## C. Despite successful state intervention at Kashmere, Wheatley's seventh failing academic rating requires the Commissioner to intervene.

Unfortunately, without intensive conservator oversight, Wheatley did not see the same successful outcome in 2019. Instead, Wheatley received its seventh consecutive unacceptable rating.[21] Under Texas Education Code §§ 39A.906(b); 39A.111(1); and 19 Tex. Admin. Code § 97.1001, the Commissioner is required to choose between two interventions in this scenario: (1) closing the Wheatley campus or (2) installing a board of managers. Understanding that this outcome could result in a board of managers, the HISD Board of Trustees voted to appeal the Wheatley rating despite district administrators advice that there was no basis for such an appeal.[22] The appeal was reviewed (along with all other academic rating appeals in the state) by an independent panel, and the failing rating was finalized on November

---

[20] **Appx.060-61**.

[21] **Appx.002**.

[22] HISD Assistant Superintendent of Research and Accountability, Carla Stevens, publicly stated: "We have tried really, really hard to find anything we can hang out [sic] hat on at Wheatley, and we cannot find anything that would be an allowable appeal that would be granted." Houston Chronicle, *HISD board orders appeal of Wheatley's failing grade, bucking administration*, available at https://www.chron.com/news/education/article/HISD-board-orders-appeal-of-Wheatley-s-failing-14417858.php?utm_campaign=CMS%20Sharing%20Tools%20(Desktop)&utm_source=share-by-email&utm_medium=email#photo-18061181 (last accessed Nov. 26, 2019).

*Defendants' Response to HISD's Application for a Temporary Injunction*          6

5, 2019.[23] The following day, the Commissioner issued a letter signaling that he intended to install a board of managers, rather than close the Wheatley campus.[24]

### D. HISD's Board of Trustees was dysfunctional, failed to comply with Texas laws, and acknowledged that racial tensions impeded its ability to effectively oversee the district.

The Commissioner's decision to choose a board of managers over campus closure was not made in a vacuum. It was made on the backdrop of disorderly, ineffective Board meetings, acknowledged racial tensions, and increasing public dissatisfaction with the Board. During Board meetings, interactions amongst the Trustees and with the public escalated to unprofessional outbursts, constant disruptions, and disrespectful comments.[25] Community members, such as Zeph Capo, President of the Houston Federation of Teachers, publicly expressed their disappointment in the Board:

> "The conduct of the HISD's board was nothing short of embarrassing and harmful. It demonstrated a dysfunction that does not serve our community, our school district and our students well."[26]

The Trustees have also been criticized by Houston Mayor Sylvester Turner, calling the Board's behavior, "destabilizing and unacceptable."[27]

---

[23] **Appx.023-24**, Nov. 5, 2019 Letter Finalizing Wheatley 2019 Rating.

[24] **Appx.002-10**, Nov. 6, 2019 Enforcement Letter.

[25] See **Appx.204-205**.

[26] The Leader, *Drama on the Board*, available at https://theleadernews.com/drama-on-the-board/ (last accessed Nov. 26, 2019).

[27] @SylvesterTurner (Sylvester Turner), *Twitter*, Oct. 12, 2018, 1:17 pm, available at https://twitter.com/sylvesterturner?lang=en.

To add to this dysfunction, Conservator Delaney and multiple Trustees cited racial tensions on the board as harming student outcomes.[28] In a public meeting, Trustee Adams implored her colleagues to overcome racial lines:

> "Read the conservator's reports, ***its about racial lines, and we need to stop it as a board*** . . . when you say our community, [Trustee] Santos, that means Black, Brown, Hispanic, Asian, it means everybody. Not just one side, so you need to collaborate with all the principals that don't look like you. We need to come together as one team and make sure we are all on one accord, because we are sending a message that should not be... ***We have to put what's best for kids, and we are not... we are worried about if someone is Black, White, Hispanic, Asian, it shouldn't be that way... it should be about one color and that's our kids.***"[29]

Similarly, Trustee Jones chided her colleagues for engaging in a "race war:"

> "We have people that are working here because Latinos on the board have threatened the superintendent that she better not fire them . . . ***There is a race war on this board.*** I know from both [Trustee] Sergio [Lira] and [Trustee] Sue [Deigaard] that they are concerned, ***and I do not believe my colleagues always vote for what's best for student achievement*** but to not appear to side with one race over another."[30]

In an abrupt, unexpected move during an October 11, 2018 Board meeting, a quorum of the Trustees voted to replace the current interim superintendent, Granita Lathan, with Abelardo Saavedra. This motion spurred a public brawl between the Trustees so severe that the Board later publicly apologized for its conduct, rescinded the vote, and reinstated Lathan.[31] In response to these events and concerns raised

---

[28] **Appx.205**.

[29] *Id.*

[30] *Id.*

[31] Board President Diana Davila was quoted: "We the board of the HISD would like to apologize to our students, the community at-large, the parents, the families and all HISD employees, especially board services and our business and community partners. For our behavior over the last 10 months, and particularly at the board meetings this past Thursday.

*Defendants' Response to HISD's Application for a Temporary Injunction*          8

that HISD had violated the Texas Open Meetings Act in the course of its superintendent search, Commissioner Morath clarified the scope of Conservator Delaney's oversight to include general board functions[32] and initiated an SAI to investigate potential legal violations.[33]

Thus, in January 2019, TEA initiated SAI #INV2019-10-034 to investigate complaints regarding the HISD Board of Trustees' alleged violations of the Texas Open Meetings Act ("TOMA"), the Texas Education Code's prohibition against unilateral actions by individual Board members.[34] Based on information from HISD employees obtained during the investigation, TEA expanded its investigation to include potential contract procurement violations.[35]

The SAI substantiated allegations that the HISD Board had violated the Texas Open Meetings Act; Trustees acted individually on behalf of the board numerous times, thereby exceeding the scope of their authority in violation of Texas Education Code § 11.051; and HISD Board of Trustees violated contract procurement rules while

---

Our actions have not modeled the behavior we desire to instill in our children that we serve." *HISD board apologizes for behavior at last week's meeting*, available at https://www.houstonpress.com/news/hisd-reverses-course-indicates-it-will-reinstate-lathan-10955855.

[32] **Appx.086**; Tex. Educ. Code § 39A.003(a) and (c) (authorizing Commissioner to define powers of a conservator to include "direct[ing] an action to be taken by . . . the board of trustees of the district" and "approv[ing] or disapprov[ing] any action of . . . the board of trustees of the district.").

[33] **Appx.091-94**; Tex. Educ. Code §§ 39.057(a)(3) and (a)(16) (authorizing Commissioner to open SAI in response to complaints alleging violations of law and "as the commissioner otherwise determines necessary").

[34] **Appx.091-94**, Notice of Special Accreditation Investigation (Jan. 22, 2019).

[35] **Appx.095-97**, Amended Notice of Special Accreditation Investigation (Mar. 24, 2019).

*Defendants' Response to HISD's Application for a Temporary Injunction*          9

the district was selecting a vendor/contractor as well as attempting to tamper with a contract that had been awarded in violation of Texas Education Code §§44.031 and 44.031(a)(1).[36] Following HISD's lengthy response and an informal review, TEA issued a final SAI report on October 30, 2019, substantiating most of the allegations and recommending the Commissioner lower the accreditation status of the district, appoint a conservator, and install a Board of Managers.[37]

### E. Commissioner Morath decides to install a board of managers based on three independent grounds: the Wheatley failures, the SAI investigation, and the conservator appointment.

On November 6, 2019, the Commissioner issued an enforcement letter notifying HISD of his decision to lower HISD's accreditation status, temporarily suspend the Board of Trustees, and install a board of managers to oversee the district for three separate reasons: 1) the seventh consecutive unacceptable performance rating for Wheatley High School, which triggered the mandatory provisions in Texas Education Code § 39A.111; 2) the results of an SAI finding that HISD board members violated multiple Texas laws; and 3) the appointment of a conservator to oversee HISD during more than two consecutive school years.[38] Before the Commissioner's sanction becomes final, HISD will have the opportunity to request a formal review.[39] If requested, any such review will be completed after December 20, 2019.

---

[36] **Appx.098-100**, SAI Preliminary Report (executive summary).

[37] **Appx.132-197**, HISD's Response to TEA's Preliminary Report and Request for Informal Review; **Appx.198-264**, Final SAI Report.

[38] **Appx.002-10**.

[39] 19 Tex. Admin. Code §157.1131-33.

## STANDARD FOR PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary remedy."[40] The decision to grant a preliminary injunction is to be treated as "the exception rather than the rule."[41] "In considering whether to grant or deny preliminary injunctive relief, the district court 'must remember that a preliminary injunction is an extraordinary and drastic remedy,' and that '[t]he movant has a heavy burden of persuading the district court that all four elements are satisfied.'"[42]

"Thus, if the movant does not succeed in carrying its burden on any one of the four prerequisites, a preliminary injunction may not issue and, if issued, will be vacated on appeal."[43] The moving party must establish the following four factors: (1) a substantial threat that failure to grant the injunction will result in irreparable injury; (2) a substantial likelihood of success on the merits; (3) the injunction will serve the public interest; and (4) the threatened injury outweighs any damage that the injunction may cause the opposing party.[44] At all times, the burden of persuasion remains with the plaintiff as to each of the four elements.[45]

---

[40] *Miss. Power &Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

[41] *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975); *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).

[42] *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (alteration in original) (footnotes omitted) (quoting *Callaway*, 489 F.2d at 573, and *Hardin v. Hous. Chronicle Publ'g Co.*, 572 F.2d 1106, 1107 (5th Cir. 1978)).

[43] *Id.* (citing *Clements Wire & Mfg. Co. v. NLRB*, 589 F.2d 894, 897 (5th Cir. 1979)).

[44] *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

[45] *Id.*

**ARGUMENT**

HISD cannot meet its heavy burden for the primary reason that it is unlikely to prevail on any of its claims. Furthermore, enjoining the state from intervening to address the ongoing problems in HISD disserves, rather than serves, the public interest. And the damage occasioned by setbacks to the Commissioner's efforts that would inevitably flow from the delay of an injunction vastly outweighs any alleged injury caused by the temporary suspension of the HISD school board.

## I.   HISD is unlikely to prevail on any of its claims.

HISD is unlikely to prevail on its claims both jurisdictionally and on the merits. The bulk of HISD's claims are aimed at attacking the Commissioner's actions with respect to the SAI and enforcement of the Texas Open Meetings Act. But the Court cannot redress any alleged injuries based on the SAI because the Commissioner has two separate, independent and unreviewable bases for installing a board of managers: the mandatory intervention required on account of Wheatley High's unacceptable academic ratings and two consecutive years of conservator oversight. Because the Texas legislature has deemed such decisions "final and unappealable," courts lack jurisdiction to review them under *ultra vires* theories. But even if the Court had jurisdiction to review the Wheatley decision, the Commissioner plainly acted within his authority under the Texas Education Code to appoint a board of managers upon the campus's seventh consecutive unacceptable rating and HSID's two consecutive years of conservator oversight.

The Commissioner's action on account of the Wheatley ratings and length of conservator appointment prevents this Court from redressing any of HISD's claims based on the SAI—though these claims also fail in their own right. Thus, HISD's first four causes of action, all of which allege First Amendment violations based on TEA's enforcement of the Texas Open Meetings Act through the SAI, fall by the wayside as unredressable. The same is true for HISD's fifth cause of action alleging procedural due process violations related to the SAI, and its ninth cause of action seeking a declaration construing provisions of the Texas Open Meetings Act.

Lastly, HISD's sixth, seventh, and eighth causes of action brought under the federal Voting Rights Act, Title VI of the Civil Rights Act of 1964, and the Equal Protection clause—all of which attempt to assert the rights of voters within HISD—fail because HISD, a governmental entity that does not vote, lacks standing. And even if HISD could assert the rights of voters, it is unlikely to succeed on the merits of these claims. Given the fact that intervention is statutorily mandated by the Wheatley failures and Commissioner Morath has repeatedly exercised his discretion to *avoid* placing HISD in that circumstance—first in 2016 when he appointed a conservator who successfully improved the performance at HISD's lowest-performing campus, Kashmere High School, and later in 2018 when the he granted Hurricane Harvey waivers to two failing HISD campuses either of which would have triggered mandatory intervention—HISD will be hard-pressed to show discriminatory intent or intentional disenfranchisement of minorities in these agency actions.

**A.  HISD is unlikely to prevail on it state-law *ultra vires* claims.**

**1.  The decision to install a board of managers is final and unappealable, and this Court lacks jurisdiction to review it under an *ultra vires* theory.**

HISD brings *ultra vires* claims alleging the Commissioner lacks authority to install a board of managers and appoint a conservator to direct board administrative functions.  These claims fail because such decisions—which were made final and unreviewable by statute—are unreviewable under an *ultra vires* theory even where, as here, a plaintiff claims that the Commissioner acted outside the scope of his enabling authority.[46] The Texas Supreme Court has held that where the Texas Education Code authorizes the Commissioner to take certain discretionary actions and makes such actions "final and binding," they are immune from judicial review.[47] A "finality provision" precludes judicial review even when an agency head arguably exceeded his authority under the enabling statute.[48] Review may only be proper where there is a "'manifest,' 'conspicuous and irreconcilable' conflict between the [alleged *ultra vires*] action and the statutory authority asserted by the executive," and the Texas Supreme Court has never allowed such a challenge.

Here, the legislature has deemed the Commissioner's decisions related to accountability interventions and sanctions under Texas Education Code Ch. 39A final

---

[46] *Morath v. Sterling City Indep. Sch. Dist.*, 499 S.W.3d 407, 413-414 (Tex. 2016).

[47] *Id.*; see also *Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007) ("The words 'final and binding,' when used to describe an administrative decision, preclude judicial review.")

[48] *Sterling City*, 499 S.W. 3d at 413 ("The effect of a statute making an executive determination final is to broaden the executive's discretion.").

and unreviewable.[49] This includes *all* the Commissioner's decisions applicable to this

litigation:

- installing a board of managers based on the Wheatley campus ratings pursuant to Sections 39A.906 and 39A.111;
- appointing a conservator to oversee district-level administration under Sections 39A.906(c) and 39A.102;
- installing a board of managers based on the length of that conservator's appointment under Section 39A.006(b); and
- installing a board of managers on the basis of an SAI investigation under Sections 39A.001 and 39A.004.[50]

Thus, HISD cannot sustain its *ultra vires* challenges to any of these actions and will

not prevail on these claims.[51]

### 2. HISD has failed to plead viable *ultra vires* claims because the Commissioner was plainly acting within his authority.

Even if this Court were to find it had jurisdiction to hear HISD's unreviewable

*ultra vires* claims, HISD is unlikely to prevail on such claims because the

Commissioner plainly acted within his authority. By definition, *ultra vires* claims

"must not complain of a government officer's exercise of discretion, but rather must

allege . . . that the officer acted without legal authority or failed to perform a purely

ministerial act."[52] Here, HISD has perplexingly chosen to challenge the scope of the

---

[49] Tex. Educ. Code § 39A.116 ("A decision under this subchapter is final and may not be appealed.")

[50] See also *Morath v. Progreso Indep. Sch. Dist.*, 2017 WL 6273192, at *4 (holding that accreditation lowering and installation of board of managers on the basis of an SAI is unreviewable under an *ultra vires* theory).

[51] See also Defendants' Motion to Dismiss, ECF 35, at 7-19.

[52] *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009); see also *Creedmoor–Maha Water Supply v. Texas Comm'n on Envt'l Quality*, 307 S.W.3d 505, 517–18 (Tex. App—Austin 2010, no pet.) (dismissing ultra vires claim based on "allegations that [the agency] reached

Commissioner's authority with respect to accountability interventions and sanctions—a matter for which the Texas legislature has entrusted the Commissioner with nearly complete discretion.

### a. The Commissioner is authorized to install a board of managers because of Wheatley's seventh consecutive unacceptable rating.[53]

In 2016, Wheatley had earned its fifth consecutive unacceptable rating. Under law that existed at the time, HISD would have been a required to repurpose, select alternative management, or close the campus.[54] However, a 2015 change in the law authorized a new set of sanctions for campuses that received five consecutive unacceptable ratings.[55] Though the transition provisions permitted the Commissioner to issue sanctions under the old law,[56] he elected to proceed under Section 39A.906(b), which subjected districts to sanctions only after two additional consecutive years of unacceptable performance.[57] Because of this transition plan, the

---

an incorrect or wrong result when exercising its delegated authority, not facts that would demonstrate [the agency] exceeded that authority.").

[53] As noted in Defendants' Motion to Dismiss, HISD appears to disclaim relief based on the Wheatley failures. See ECF 24 at 3 [the claim regarding Wheatley campus failure "is not an affirmative basis for relief . . ."); ECF 25 at 2 ("the issues regarding the Commissioner's September 2019 letter [regarding the Wheatley campus failure] do not amount to a claim that Houston ISD is asserting").

[54] Tex. Educ. Code § 39.107(e).

[55] Acts 2015, 84th Leg., ch. 1046 (HB 1842).

[56] See Tex. Educ. Code § 39A.906(a) ("For a campus that received an unacceptable performance rating for the 2013-2014, 2014-2015, and 2015-2016 school years, the commissioner *may apply* the interventions and sanctions authorized by Chapter 39 as that chapter existed on January 1, 2015, to the campus.") (emphasis added).

[57] Tex. Educ. Code § 39A.906(b) ("If a campus described by Subsection (a) receives an unacceptable performance rating for the 2016-2017 and 2017-2018 school years, the commissioner shall apply the interventions and sanctions authorized by Section 39A.111 to the campus.").

appointment of a board of managers was authorized after Wheatley received its seventh consecutive unacceptable rating, even though that sanction would normally be authorized after the campus had received its fifth consecutive unacceptable rating.[58]

Wheatley earned unacceptable ratings in 2017 and 2018. However, due to the impacts of Hurricane Harvey, the Commissioner did not assign the 2018 unacceptable rating to Wheatley. Under TEA rules, the 2017 and 2019 ratings were consecutive for campuses that were not rated in 2018 due to Hurricane Harvey.[59] Wheatley was assigned unacceptable ratings in 2017 and 2019. After receiving these unacceptable ratings, the Commissioner was required to act pursuant to Texas Education Code Sections 39A.906(b) and 39A.111 by either installing a board of managers or closing the campus.[60] Furthermore, by regulation, the Commissioner was required to take the same action upon Wheatley's fifth consecutive failure.[61]

HISD's sole argument challenging the Commissioner's authority is that Section 39A.111 discusses the triggering events for these mandatory sanctions in

---

[58] See **Appx.005**.

[59] **Appx.089**, 2018 Accountability Manual ("For purposes of counting consecutive years of ratings, 2017 and 2019 will be considered consecutive for school districts, open-enrollment charter schools, and campuses receiving a *Not Rated* label in 2018 due to hurricane-related issues."); 19 TAC §97.1001 (adopting TEA's annual accountability manual).

[60] Tex. Educ. Code § 39A.111 ("[T]he commissioner . . . shall order: (1) appointment of a board of managers to govern the school district as provided by Section 39A.202; or (2) closure of the campus.").

[61] 19 T.A.C. §97.1061(g) ("If a campus is assigned an unacceptable rating . . . for a fifth consecutive year, the commissioner shall order the appointment of a board of managers to govern the district or closure of the campus.").

*Defendants' Response to HISD's Application for a Temporary Injunction*     17

terms of consecutive years following an order for a turnaround plan.[62] This baseless argument not only takes Section 39A.111 out of context,[63] but ignores the applicable transition provisions and administrative rule, neither of which even mention—let alone require—a turnaround plan before mandatory intervention occurs.

In this situation, the Commissioner is required to install a Board of Managers unless, in his discretion, he determines that closing the campus would better serve the educational interests of the students and community. Given the mandatory nature of this binary intervention, this Court's order preventing the Commissioner from installing a board of managers, as HISD requests, would essentially be an order to close Wheatley High School—an action that second-guesses the Commissioner's determination that a board of managers best serves the educational needs of HISD students. HISD may ultimately disagree with the how the Commissioner exercised his discretion, but such disagreement does not state a claim for an *ultra vires* violation or permit this Court to enjoin the Commissioner's action.

---

[62] See ECF 29 at ¶¶ 187-191, 251-260.

[63] Section 39A.111, taken in its entirety, has the same effect as the transition provision and administrative rule relied on by the Commissioner: requiring a board of managers or campus closure after five consecutive unacceptable ratings. However, under Section 39A.111, which is not a transitional provision, campuses with two consecutive years of unacceptable ratings are required to submit a turnaround plan. Wheatley was not required to submit a turnaround plan under Section 39A.111 because Section 39A.111 did not exist when Wheatley accrued two consecutive unacceptable ratings and Section 39A.906(c) only requires a turnaround plan for campuses that had an acceptable accountability rating in 2014. Hence, the transition provision (Section 39A.906) applied to Wheatley to determine when the Commissioner's ministerial duty to implement Section 39A.111 sanctions is triggered.

*Defendants' Response to HISD's Application for a Temporary Injunction*          18

### b. The Commissioner is authorized to appoint a conservator to oversee district-level administration.

Texas Education Code Sections 39A.001 and 39A.002 authorize the commissioner to appoint a conservator. Sections 39A.003(a) and (c) explicitly authorize the Commissioner to define powers of a conservator to include "direct[ing] an action to be taken by . . . the board of trustees of the district" and "approv[ing] or disapprov[ing] any action of . . . the board of trustees of the district." HISD does not challenge the Commissioner's appointment of Conservator Delaney in 2016, and nothing in the Texas Education Code limits the Commissioner's ability to revise or clarify the scope of a conservator's appointment. HISD merely argues that conservators lack authority to direct general administrative functions at the district level, such as halting a superintendent search. But the plain language of Section 39A.003 authorizes such district-level oversight. Thus, the Commissioner and Conservator Delaney acted within their authority at all times.

To the extent that HISD suggests the Commissioner acted *ultra vires* by failing to complete quarterly reviews of Conservator Delaney's appointment, this argument also fails because there is no ongoing violation of law. First, the Commissioner completed all required quarterly reviews.[64] HISD merely complains that he submitted a few of them late.[65] While Section 39A.003(b) requires the Commissioner to complete reviews every 90 days and remove a conservator "unless he determines

---

[64] See HISD's Second Amended Complaint, ECF 29, at ¶¶ 37-47.

[65] *Id.*

continued appointment is necessary," such removal is not self-executing.[66] At best, the late reviews constitute the Commissioner's failure to perform a ministerial act, a defect that was readily cured by each report's subsequent completion and the Commissioner's determination that Conservator Delaney's continued appointment was necessary. Hence, there is no ongoing violation of law to give rise to an *ultra vires* claim.[67]

Furthermore, the length of Conservator Delaney's appointment—which spanned three consecutive school years—gives rise to yet another independent basis for installing a board of managers. Section 39A.006 authorizes the Commissioner to install a board of managers "[i]f for two consecutive school years, including the current school year, a school district has had a conservator or management team assigned" and this provision "applies regardless of whether a school district has satisfied the accreditation criteria."[68] Conservator Delaney was appointed in September 2016, and her appointment continued throughout 2017, 2018, and into the 2019 school year. HISD does not challenge the Commissioner's authority to install a board of managers under this provision.

---

[66] Tex. Educ. Code § 39A.003(b) ("At least every 90 days, **the commissioner** shall review the need for the conservator or management team and **shall remove the conservator** or management team unless the commissioner determines that continued appointment is necessary for effective governance of the school district or delivery of instructional services.") (emphasis added).

[67] *Texas Educ. Agency v. American YouthWorks, Inc.*, 496 S.W.3d 244, 266 (Tex. App.—Austin 2016), *aff'd, Honors Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54 (Tex. 2018); see also *Progreso Indep. Sch. Dist.*, 2017 WL 6273192, at *3 (dismissing ultra vires claim that sought to enjoin past determination of Commissioner).

[68] Tex. Educ. Code § 39A.006.

*Defendants' Response to HISD's Application for a Temporary Injunction*          20

### c. The Commissioner is authorized to initiate an SAI and take appropriate action based on SAI findings, including installing a board of managers.

The Commissioner is authorized to initiate an SAI in a broad variety of circumstances, including "as the Commissioner otherwise deems necessary."[69] And he is authorized to take "appropriate action" based on SAI findings, including imposing sanctions under Texas Education Code Chapter 39A, lowering a district's accreditation status, or both.[70] Possible actions authorized under Chapter 39A include installing a board of managers.[71]

HISD's allegation that the criteria for installing a board of managers under Texas Education Code § 39A.004 have not been met in this case is plainly false. Section 39A.004 authorizes the Commissioner to install a board of managers when the district is "subject to commissioner action under Section 39A.001" and "has a current accreditation status of accredited-warned or accredited-probation." A district may be subject to commissioner action under Section 39A.001 when "the commissioner considers the action to be appropriate on the basis of a special accreditation investigation under Section 39.057."[72]

To the extent HISD asserts the Commissioner is without authority to install a board of managers because it does not have an *Accredited-Warned* or *Accredited-Probation* status, this argument is equally disingenuous. The Commissioner, in his

---

[69] Tex. Educ. Code § 39.057(a)(16).

[70] Tex. Educ. Code § 39.057(d).

[71] Tex. Educ. Code § 39A.004.

[72] Tex. Educ. Code § 39A.001(2).

discretion, has the authority to lower a district's accreditation status, and can do so for a variety of reasons, including the results of an SAI.[73] Prior to filing its Second Amended Complaint, HISD was aware the Commissioner could lower HISD's accreditation status to *Accredited-Warned* to the same extent they were aware that he could install a board of managers—based on the recommendations contained in the August 5 Preliminary SAI Report and the October 30 Final SAI Report. The fact that the lowering of HISD's accreditation status has not yet occurred pending formal review and finalization of the Commissioner's action, only demonstrates that HISD's claim is unripe, not that the Commissioner lacks authority to install a board of managers.[74]

## B. HISD is unlikely to prevail in its claims based on the SAI and Texas Open Meetings Act (causes of action 1-5 & 9) because they are not redressable.

HISD's claims seeking an injunction to prevent the Commissioner from installing a board of managers based on the SAI and TEA's enforcement of the Texas Open Meetings Act are not redressable because the Wheatley failures and length of the conservator appointment constitute independent, unreviewable grounds for a board of managers.

---

[73] Tex. Educ. Code § 39.057(d); *see also* 39.052. Additionally, the drop-in accreditation status in not a requirement to install a board of managers based on the Wheatley ratings or commissioner appointment pursuant Sections 39A.006, 39A.111(1), 39A.906(b), and 19 Tex. Admin. Code § 97.1061(g).

[74] To pile on, HISD's *ultra vires* claims challenging the board of managers are also unripe because the decision is not yet final and HISD is entitled to additional process before it becomes final. See Defendants' Motion to Dismiss, ECF 35, at 10-13.

For a litigant to be "entitled to have a federal court resolve his grievance," it must have standing.[75] As a constitutional minimum, standing requires: 1) an injury in fact; 2) a causal connection between the injury and the conduct of which the plaintiff complains; and 3) redressability.[76] The standing inquiry "in no way depends on the merits of the . . . contention that particular conduct is illegal."[77] But at all times, the party asserting jurisdiction "bears the burden of establishing its existence."[78] Redressability requires that it be "likely, as opposed to merely speculative, that the [plaintiff's] injury will be redressed by a favorable decision.[79]

As explained above, this Court lacks jurisdiction to hear HISD's *ultra vires* challenges to the Commissioner's decision to install a board of managers based on the Wheatley failures and length of the conservator appointment because such actions are final and unreviewable by courts, even under *ultra vires* theories. Furthermore, HISD has apparently disclaimed relief on the basis of the Wheatley failures and has not challenged the Commissioner's actions based on the length of the conservator appointment pursuant to Section 39A.006. Even so, HISD would be unlikely to prevail on these claims because the Texas Education Code plainly authorizes a board of managers in these circumstances.[80]

---

[75] *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004).

[76] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); see also Arizona Christian Sch. Tuition Org. v. Winn, 131 S. Ct. 1436, 1442 (2011).

[77] *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

[78] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998) (footnote omitted).

[79] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Moore v. Bryant*, 853 F.3d 245, 248-49 (5th Cir. 2017).

[80] See Section A, *supra*.

*Defendants' Response to HISD's Application for a Temporary Injunction*                    23

As a result, an injunction preventing the Commissioner from installing a board of managers based on the SAI and enforcement of the Texas Open Meetings Act would have no practical impact on the parties because Commissioner can install one based on Wheatley and/or the conservator appointment. The following HISD claims lack redressability because the requested relief is premised entirely on the Commissioner's actions with respect to the SAI:

- **Causes of Action 1-4**: First Amendment Retaliation, Unlawful Restriction on Speech, Vagueness, and Overbreadth—all First Amendment challenges based on TEA's enforcement of provisions of the Texas Open Meetings Act through the SAI;

- **Cause of Action 5**: Procedural due process claim based on alleged lack of notice and opportunity to be heard with respect to SAI; and

- **Cause of Action 9**: Declaratory Judgment claim seeking construction of the Texas Open Meetings Act.

Because there are independent, unreviewable or unchallenged grounds for the Commissioner to install a board of managers, any relief this Court could conceivably grant with respect to the SAI would have no effect. Simply, a finding that the SAI was improper or unconstitutional will not redress HISD's injuries. Thus, they cannot prevail on these claims.

However, even if the Court finds HISD's claims based on the SAI to be redressable, they still fail for myriad reasons laid out in detail in Defendants' Motion to Dismiss. First, HISD—a governmental entity—lacks a right to free speech.[81] Even

---

[81] *See, e.g, Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94, 139 (1973) (Stewart, J., concurring) ("The First Amendment protects the press from governmental interference; it confers no analogous protection on the government"); *id.*, at 139, n. 7 ("The purpose of the First Amendment is to protect private expression.").

if it had such a right, it could not, as a subordinate unit of government created by the state, assert such a right against the state.[82] Nor could it assert equal protection or due process claims under the 14th Amendment for the same reason. Furthermore, HISD's procedural due process claim is unripe because it has not yet exhausted the due process available to it and HISD has failed to plead anything more than the generalized conclusion that it received inadequate notice and opportunity to be heard.[83] For these additional reasons, HISD is unlikely to prevail on its First Amendment claims, due process claims, and declaratory judgment claim.

### C. HISD lacks standing to bring Voting Rights Act claims, Equal Protection claims, and Title VI claims on behalf of voters.

HISD is also unlikely to prevail on its claims under the Voting Rights Act, Equal Protection clause, and Title VI because it the injuries they seek to redress belong to voters within the district—not HISD. The standing inquiry "involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on

---

[82] *City of Trenton v. New Jersey*, 262 U.S. 182, 188 (1923) (local government unit cannot invoke the contract clause or the provisions of the Fourteenth Amendment in opposition to the will of their creator); *Hunter v. City of Pittsburg*, 207 U.S. 161, 178-79 (1907) (same); *City of Pawhuska v. Pawhuska Oil & Gas Co.* 250 U.S. 394 (1919) (applying *Hunter* doctrine to legislative actions by state administrative bodies); see also *City of Alpine v. Abbott*, 730 F.Supp.2d 630, 632-33 (W.D. Tex. 2010) (noting that political subdivisions of a state are not protected by the Due Process Clause); *United States v. Alabama*, 791 F.2d 1450, 1454-55 (11th Cir. 1986) (Fourteenth Amendment claims barred); *City of Hugo v. Nichols*, 656 F.3d 1251, 1256 (10th Cir. 2011) (recognizing a political subdivision's right to sue its creator under the Supremacy Clause but not as an individual liberty interest).

[83] *Wiley v. Texas State University System*, No. 1:18-cv-930, 2019 WL 317247, at *4 (W.D. Tex. Jan. 24, 2019) (slip copy) (quoting *Doe v. Univ. of Tex. at Austin*, No. 1:18-cv-85, at *3 (W.D. Tex. May 15, 2018)); see also Defendants' Motion to Dismiss, ECF 35, at 23-24.

its exercise.'"[84] As a constitutional minimum, standing requires: 1) an injury in fact; 2) a causal connection between the injury and the conduct of which the plaintiff complains; and 3) redressability.[85]

The prudential rules of standing are "judicially self-imposed limits on the exercise of federal jurisdiction" and further limit the role of the courts in resolving public disputes by prohibiting a litigant from "raising another person's legal rights," "barring adjudication of generalized grievances more appropriately addressed in the representative branches," and  "require[ing] that a plaintiff's complaint fall within the zone of interests protected by the law invoked."[86] Regarding these prudential rules, federal courts must ask whether "the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."[87] In particular, "[f]ederal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation."[88]

Only the United States Attorney General and "aggrieved persons" have first-party standing to bring claims under the Voting Rights Act.[89] "Aggrieved persons"

---

[84] *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

[85] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Arizona Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442 (2011).

[86] *Warth*, at 500; *Allen*, at 751.

[87] *Warth*, at 500.

[88] *Dutmer v. City of San Antonio, Tex.*, 937 F. Supp. 587, 591 (W.D. Tex. 1996) (quoting *Singleton v. Wulff*, 428 U.S. 106, 113–14, 96 (1976)).

[89] 42 U.S.C. 1973a.

are the voters whose rights have allegedly been denied or impaired.[90] In *Conway School District*, a federal court dismissed a Voting Rights Act claim brought by an Arkansas school district holding that the school district lacked standing because it did not have voting rights. In *Veasy v. Perry*, a Texas federal district court similarly dismissed Voting Rights Act claims brought by two counties.[91]  The court held that, not only did the local government entitles lack first-party standing, they also lacked third-party standing to bring the claims on behalf of voters within the county.[92]

Plaintiffs bear the burden of establishing they have standing to bring the claims they assert.[93] Here, HISD has pleaded no facts suggesting it has either first-party standing or any type of third-party standing to bring claims on behalf of the voters within the school district. HISD is a local governmental entity. It does not vote. It is not an organization with members, nor is its purpose to advance certain individuals' voting rights.[94] HISD has failed to allege any grounds that would give rise to its standing to bring its own claim, or a claim on behalf of minority voters, under the Voting Rights Act—nor could it.

---

[90] *Conway School District v. Wilhot, 854 F.Supp*. 1430, 1433 (E.D. Ark. 1994) (citing *Roberts v. Wamser*, 883 F.2d 617, 624 (8th Cir. 1989)).

[91] 29 F.Supp.3d 896, 908-909 (S.D. Tex. 2014).

[92] *Id*.

[93] *Renne v. Geary*, 501 U.S. 312, 316 (1991).

[94] See *Veasy*, 29 F. Supp. 3d at 908.

*Defendants' Response to HISD's Application for a Temporary Injunction*                    27

HISD faces the same standing problem in its apparent attempt to bring an Equal Protection claim and Title VI claim on behalf of residents within HISD.[95]  For this reason, the Court lacks subject matter jurisdiction to consider these claims.

### D. HISD is also unlikely to prevail on the merits of its Voting Rights Act, Equal Protection, and Title VI claims.

Even if HISD has standing, its Voting Rights, Title VI, and Equal Protection claims would still fail on the merits. First, HISD cannot show that Section 2 of the Voting Rights Act applies to appointive systems such as the suspension of an elected board.[96] Second, HISD does not show in its pleadings or its application for a preliminary injunction that the appointment of a board of managers would dilute the voting power of any minority group or has a discriminatory impact or purpose. HISD does not plead or offer evidence to establish the elements of a Voting Rights Act claim as laid out in *Thornburg v. Gingles*, which require a showing that: (1) the affected minority group is sufficiently large and geographically compact to constitute a voting age majority in a district; (2) the minority group is politically cohesive; and (3) the majority votes sufficiently as a bloc to enable it, in the absence of special circumstances, usually to defeat the minority group's preferred candidate.[97]  Nor does

---

[95] See Second Amended Complaint, ECF 29, at ¶¶ 226-234.

[96] *Searcy v. Williams*, 656 F.2d 1003, 1010 (5th Cir. 1981); *see also Phillips v. Snyder*, 836 F.3d 707 (6th Cir. 2016) (reasoning in *Presley v. Etowah County Com'n*, 502 U.S. 491 (1992) applied to Section 2 claims).

[97] *Id*. at 366 (citing *Gingles*, 478 U.S. at 50–51; *Growe v. Emison*, 507 U.S. 25, 40, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993)).

it offer evidence of the totality of the circumstances regarding the political landscape.[98]

Here, HISD does not address the *Gingles* factors or explain how the appointment of a school board dilutes the HISD electorate's voting power. The district court's opinion in a similar claim against TEA, *Ross v. Tex. Educ. Agency*, is instructive.[99] In *Ross*, North Forest Independent School District ("North Forest ISD") brought a Section 2 Voting Rights Act claim challenging TEA's appointment of a board of managers.[100] Similar to HISD, North Forest ISD alleged that the "only time the State of Texas has invoked the Commissioner's rule to effectuate the removal of an elected board has occurred in district that were majority minority and the board members were minorities."[101] Though North Forest ISD submitted evidence that its electorate was largely African-American, the court found that such evidence, by itself, was not enough to create a fact issue on a Section 2 claim.[102] Notably, just as here, North Forest ISD did not meet the *Gingles* factors as "every voter in the [school district] electorate, regardless of race, is affected equally by the appointment of a board of managers" and "there is no constitutional provision prohibiting the appointment of school boards."[103] So too here. An appointive system is not governed by the Voting Rights Act. But even if it were, every voter in HISD electorate would

---

[98] *Thornburg v. Gingles*, 478 U.S. 30 (1986), *NAACP v. Fordice*, 252 F.3d 361, 365 (2001).

[99] No. H-08-3049, 2009 WL 3254935 (S.D. Tex. Sept. 28, 2009).

[100] *Id.* at *2.

[101] *Id.*

[102] *Id.* at *8.

[103] *Id.*

*Defendants' Response to HISD's Application for a Temporary Injunction*          29

be treated equally by the appointment of a board of managers, and HISD does not claim vote dilution.

Furthermore, HISD has provided no evidence in support of its application to back up its assertions of disparate treatment and discrimination under the Equal Protection clause and Title VI. In contrast to HISD's allegations of the Commissioner's discriminatory agenda, the PI evidence shows that the Commissioner's actions to improve student performance at Kashmere High School also removed Kashmere's performance as a potential basis for appointing a board of managers and that, just last school year, the Commissioner granted waivers to Kashmere and Wheatley whose failing ratings would have triggered mandatory intervention in 2018. These actions demonstrate the Commissioner's true motivation to improve student performance, not to appoint a board of managers. HISD is not likley to prevail jurisdictionally or on the merits of these claims.

## II. Granting a preliminary injunction does not serve the public interest, nor do the equities weigh in favor of preserving the status quo.

A party seeking a preliminary injunction must also demonstrate that the balance of equities tips in its favor and that an injunction is in the public interest.[104] In its application, HISD premises it argument on these factors on the theory that the Defendants will suffer no harm from an injunction and HISD and the public will suffer irreparable harm unless the Court intervenes to enjoin the conservator and the

---

[104] *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

potential appointment of a board of managers.[105] But HISD's actions and the evidence demonstrate otherwise.

As an initial matter, with respect to HISD's argument that the appointment of the conservator and HISD's inability to select a new Superintendent outweighs any injury to the Defendants.[106] HISD's delay in filing this application weighs against a finding that this injury can support a preliminary injunction. The conservator has been in place for years and HISD has been restricted from selecting a new Superintendent since at least March 2019.[107] Yet, despite the fact that HISD filed suit in June 2019, it waited until October 29, 2019 to seek this injunction. And while HISD has previously explained that it filed its application at this time to stop Defendants from taking further action against the district, that rationale does not explain why it waited months to seek preliminary relief.[108] In this scenario, "[a]bsent a good explanation" this "substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." [109]

In any event, even if HISD suffers some harm, it would not outweigh the harm an injunction would cause the Defendants and the public. As local community leaders have publicity stated, HISD's board of trustees' actions have been "destabilizing and

---

[105] HISD Application for a Preliminary Injunction, ECF 19, at 27-33.

[106] *Id.* at 27-28.

[107] *Id.* at 25.

[108] ECF 25 at 1-2.

[109] *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006) (finding that six-and-a-half-month delay in filing suit rebutted presumption of irreparable harm).

unacceptable"[110] and "demonstrate[] a dysfunction that does not serve our community, our school district and our students well."[111] The local community's beliefs match TEA's SAI findings, Conservator Delaney's reports, and Trustees own observations that the Board has failed and continues to fail the students in its charge.

On the other hand, the benefits to the public that would come from denying HISD's application, are best evidenced by the improvements Conservator Delaney has already achieved. Under her oversight and direction, Kashmere High School, which had the State's longest streak of consecutive years of unacceptable performance, saw its first passing academic accountability rating in eleven years. Enjoining Defendants from taking similar actions to improve the performance of the rest of the district, does not serve the public interest—just the opposite.

Finally, HISD wrongly contends that Defendants will not be harmed if the Court issues immediate injunctive relief.[112] Defendants, as arms of the State, have a fundamental interest in enforcement of its laws and suffer irreparable injury when

---

[110] @SylvesterTurner (Sylvester Turner), Twitter, Oct. 12, 2018, 1:17 pm, https://twitter.com/sylvesterturner?lang=en.

[111] The Leader, *Drama on the Board*, available at https://theleadernews.com/drama-on-the-board/ (last accessed Nov. 26, 2019).

[112] ECF 19 at 27-28.

enforcement is prevented.[113] The balance of hardships therefore militates against an injunction, not for it.[114]

<h2 style="text-align:center">CONCLUSION</h2>

Defendants respectfully asks the Court to deny HISD's application for a preliminary injunction. HISD is not likely to succeed on any of its claims and enjoining the Commissioner of Education from taking necessary steps under Texas law to resolve long-standing problems in HISD disserves the public interest and weighs against preserving the status quo.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Defense Litigation

THOMAS A. ALBRIGHT
Division Chief - General Litigation

---

[113] *E.g., True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 742 (S.D. Miss. 2014) ("The State . . . has a significant interest in enforcing its enacted laws."); *Maryland v. King*, 567 U.S. 1301, 1303 (2012) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977) (citations omitted)); *see also Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) (recognizing that, if enforcement of duly enacted State law is enjoined, "the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws[.]")

[114] *See Hosemann*, 43 F. Supp. 3d at 742 (concluding that the balance of hardships weighed in the State's favor given the State's interest in enforcing its laws).

*Defendants' Response to HISD's Application for a Temporary Injunction*

*/s/ Emily Ardolino*

EMILY ARDOLINO
Attorney-in-Charge
State Bar No. 24087112
ESTEBAN S.M. SOTO
State Bar No. 24052274
Deputy Division Chief
State Bar No. 24052284
GENERAL LITIGATION DIVISION
emily.ardolino@oag.texas.gov
esteban.soto@oag.texas.gov

KARA HOLSINGER
State Bar No. 24065444
ADMINISTRATIVE LAW DIVISION
Assistant Attorneys General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: 512-463-2120
Fax: 512-320-0667
kara.holsinger@oag.texas.gov

*ATTORNEYS FOR DEFENDANTS*

## CERTIFICATE OF SERVICE

I certify that on November 27, 2019 the foregoing document was filed via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Emily Ardolino*

EMILY ARDOLINO
Assistant Attorney General